THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HALLIBURTON ENERGY SERVICES, INC., § § <br> *Plaintiff,* § § <br> v. § § Civil Action No. § <br> GRANT PRIDECO, INC., REEDHYCALOG § UK, LTD., REEDHYCALOG, LP, NOV § INC., § § <br> *Defendants.* § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Halliburton Energy Services, Inc. ("Plaintiff" or "Halliburton") for its Complaint for Declaratory Judgment under the Declaratory Judgment Act and patent laws of the United States against Defendants Grant Prideco, Inc. ("Grant Prideco"), ReedHycalog UK, Ltd., ReedHycalog, LP (both ReedHycalog entities together, "ReedHycalog"), and NOV Inc. ("NOV") (collectively, "Defendants") alleges as follows:

**INTRODUCTION**

For nearly two decades Defendants have had a monopoly on the right to make, use and sell certain polycrystalline diamond cutters having leached surfaces ("Leached Cutters"). By law that monopoly is now over. Beginning in 2001, Defendants filed for and obtained 12 United States patents directed to Leached Cutters. These core patents were a step change in the industry, and Plaintiff obtained licenses to use them. For more than a decade, Plaintiff paid royalties to Defendants per its agreement. The last of these 12 patents have expired, and Plaintiff has stopped paying Defendants. Now, because these 12 patents have expired, any new entrant to the industry is free to make, use, and sell Leached Cutters ***without a license and without owing Defendants a cent***. Nevertheless, Defendants assert that Plaintiff's royalty obligations under their license does

not expire until 2031, which is **nearly a decade after the expiration of the 12 core patents**. Specifically, Defendants assert that two other patents exist—which Plaintiff does not practice—one of which Defendants allege does not expire until January 2031.

Defendants' positions fail for multiple reasons. First, their interpretation of their patent license with Plaintiff is incorrect. Defendants have not identified any patent that Plaintiff uses, meaning no royalty is owed under the agreement. Second, the suggestion that royalty obligations continue based on patents other than the 12 core patents, which are not used by the Plaintiff, is unlawful under long-established Supreme Court law. *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964). Any attempt by Defendants to extend their license to collect royalties based on patents that Plaintiff does not practice is unlawful per se and unenforceable. Plaintiff brings this Complaint for Declaratory Judgment to resolve the parties' dispute regarding the royalties owed under the Patent License.

## JURISDICTION

1. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq.

2. Plaintiff and Defendants' dispute arises under the patent laws of the United States because the dispute involves federal patent issues that are actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. As further detailed below, this Complaint involves a dispute over royalties owed under a patent license agreement. A threshold question for Plaintiff to owe royalties under its license with Defendants is that Plaintiff must practice a currently licensed patent. Additionally, Defendants' efforts to enforce its license with Plaintiff beyond the expiration of the 12 core patents is unlawful *per se* under a federal patent doctrine set forth by the Supreme Court in *Brulotte v. Thys Company*, 379 U.S. 29, 32 (1964).

3. This court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

4. This Court also has supplemental jurisdiction over any state law claims that do not arise under federal patent law. To the extent any such claims are distinct from the federal patent law related claims, they are so related to such claims that they form part of the same case or controversy, and under the same operative facts as those set forth in this Complaint.

5. Personal jurisdiction over Defendants is proper in this District and this Division because Defendants agreed to submit to the exclusive jurisdiction of any state or federal court sitting in Harris County, Texas for any action brought between the parties arising out of or relating to their patent license agreement.

6. Further, personal jurisdiction over Defendants is proper in this District and Division because of their presence in this judicial district, they have availed themselves of the rights and benefits of the laws of the State of Texas, they have conducted business relating to the licensing and enforcement of patents in the State of Texas, and they have systematic and continuous business contacts with Texas. Indeed, as further alleged below and on information and belief, all domestic Defendants maintain their principal place of business in Harris County, Texas. Further, all Defendants have filed lawsuits in Harris County, Texas and have therefore submitted to the personal jurisdiction therein. *See e.g.*, *Grant Prideco, Inc. v. Schlumberger Technology Corp.*, Cause No. 2022-28716 (District Court of Harris County, Texas 11th Judicial District Feb. 6, 2023).

**VENUE**

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this judicial district, have directed their business, licensing, and enforcement activities at this judicial district, and a substantial part of the events giving rise to the claim occurred in this judicial district.

8. Further, venue is proper in this District because Defendants agreed to submit to the venue of any state or federal court sitting in Harris County, Texas for any action brought between the parties arising out of or relating to their patent license agreement.

## PARTIES

9. Plaintiff Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in this District at 3000 N. Sam Houston Parkway East, Houston, Texas 77032.

10. On information and belief, Defendant Grant Prideco, Inc. is a Delaware corporation with its principal place of business in this District at 7909 Parkwood Circle Drive, Houston, TX 77036-6565.

11. On information and belief, Defendant ReedHycalog UK, Ltd. is a limited partnership formed under the laws of the United Kingdom with its principal place of business at Stonedale Road, Oldends Lane Industrial Estate, Stonehouse, GL10 3RQ in Gloucestershire, England.

12. On information and belief, Defendant ReedHycalog, LP is a Delaware limited partnership with its principal place of business in this District at 7909 Parkwood Circle Drive, Houston, TX 77036-6565. Collectively, ReedHycalog UK, Ltd. and ReedHycalog LP are referred to as "ReedHycalog."

13. On information and belief, Defendant NOV Inc., formerly known as National Oilwell Varco, Inc., is a Delaware corporation with its principal place of business in this District at 10353 Richmond Avenue, Houston, TX, 77042-4103.

**FACTS**

**I.      Defendants Monetize Their Leaching Technology**

14.     In and around 2002, ReedHycalog developed certain polycrystalline diamond leached cutter technology that is used in drilling oil wells ("Leached Cutters" or "Leached Cutter Technology").

15.     One or more of the Defendants applied for, and obtained, 12 core patents directed to this Leached Cutter Technology. These patents include U.S. Patent Nos. 6,861,098, 6,861,137, and 6,878,447 ("Thermal Characteristic Patents"), U.S. Patent No. 6,601,662 ("Impact Strength Patent"), and U.S. Patent Nos. 6,585,064, 6,589,640, 6,749,033, 6,544,308, 6,562,462, 6,592,985, 6,739,214, and 6,797,326 ("Other Core Patents") (collectively, the "12 core patents").

16.     In 2002, Grant Prideco acquired ReedHycalog.

17.     Starting around 2006, ReedHycalog and Grant Prideco sought to generate revenue in addition to selling drill bits—by suing over and licensing their Leached Cutter Technology, specifically the 12 core patents.

18.     From 2006 through 2008, ReedHycalog and Grant Prideco initiated patent infringement suits in the Eastern District of Texas against drill bit and cutter providers. Halliburton was one such provider—along with others such as Baker Hughes, US Synthetic Corporation, Ulterra, and Diamond Innovations. ReedHycalog and Grant Prideco accused Halliburton and these drill bit and cutter providers of, *inter alia*, infringing some or all of the 12 core patents.

19.     Specifically, with respect to Halliburton, ReedHycalog and Grant Prideco accused Halliburton of infringing the 12 core patents (*i.e.*, the Thermal Characteristic Patents, the Impact

Strength Patent, and the Other Core Patents) in two separate lawsuits in the Eastern District of Texas, which were filed on May 12, 2006 and June 4, 2007.[1]

20. From the filing of the first lawsuit and over the next two years, Halliburton, ReedHycalog and Grant Prideco litigated through *Markman*, fact discovery, expert discovery, and dispositive motions briefing.

21. In 2008, NOV acquired Grant Prideco and thereby also acquired ReedHycalog.

22. By 2009, many of the industry leaders settled their litigations with Defendants and obtained a license.

23. Halliburton was no different. The litigations involving Halliburton never reached trial as all claims and counterclaims in those lawsuits against Halliburton were dismissed with prejudice in both actions on November 24, 2008.

24. Plaintiff and Defendants executed an agreement titled the ReedHycalog – Halliburton Patent Cross-License Agreement (the "Patent License") with an effective date of May 30, 2008. The Patent License states that the license grant is "under the Licensed RH Patents . . . to make, use, sell, offer to sell, rent, lease, export and import Licensed Halliburton Drill Bits."

25. In other words, the Patent License requires that Halliburton be operating under, *i.e.*, practice, a Licensed RH Patent for royalties to be owed to Defendants.

26. "Licensed Halliburton Drill Bits" were defined in the Patent License, in relevant part, as any and all PDC Bits containing at least one PCD element leached to depths of "less than 0.1 mm" or "equal to or greater than 0.1 mm." The depths of leaching licensed in the Patent License corresponded to the depths of leaching recited in certain claims of the 12 core patents.

---

[1] Halliburton was not a party to the June 4, 2007 lawsuit until ReedHycalog and Grant Prideco filed an amended complaint asserting patent infringement claims against Halliburton on May 15, 2008 relating to the Other Core Patents.

27. The royalties under the Patent License are tied directly to one or more of the 12 core patents. For example, the Patent License defines the "Asserted Patents" as the patents that were asserted to judgment in *any* of ReedHycalog's litigations related to Leached Cutters—not just the litigation between ReedHycalog and Halliburton. In these litigations, ReedHycalog asserted some or all of the 12 core patents, but only a subset of the 12 core patents were asserted to judgment.

28. The Patent License also states that royalties shall "be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching" performed to certain depths does not infringe any of the Asserted Claims. In the Patent License, like the definition of "Asserted Patents," the definition of "Asserted Claims" is similarly limited to the claims from the 12 core patents that were asserted to judgment.

## II.  The Twelve Core Patents Expire and Halliburton Ceases Paying Royalties

29. The last-to-expire patent of the 12 core patents has expired.

30. Plaintiff has also stopped paying royalties to Defendants.

## III.  Defendants Sue Three Other Similarly Situated Licensees

31. Defendants have sued three similarly situated licensees (Schlumberger/Smith, Ulterra, and Varel) who have stopped paying royalties after the expiration of the 12 core patents. ("Defendants' 2023 Lawsuit"). *See Grant Prideco, Inc. v. Schlumberger Technology Corp.*, Cause No. 2022-28716 (District Court of Harris County, Texas 11th Judicial District Feb. 6, 2023).

32. Defendants originally filed their Second Amended Petition in the District Court of Harris County, Texas 11th Judicial District. Defendants' 2023 Lawsuit, however, has since been removed to federal district court and is currently pending in this District and Division as Case No. 4:23-cv-00730.

33. In Defendants' 2023 Lawsuit, Defendants contend Schlumberger/Smith, Ulterra, and Varel owe royalties under their respective patent licenses until 2031.

7

34. Defendants have identified two patents as being "Licensed RH Patents" under Schlumberger/Smith, Ulterra, and Varel's patent licenses and contend these two patents entitle Defendants to royalties under Schlumberger/Smith, Ulterra, and Varel's patent licenses until 2031.

35. Defendants assert that U.S. Patent No. 7,568,534 (the "'534 Patent") and U.S. Patent No. 8,721,752 (the "'752 Patent") are Licensed RH Patents under those defendants' patent licenses that do not expire until October 10, 2025 and January 10, 2031, respectively.

36. Each of the defendants/counterclaimants in Defendants' 2023 Lawsuit have denied the request for relief and asserted counterclaims including that they do not infringe the '534 and '752 Patents, that no royalties are owed after the 12 core patents have expired, that the Asserted Claims are not infringed because they are expired, and that there was no breach of contract for unpaid royalties. S.D. Tex. Case No. 4:23-cv-00730, Dkt. No. 1-2 at Ex. B.6; *id.*, Dkt. No. 1-2 at Ex. B.8; *id.*, Dkt. No. 29.

## IV. Defendants Seek to Impose Royalty Obligations on Plaintiff After the Expiration of the Twelve Core Patents

37. The Patent License does not obligate Plaintiff to pay royalties after the patents it uses expire. The only patents identified by Defendants as being Licensed RH Patents are the '534 and '752 Patents. Plaintiff does not practice any claim of these patents and therefore Plaintiff's obligation under the Patent License to pay royalties to Defendants has terminated.

38. Defendants, however, assert that Plaintiff's royalty obligations do not expire until 2031 because, according to Defendants, royalties are owed until the expiration of all alleged Licensed RH Patents. Defendants further assert that the '534 Patent and the '752 Patent are Licensed RH Patents that do not expire until October 10, 2025 and January 10, 2031, respectively.

39. The '534 and the '752 Patents are not among the 12 core patents. Both the '534 Patent and the '752 Patent issued ***after*** the Effective Date of the Patent License. Indeed, the '534

8

Patent did not issue until 2009, and the '752 Patent did not issue until 2014, one and six years after the Effective Date of the Patent License, respectively. Further, the provisional application that the '752 Patent claims priority to was filed on August 17, 2007—nearly ***one year*** before the Effective Date of the Patent License, yet that provisional application is listed nowhere in the Patent License. Prior to Defendants' 2023 Lawsuit, neither the '534 Patent nor the '752 Patent were ever asserted in a litigation.

40. Despite the facts that Plaintiff's obligation to pay royalties have now ended, the 12 core patents are now expired, and Plaintiff does not practice any claim of the '534 and '752 Patents, Defendants assert that Plaintiff must continue to pay royalties solely because the '534 Patent allegedly expires in 2025 and the '752 Patent allegedly expires in 2031.

41. Defendants seek to impose the same royalty on Plaintiff's revenue both pre- and post-expiration of the 12 core patents.

42. Defendants seek royalties on technology that has now been committed to the public domain based on unexpired patents that Plaintiff does not use.

43. Now that the 12 core patents have expired, companies that do not have a license with Defendants can sell leached cutters with leaching depths both "less than 0.1 mm" and "equal to or greater than 0.1 mm" without paying a royalty to Defendants. Yet, Defendants assert that Plaintiff may not do the same.

44. Defendants' assertion is not only contrary to the Patent License, but it is also unlawful. In *Brulotte v. Thys Company*, the Supreme Court of the United States held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se." 379 U.S. 29, 32 (1964).

9

45. The rationale behind *Brulotte* is clear: Defendants' 12 core patents are now expired. Since the 12 core patents expired, new market participants have been permitted to make products that would have been previously covered by these 12 core patents and owe no royalties. It is unlawful *per se* for Defendants to extend their patent monopoly beyond the expiration of the 12 core patents by pointing to other unexpired patents that Plaintiff does not practice. The Supreme Court of the United States admonished Defendants' very practice in *Brulotte*, and more recently, *Brulotte* was reaffirmed in *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015).

46. Defendants' unlawful actions are apparent in evaluating the '534 and '752 Patents. Indeed, both the '534 Patent and '752 Patent recognize that leaching—the technology giving rise to the Patent License that is now committed to the public domain—is "well known in the art."

47. For example, the '534 Patent states that:

> It has become **well known in the art** to preferentially remove this catalyzing material from a portion of the working surface in order to form a surface with much higher abrasion resistance without substantially reducing its impact strength.

'534 Patent at 2:29–32. Thus, the '534 Patent recognized that leaching was not the subject of the purported invention of the patent.

48. The '752 Patent also recognized that leaching PCD cutters was known in the art:

> It has become **well known** that the cutting properties of these PCD materials are greatly enhanced when a relatively thin layer of the diamond material adjacent to the working surface is treated to remove the catalyzing material that remains there from the manufacturing process. This has been a relatively thin layer, generally from about 0.05 mm to about 0.4 mm thick, and the depth from the working surface tends to be generally uniform. ***This type of PDC cutting element has now become nearly universally used as cutting elements*** in earth boring drill bits and has caused a very significant improvement in drill bit performance.

'752 Patent at 1:31–41. Thus, the '752 Patent recognized that leaching was not the subject of the purported invention of the patent and in fact was "nearly universally used" as of the priority date of the '752 Patent.

49. The specifications of the '534 and '752 Patents are clear that they do not cover the invention of leaching, which was the subject of the 12 core patents.

## V. There Exists an Actual Controversy Between Plaintiff and Defendants

50. There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

51. Representatives from Plaintiff and Defendants met in February of 2023. At that meeting, Defendants contended Plaintiff owed royalties under the Patent License until 2031 due to the expiration dates of the '534 and '752 Patents, the latest of which allegedly does not expire until 2031.

52. Further, as detailed in Section III, *supra*, Defendants have sued three similarly situated licensees who, based on their public litigation filings, have stopped paying royalties after the expiration of the 12 core patents. In its Second Amended Petition in that case, **Defendants** sought a declaratory judgment against their other licensees, and in doing so recognized that the dispute over "the time period for which [the licensee] owes royalties, represents a justiciable controversy." Each of the defendants/counterclaimants in that litigation have denied the request for relief and asserted counterclaims. *Supra* Section III.

53. In the Second Amended Petition filed in Defendants' 2023 Lawsuit, Defendants contend that their licensees "owe royalties under their respective [patent licenses] until the expiration of the last to expire 'Licensed RH Patents.'" In Defendants' 2023 Lawsuit, they purport to seek a declaration that the '534 and '752 Patents are "Licensed RH Patents" under their patent licenses with Schlumberger/Smith, Ulterra, and Varel. Because the '752 Patent allegedly does not expire until 2031, Defendants alleged that those licensees owe royalties until 2031. In that Second Amended Petition, Defendants also argued that because Schlumberger/Smith, Ulterra, and Varel

11

disagreed, that disagreement represented a justiciable controversy between those parties. S.D. Tex. Case No. 4:23-cv-00730, Dkt. No. 1-2 at Ex. B.4.

54. That same dispute exists here between Plaintiff and Defendants and similarly represents a justiciable controversy as Defendants acknowledged in their Second Amended Petition against their other Leaching licensees. The parties have a definite and concrete dispute about whether Plaintiff owes royalties until 2031 despite the expiration of the 12 core patents. This controversy is substantial as it impacts Plaintiff's royalty obligations to Defendants now and for potentially the next eight years.

55. Defendants' assertions that Plaintiff continues to owe royalties beyond the expiration of the 12 core patents and Defendants' recent actions to sue others who similarly have ceased paying royalties after the expiration of the 12 core patents all demonstrate there is a substantial controversy between the parties with adverse legal interests of sufficient immediacy and reality to warrant relief.

56. Thus, a justiciable controversy exists between Plaintiff and Defendants as to whether Plaintiff owes royalties under the Patent License after the 12 core patents expired. This question necessarily implicates federal patent law as Plaintiff does not owe royalties for Licensed RH Patents it does not use.

57. Absent a declaration of non-infringement, a declaration that Plaintiff does not owe royalties under the Patent License after the 12 core patents expired including because Defendants' attempt to extract royalties thereafter is unlawful *per se* and unenforceable, as the Supreme Court of the United States recognized in *Brulotte*, and a declaration of no breach of contract for at least these reasons, Defendants will continue to wrongfully assert that Plaintiff owes royalties under the Patent License until 2031.

Plaintiff now brings its Complaint for declaratory judgment of non-infringement with respect to the '534 and the '752 Patents, a declaratory judgment that Plaintiff does not owe royalties under the Patent License after the 12 core patents expired including because Defendants' attempt to extract royalties thereafter is unlawful *per se* and unenforceable, as the Supreme Court of the United States recognized in *Brulotte*, and a declaratory judgment of no breach of contract.

### COUNT I – Declaratory Judgment of Non-Infringement of the '534 Patent

58. Plaintiff realleges paragraphs 1–57 as if fully set forth herein.

59. Based on Defendants' assertion that Plaintiff owes royalties until 2031 under the Patent License, an actual controversy has arisen and now exists between the parties as to whether Plaintiff infringes the '534 Patent.

60. Plaintiff does not infringe Claim 1 of the '534 Patent at least because, *inter alia*, Plaintiff does not perform: "exposing untreated superhard material between the end and peripheral working surfaces, by machining away the polycrystalline diamond material, preferentially wearing the exposed, untreated polycrystalline diamond material of the cutting element forming a pair of protruding lips with diamond material," as required by Claim 1 of the '534 Patent.

61. Plaintiff requests a declaration by the Court that Plaintiff has not infringed and does not infringe any claim of the '534 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

### COUNT II – Declaratory Judgment of Non-Infringement of the '752 Patent

62. Plaintiff realleges paragraphs 1–57 as if fully set forth herein.

63. Based on Defendants' assertion that Plaintiff owes royalties until 2031 under the Patent License, an actual controversy has arisen and now exists between the parties as to whether Plaintiff infringes the '752 Patent.

64. Plaintiff does not infringe Claims 1 and 12 of the '752 Patent at least because, *inter alia*, Plaintiff does not make, use, sell, offer to sell, or import polycrystalline diamond cutting elements with at least one "substantially catalyst-free projection extending below the first depth and to a second depth, the at least one projection being a distance from the working surface," as required by at least Claims 1 and 12 of the '752 Patent. Plaintiff does not infringe any claim that depends, directly or indirectly, from Claims 1 or 12 for at least these reasons.

65. Plaintiff requests a declaration by the Court that Plaintiff has not infringed and does not infringe any claim of the '752 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**COUNT III – Declaratory Judgment That Plaintiff Owes No Royalties Now That the 12 Core Patents Expired Under the Patent License**

66. Plaintiff realleges paragraphs 1–57, 59–61, and 63–65 as if fully set forth herein.

67. Based on Defendants' assertion that Plaintiff owes royalties until 2031 under the Patent License, an actual controversy has arisen and now exists between the parties as to whether any royalties are owed and enforceable under the Patent License now that the 12 core patents have expired at least because it is unlawful for Defendants to require the payment of royalties accruing after the patents incorporated into Plaintiff's products have expired, under at least *Brulotte* and its progeny.

68. The '534 Patent and '752 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Defendants' patent grant with anticompetitive effect, thereby rendering any attempt to enforce the Patent License based on the expiration dates of the '534 Patent and '752 Patent unlawful *per se* and unenforceable.

69. As set forth herein, the '534 Patent and '752 Patent recognized that leaching technology was well known at the time of the purported inventions disclosed in the '534 Patent and '752 Patent. Accordingly, the '534 Patent and '752 Patent do not claim the leaching technology giving rise to the Patent License. Nonetheless, Defendants still seek to extract royalties from Plaintiff for its use of leaching technology that is now committed to the public domain based on the alleged expiration dates of the '534 Patent and '752 Patent.

70. Plaintiff does not practice any claim of the '534 Patent and '752 Patent.

71. Therefore, any attempt by Defendants to enforce purported contractual obligations, including to extract royalties from Plaintiff, after the 12 core patents expired, including on the basis of the '534 Patent and '752 Patent, is unlawful *per se* and unenforceable.

**COUNT IV – Declaratory Judgment That the Asserted Claims Are Not Infringed After October 22, 2021 Because They Are Expired**

72. Plaintiff realleges paragraphs 1–57 as if fully set forth herein.

73. The Patent License defines Asserted Claims as "claims [that] are asserted to judgment by any party in a patent infringement lawsuit in a United States District Court involving ReedHycalog."

74. The only claims that were asserted in a patent infringement lawsuit, and thus the only claims that were asserted to judgment, were claims from some of the 12 core patents.

75. The Patent License states that "Royalties due by Halliburton pursuant to Section 6.01(b)(1) and Section 6.01(c)(1) of this Agreement shall also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface, does not infringe all such Asserted Claims."

76. The Patent License states that "Royalties due by Halliburton pursuant to Section 6.01(b)(2) and Section 6.01(c)(2) of this Agreement shall also be suspended if an appealable,

15

unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface to a depth greater than or equal to 0.1mm does not infringe all such Asserted Claims (wherein the Asserted Patents include at least one of the Licensed RH Patents other than the Thermal Characteristic Patents and the Impact Strength Patent)."

77. The 12 core patents have expired and therefore Leaching and partially leached PCD elements do not infringe any of the claims of such patents after October 22, 2021.

78. Therefore, Plaintiff requests a declaration by the Court that the 12 core patents are expired and therefore the Asserted Claims are not infringed for activity occurring after October 22, 2021, thereby suspending all royalty obligations.

### COUNT V – Declaratory Judgment of No Breach of Contract

79. Defendants reallege paragraphs 1–57, 59–61, and 63–65 as if fully set forth herein.

80. Royalties under the Patent License have now ended and the last-to-expire patent of the 12 core patents has expired.

81. Yet, Defendants assert that Plaintiff owes royalties under the Patent License until January 10, 2031.

82. Plaintiff did not breach the Patent License at least because Plaintiff's obligations to pay royalties have terminated now that the 12 core patents have expired.

83. Further, the Patent License states that the license grant is "under the Licensed RH Patents . . . to make, use, sell, offer to sell, rent, lease, export and import Licensed Halliburton Drill Bits." In other words, the Patent License requires that Halliburton be operating under, *i.e.*, practice, a Licensed RH Patent for royalties to be owed to Defendants.

84. The only unexpired patents identified by Defendants are the '534 and '752 Patents. Plaintiff does not practice any claim of these patents and therefore Plaintiff has no obligation under the Patent License to pay royalties to Defendants and have not breached the Patent License.

85. Therefore, Plaintiff requests a declaration by the Court that they have not breached the Patent License.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff respectfully requests that the Court enter a judgment in its favor that:

86. Orders the declaratory judgments requested in ¶¶ 58–85, *supra*; and

87. Orders that Plaintiff's judgment against Defendants includes the following:

    i. Reasonable attorneys' fees to the maximum extent permitted by law;

    ii. Costs of suit; and

    iii. Such other further relief, general and special, at law or in equity, to which Plaintiff may be justly entitled.

Dated: May 15, 2023

Respectfully submitted,

*/s/ Gregg F. LoCascio*
Gregg F. LoCascio, P.C.
Attorney-in-Charge
S.D. TX Bar No. 1109276
DC Bar No. 452814
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: gregg.locascio@kirkland.com

Ryan Kane, P.C.
S.D. TX Bar No. 1314513
NY Bar No. 4882551
Chris Ilardi (*pro hac vice*)
NY Bar No. 5403811
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: ryan.kane@kirkland.com
Email: chris.ilardi@kirkland.com

James John Lomeo
S.D. TX Bar No. 3511238
TX Bar No. 24118993
**KIRKLAND & ELLIS LLP**
401 Congress Avenue
Austin, Texas 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101
Email: james.lomeo@kirkland.com

***Counsel for Plaintiff Halliburton Energy Services, Inc.***