**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| HALLIBURTON ENERGY SERVICES,<br><br>  *Plaintiff*,<br><br>v.<br><br>GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP,<br><br>  *Defendants.* | Civil Action No. 4:23-CV-01789 |

**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

TABLE OF EXHIBITS ...................................................................................................... vi

CERTIFICATE OF CONFERENCE ................................................................................ vii

INTRODUCTION ................................................................................................................ 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.............................. 2

BACKGROUND AND SUMMARY OF ARGUMENT ........................................................ 3

ISSUES TO BE CONSIDERED AND STANDARD OF REVIEW ............................................ 6

ARGUMENT ....................................................................................................................... 7

    I.     No Case or Controversy Exists Regarding Infringement (Counts 1, 2, & 5). ....................................................................................................... 7

    II.    Even If a Case or Controversy Existed Regarding Infringement, Plaintiff's Declaratory Judgment Claims of Non-Infringement (Counts 1 & 2) and No Breach (Count 5) Do Not Arise Under Patent Law. .................... 11

    III.   Plaintiff's Brulotte Declaratory Judgment (Count 3) Does not Arise Under the Federal Patent Law............................................................................ 15

    IV.   Plaintiff's Declaratory Judgment that Royalties Are Suspended Due to Expiration of 12 Patents (Count 4) Does Not Arise Under Patent Law. .............. 17

    V.    Plaintiff's Declaratory Judgment that Royalties Are Suspended Due to Expiration of 12 Patents (Count 4) Fails to State a Claim. .................................. 18

    VI.   Plaintiff's Declaratory Judgment of No Breach Due to Non-Infringement (Count 5) Fails to State a Claim. .................................................... 19

CONCLUSION................................................................................................................... 19

11539575v1/017872

# TABLE OF AUTHORITIES

## Cases

*Ameranth v. ChowNow, Inc.*,
  2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) ...................................................................10

*AntennaSys, Inc. v. AQYR Techs., Inc.*,
  976 F.3d 1374 (Fed. Cir. 2020)...............................................................................13, 14, 15

*Arconic Corp. v. Novelis Inc.*,
  2023 WL 3025390 (W.D. Penn. Apr. 20, 2023)...................................................................16

*ASARCO, LLC v. Montana Resources, Inc.*,
  514 B.R. 168 (S.D. Tex. 2013) .............................................................................................7

*Automatic Radio Co. v. Hazeltine*,
  339 U.S. 827 (1950)........................................................................................................2, 10

*Broadband iTV, Inc. v. OpenTV, Inc.*,
  2018 WL 4927935 (N.D. Cal. Feb. 22, 2018) .....................................................................16

*Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.*,
  374 Fed. App'x 482 (5th Cir. 2010) ....................................................................................17

*Engel Indus. Inc. v. Lockformer Co.*,
  96 F.3d 1398 (Fed. Cir. 1996).....................................................................................1, 9, 10

*ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*,
  541 F.3d 1373 (Fed. Cir. 2008)........................................................................................4, 16

*Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
  463 U.S. 1 (1983)..............................................................................................................4, 16

*Gonzalez v. SRC Real Estate (TX), LLC*,
  2022 WL 1121038 (S.D. Tex. Apr. 14, 2022) .................................................................6, 8

*Gunn v. Minton*,
  568 U.S. 251 (2013)..................................................................................................... *passim*

*Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*,
  938 F.3d 1355 (Fed. Cir. 2019).......................................................................................13, 14

*Jang v. Boston Scientific Corp.*,
  767 F.3d 1334 (Fed. Cir. 2014)...........................................................................................15

*Kimbrell v. Marvel Entertainment, LLC*,
  576 U.S. 446 (2015).............................................................................................................2

11539575v1/017872

*Levi Strauss & Co. Aqua Dynamics Sys. Inc.*,
    2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) ........................................................15

*MedImmune, Inc. v. Genetech, Inc.*,
    549 U.S. 118 (2007)..............................................................................................3, 7, 8

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
    571 U.S. 191 (2014)..................................................................................................12

*Natec, Inc. v. Deter Co.*,
    28 F.3d 28 (5th Cir. 1994) .......................................................................................17

*NeuroRepair, Inc. v. The Nath Law Grp.*,
    781 F.3d 1340 (Fed. Cir. 2015).................................................................13, 15, 17

*Powertech Tech. Inc. v. Tessera, Inc.*,
    660 F.3d 1301 (Fed. Cir. 2011)..................................................................................8

*In re Qualcomm Litig.*,
    2017 WL 5985598 (S.D. Cal. Nov. 08, 2017) ...........................................................8

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) .....................................................................................7

*Rembrandt Diagnostics, LP v. Innovacon, Inc.*,
    2018 WL 9537931 (S.D. Cal. Mar. 23, 2018) .........................................................15

*Scheiber v. Dolby Lab's, Inc.*,
    293 F.3d 1014 (7th Cir. 2002) ...........................................................................16, 17

*STC UNM v. Quest Diagnostics, Inc.*,
    2020 WL 4734899 (D.N.M. Aug. 14, 2020) ...........................................................15

*Texas v. American Tobacco Co.*,
    463 F.3d 399 (5th Cir. 2006) .................................................................................7, 8

*U.S. Valves Inc. v. Dray*,
    212 F.3d 1368 (Fed. Cir. 2000).................................................................................15

*Verance Corp. v. Digimarc Corp.*,
    2011 WL 2182119 (Del. June 2, 2011)......................................................................8

*WBCMT 2007 C33 Office 9720, L.L.C. v. NNN Realty Advisors, Inc.*,
    844 F.3d 473 (5th Cir. 2016) ...................................................................................18

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969)..................................................................................................10

iv

**Other Authorities**

Fed. R. Civ. P. 12(b) ...............................................................................3, 6, 7, 8

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|:---:|:---|
| A | Declaration Authenticating Exhibit |
| B | Reedhycalog-Halliburton Patent Cross-License Agreement |
| C | *Ameranth v. ChowNow, Inc.*, 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) |
| D | *Arconic Corp. v. Novelis Inc.*, 2023 WL 3025390 (W.D. Penn. Apr. 20, 2023) |
| E | *Broadband iTV, Inc. v. OpenTV, Inc.*, 2018 WL 4927935 (N.D. Cal. Feb. 22, 2018) |
| F | *Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.*, 374 Fed. App'x 482 (5th Cir. 2010) |
| G | *Gonzalez v. SRC Real Estate (TX), LLC*, 2022 WL 1121038 (S.D. Tex. Apr. 14, 2022) |
| H | *Levi Strauss & Co. Aqua Dynamics Sys. Inc.*, 2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) |
| I | *In re Qualcomm Litig.*,2017 WL 5985598 (S.D. Cal. Nov. 08, 2017) |
| J | *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2018 WL 9537931 (S.D. Cal. Mar. 23, 2018) |
| K | *STC UNM v. Quest Diagnostics, Inc.*, 2020 WL 4734899 (D.N.M. Aug. 14, 2020) |
| L | *Verance Corp. v. Digimarc Corp.*, 2011 WL 2182119 (Del. June 2, 2011) |

## CERTIFICATE OF CONFERENCE

I certify that on June 7th, 2023, Counsel for Defendants conferred with counsel for Plaintiff regarding Defendants' Motion to Dismiss, and Counsel for Plaintiff confirmed that Plaintiff oppose the motion.

/s/ Harry P. Susman

**INTRODUCTION**

The Parties' dispute is a breach of contract dispute, which arises out of construction of a license agreement the parties entered in 2008 to settle ReedHycalog's patent infringement lawsuit. Halliburton seeks to avoid a state court breach of contract action by asserting a series of declaratory judgment claims in an effort to gin up federal jurisdiction. For the reasons set forth below, the Court should dismiss Halliburton's Complaint.

To settle patent litigation and buy peace, ReedHycalog signed a license with Halliburton providing Halliburton the right to use ReedHycalog's revolutionary technology for leaching certain metals out of polycrystalline diamond ("PCD") cutters used in drill bits. ReedHycalog's technology allows PCD cutters to resist wear and abrasion and last much longer than untreated PCD cutters. This allows drill bits to drill more efficiently for longer, allowing the customer to realize substantial cost savings. ReedHycalog's leaching technology revolutionized drill bit technology and has become the industry standard. The technology was the subject of multiple patents, some of which were asserted in the aforementions patent litigation. Because the parties wanted an end to litigation and because Halliburton and others wanted access to all of the technology, the license agreed to by the parties was for a portfolio of leaching patents. Accordingly, the parties negotiated a royalty rate that took this access to an entire portfolio of patents into account.

The License Agreement provided the right to use any, all or none of the licensed patents. In return, the License Agreement requires payment of royalties based not on infringement of one or more of the licensed patents, but on whether Halliburton leaches its PDC cutters to a certain depth. As expressly permitted by controlling precedent, this royalty applies whether or not Halliburton chooses to incorporate the specific patented elements into its products. *See, e.g., Engel Indus. Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996) (applying the rule first

1

announced in *Automatic Radio Co. v. Hazeltine*, 339 U.S. 827, 834 (1950)). Moreover, as expressly permitted by controlling precedent, this royalty obligation extends not to the expiration of certain first to expire patents, but instead lasts until "expiration of all" of the licensed patents. *Kimbrell v. Marvel Entertainment, LLC*, 576 U.S. 446, 454 (2015) ("Under *Brulotte*, royalties may run until the latest-running patent covered in the parties' agreement expires.").

Having obtained the benefits of this license for 14 years, Halliburton now seeks to re-trade the terms of the License Agreement by terminating its royalty obligations prematurely, depriving Defendants of the full settlement consideration. Recognizing that a naked effort to re-trade a settlement agreement negotiated between super-sophisticated parties is unappealing, Halliburton seeks to confuse the issue by injecting patent law disputes into what is a straightforward contract dispute. Halliburton filed this action seeking a declaratory judgment of non-infringement for patents for which it has never been accused of infringement, for which it claims it is not infringing and for which it has a license to practice. None of these points excuse Halliburton's performance. Halliburton knew when it entered the agreement that some patents would expire sooner than others, yet it still agreed to pay royalties until the last to expire patent.  This is not new information.  This is just a belated attempt to avoid the deal Halliburton negotiated.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff initiated this suit in this Court on May 15, 2023. In counts 1 & 2, Plaintiff seeks a declaratory judgment of non-infringement of the '534 Patent and the '752 Patent. Complaint ¶ 60 & ¶ 64 (Doc. No. 1). In count 3, Plaintiff seeks a declaratory judgment that it owes no royalties because charging royalties where Plaintiff does not infringe the unexpired, licensed patents (even though this is precisely what the parties agreed to) would allegedly violate "*Brulotte* and its progeny." *Id.* ¶ 67. In count 4, Plaintiff seeks a declaratory judgment that because a subset of the licensed patents have expired and thus cannot be infringed, Plaintiff's royalty obligation has been

suspended. *Id*. ¶ 78. Finally, in count 5, Plaintiff seeks a declaratory judgment that because Plaintiff does not practice any of the claims in the unexpired patents, Plaintiff has not breached by failing to pay royalties. *Id*. ¶ 84.

Defendants now move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss all of Plaintiff's claims for lack of jurisdiction. In the event the Court decides jurisdiction exist, Defendants move to dismiss counts 4 & 5 pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## BACKGROUND AND SUMMARY OF ARGUMENT

Plaintiff's claims are essentially copy-cat claims to those asserted by Defendants Ulterra (Plaintiff's claims are almost verbatim the same) and Varrel in *Grant Prideco, Inc. et al. v. Schlumberger Technology Corp. et. al.* Civ. Action No. 4:23-cv-00730, pending before this Court. As in that case, Plaintiff's claims belong in state court and should be dismissed for lack of jurisdiction. The jurisdictional analysis with regards to counts 1, 2 and 5 is substantially the same. Counts 1 & 2 seek a declaratory judgment of non-infringement of the '534 patent and '752 patent. Count 5 seeks a declaratory judgment of no breach because Plaintiff does not practice the claims of the '534 and '752 patents. Counts 1, 2, and 5 should be dismissed because no case or controversy exists regarding infringement or practicing of the patents. Defendants have never asserted that these patents are infringed.  Moreover, Plaintiff's obligation to pay royalties (which is the underlying controversy between the Parties) does not depend on a finding of infringement, and thus no case or controversy exists with respect to these declaratory judgment claims. *MedImmune, Inc. v. Genetech, Inc*., 549 U.S. 118 (2007). Even if the Court believed a case or controversy existed, these claims would not arise under federal patent law.  The Declaratory Judgment Act does not create a federal cause of action, and whether a declaratory judgment claim arises under federal law turns on the nature of the hypothetical claim that the declaratory judgment defendant could bring. Plaintiff has a license for a basket of patents that includes the patents that are the

subject of the declaratory judgment claims. That license would prevent a claim for patent infringement even if Defendants were inclined to assert one, which they have not done. Moreover, Defendants cannot terminate Plaintiff's license even in the face of Plaintiff's non-payment, and thus Defendants cannot bring a claim for patent infringement. Defendants' only hypothetical claim would be a claim for breach of contract, a state law cause of action. That state law breach of contract claim would not fit in the "special and small category" of state law disputes that are deemed to arise under the patent law under *Gunn v. Minton*, 568 U.S. 251 (2013). Most significantly, the alleged, embedded infringement issue is not a "substantial issue" of patent law; it is simply a run-of-the-mill question of whether Plaintiff's particular products meet certain claim limitations.

Count 3 seeks a declaration that Defendants' effort to collect royalties based on the existence of unexpired but allegedly non-infringed patents constitutes patent misuse under the so-called *Brulotte* rule. Because this claim merely asserts a federal affirmative defense in a declaratory judgment, it does not arise under federal law, much less under patent law. *See, e.g., Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983); *ExcelStor Tech., Inc.*, 541 F.3d 1373 (Fed. Cir. 2008).

Count 4 seeks a declaration that because a subset of licensed patents have expired and thus cannot be infringed, Plaintiff's obligation to pay royalties is suspended under provisions of the Licensed Agreement. Based on a tortured interpretation of certain provisions in the License Agreement, Plaintiff claims the royalty obligation is suspended (and eventually terminated) based on the expiration of 12 patents when another provision of Agreement expressly requires expiration of "*all* Licensed RH Patents" to terminate the royalty obligation. This claim does not arise under the patent law. Although couched in the terms of patent lingo (non-infringement), this declaratory

judgment claim is nothing more than a state breach of contract dispute. Under *Gunn*, the embedded "patent" issue of infringement regarding this claim fails *Gunn* factors 1 and 2: (1) the infringement issue is not disputed (there can be no liability for infringing an expired patent); and (2) resolution of whether a party infringes now-expired claims is not a "substantial" issue of patent law (it is backward looking and irrelevant).

Finally, in the event the Court decides that jurisdiction exists, counts 4 and 5 should be dismissed on the merits because the claims are contradicted by the unambiguous language of the License Agreement. Count 4 seeks to terminate Plaintiff's obligation to pay royalties because a subset of "Licensed RH Patents," have expired and thus cannot be infringed. This interpretation of the License Agreement renders meaningless the express provision calling for termination of the royalty obligation "[u]pon expiration of ***all*** of the Licensed RH Patents." Ex. B, § 8.04(a) (Reedhycalog-Halliburton Patent Cross-License Agreement) (emphasis added). Because this claim is based on a manifestly unreasonable interpretation of the unambiguous contract language, count 4 should be dismissed for failure to state a claim.

Likewise, Count 5 fails to state a claim because Plaintiff's obligation to pay royalties does not depend on whether Plaintiff "practice[s] any claim of [the '534 or '752] patents." Complaint ¶ 84. Under the unambiguous language of the License Agreement, Plaintiff must pay "go-forward" royalties upon "Licensed Halliburton Drill Bits," which are defined without reference to the requirements of any claims in any patents but rather based on certain physical characteristics, that Plaintiff "invoice[s]." Ex. B §§ 6.01(b) & 2.04. Under the unambiguous language of the royalty clause, whether Plaintiff practices any patent claim is utterly irrelevant to whether Plaintiff owes royalties.

## ISSUES TO BE CONSIDERED AND STANDARD OF REVIEW

1. Whether a case or controversy exists regarding Plaintiff's claim for a declaratory judgment of non-infringement of the '534 (Count 1) and '752 (Count 2) patents or Plaintiff's claim for declaratory judgment of no breach of contract due to non-infringement (Count 5) given that Defendants have not asserted infringement and the royalty obligation under the License Agreement does not depend on a finding of infringement?

2. Even if a case or controversy exists, whether Plaintiff's claim for a declaratory judgment of non-infringement of the '534 (Count 1) and '752 (Count 2) patents or Plaintiff's claim for declaratory judgment of no breach of contract due to non-infringement (Count 5) arise under the patent law?

3. Whether Plaintiff's claim for a declaratory judgment that patent misuse prevents Defendants from collecting contractual royalties (Count 3) arises under the patent law?

4. Whether Plaintiff's claim for declaratory judgment that its royalty obligation is suspended due to expiration of the patents containing the Asserted Claims (Count 4) arises under patent law?

5. Whether Plaintiff's claim for declaratory judgment that its royalty obligation is suspended due to expiration of the patents containing the Asserted Claims (Count 4) fails to state a claim given the unambiguous language of the License Agreement providing for termination upon expiration of "all" Licensed RH Patents?

6. Whether Plaintiff's claim for declaratory judgment of no breach of contract due to non-infringement (Count 5) fails to state a claim given the unambiguous language of the License Agreement calculating royalties based on invoicing of "Licensed Halliburton Drill Bits," not the practice of any particular patent claim?

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Gonzalez v. SRC Real Estate (TX), LLC*, 2022 WL 1121038, at *1 (S.D. Tex. Apr. 14, 2022) (Hanen, J.) (quotation and citation omitted). "[U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*. While a court must accept all factual allegations in the complaint as true when ruling on the motion to dismiss for lack of subject matter jurisdiction, "the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting federal jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Id*.

Because interpretation of an unambiguous contract is a question of law, *Texas v. American Tobacco Co*., 463 F.3d 399, 407 (5th Cir. 2006), this Court can dismiss any claim that is contradicted by the unambiguous language of the License Agreement attached to this motion to dismiss. *See ASARCO, LLC v. Montana Resources, Inc.*, 514 B.R. 168, at 178-179 (S.D. Tex. 2013) (Hanen, J.) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referenced in the plaintiff's complaint and are central to the claims asserted therein.").

## ARGUMENT

### I.      No Case or Controversy Exists Regarding Infringement (Counts 1, 2, & 5).

No case or controversy exists to support jurisdiction for counts 1, 2, and 5 because Defendants have never asserted patent infringement and Plaintiff's obligation to pay royalties does not depend on a finding of infringement. A case or controversy exists to support a declaratory judgment claim only where the claim would "admit of specific relief through a decree of a conclusive character" regarding the parties' dispute. *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (quotation and citation omitted). Here, because Defendants have never asserted patent infringement, the only potential controversy underlying counts 1,2 and 5 is whether infringement is relevant to Plaintiff's royalty obligation. Where the royalty obligation in a license agreement does not depend on a finding of infringement, no "substantial controversy, between parties having adverse legal interests" exists regarding infringement and any resulting declaration

7

would not conclusively resolve the breach dispute. *E.g., In re Qualcomm Litig.*, 2017 WL 5985598, at *22 (S.D. Cal. Nov. 08, 2017) ("Because the royalty rates in the SULAs are not contingent on patent invalidity or noninfringement, there is no case or controversy because any declaration of the Nine Additional Patents-in-Suit would not conclusively resolve the dispute regarding royalties owed to Qualcomm."); *Verance Corp. v. Digimarc Corp.*, 2011 WL 2182119, at *6 (Del. June 2, 2011) ("In fact, there is no provision in the License Agreement or its addendums that make Verance's obligations contingent on patent validity or infringement. Thus, a declaration of invalidity or non-infringement would not 'admit of specific relief through a decree of conclusive character.'" (quoting *MedImmune*, 549 U.S., at 127)). As a result, in the context of this contract dispute, a case or controversy regarding infringement does not exist.

While Plaintiff claims that the royalty obligation depends on whether Plaintiff practices any of the licensed patents, this claim can be rejected as a matter of law. In deciding a Rule 12(b)(1) motion, a court obviously can decide issues of law. Moreover, unlike with a Rule 12(b)(6) motion, in deciding a Rule 12(b)(1) motion, a court does not have accept a plaintiff's allegations as true. *Gonzalez*, 2022 WL 1121038, at *1 (Hanen, J.) ("[U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering . . . the complaint supplemented by undisputed facts plus the ***court's resolution of disputed facts***." (emphasis added)). Under Texas law, which governs the License Agreement, Ex. B §10.03, interpretation of an unambiguous contract is a question of law, and the court need not (cannot) consider extrinsic evidence. *American Tobacco Co.*, 463 F.3d, at 407.[1] Section 6.01(b) of the License requires Plaintiff to pay go-forward royalties on all "Licensed

---

[1] This contract is unlike the contract at issue in *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301 (Fed. Cir. 2011). The *Powertech* contract was governed by California law, which allows consideration of "evidence apart from the contract to explain the meaning of terms that are otherwise unambiguous." *Id.*, at n. 7. As a result, the Federal Circuit concluded the District Court's resolution was "premature" because the contract dispute could not be resolved without discovery. *Id.*, at 1310 & n. 7 ("[N]o discovery into the

Halliburton Drill Bits" that are "invoiced." Nothing in section 6.01(b) references infringement or the practicing of any patent claims. The term "Licensed Halliburton Drill Bits" is defined as "PDC Bits" that contain at least one "PCD element and/or PDC Cutter" (elements or cutters with polycrystalline diamonds) with specific physical attributes. Ex. B §2.04 ("Licensed Halliburton Drill Bits"); §2.11 ("PDC Bits"); §2.09 ("PCD"); §2.10 ("PDC"). Nothing in the definition of "Licensed Halliburton Drill Bits" refers to a patent or any patent claims or limitations. This language is crystal clear and ends the issue as a matter of law.

Plaintiff does not dispute the meaning of any of the actual words used in the go-forward royalty clause, section 6.01(b). Instead, Plaintiff points to language in section 3.01, which says nothing about payment of royalties and instead defines the scope of the license granted to Plaintiff. Plaintiff alleges that because the license grant (*i.e.*, the grant of the right to use any of the licensed patents) is made "under the Licensed RH Patents," Plaintiff must be "operating under, *i.e.*, practice, a Licensed RH Patent for royalties to be owed." Complaint ¶ 25. This allegation is implausible and contradicted by the clear language of the royalty clause. Section 3.01 gives Plaintiff a ***right*** to use patents but does not impose any ***obligation***, must less an obligation to pay royalties (which is covered by section 6.01(b)). There is no reason why the scope of rights granted to Plaintiff has to mirror Plaintiff's obligation to pay royalties. Plaintiff owes royalties on every invoiced product that meets the contractual definition whether or not Plaintiff decides to incorporate a patented feature in that product. *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996) ("We agree with the magistrate judge's statement that royalties may be based on unpatented components if that provides a convenient means for measuring the value of the license.").[2] As the

---

proper interpretation of the license agreement has been conducted" so "the district court's contract interpretation was clearly premature").

[2] *Engel* illustrates why Plaintiff's argument is incorrect.  A patent license will always grant license rights "under the patents" because that is after all the point of the license.  If this necessary feature of license

Supreme Court held in *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100 (1969), in reaffirming its decision in *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827 (1950)*:* "If the licensee negotiates for the privilege to use any or all of the patents and developments as (he) desire(s) to use them, he cannot complain that he must pay royalties if he chooses to use none of them." 395 U.S., at 139 (quotation and citation omitted).

There is nothing in the royalty clause, section 6.01(b), that references the license grant (the term "Licensed RH Patents" does not even appear in the clause). So, for example, this license is fundamentally different from the royalty language at issue in *Ameranth v. ChowNow, Inc.*, 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021), where the royalty obligation was expressly linked to use of the license. *Id.*, at *10 (noting that the royalty provision, section 5.2, required payment for "all activities falling with the Fields of Use"—a term used in the license grant—and thus "[***b]y its own language***, Section 5.2 is intended to be read in conjunction" with the license grant (emphasis added)).

Plaintiff also alleges that a few physical specifications in the definition of "Licensed Halliburton Drill Bits" "corresponded" to "certain claims of the 12 core patents." *Id.* ¶ 26. All this alleges is that some of those "Licensed Halliburton Drill Bits" might have infringed certain claims, but it does not mean Plaintiff's payment obligation was limited to products that actually infringed those claims. Nor does it mean that every "Licensed Halliburton Drill Bit" infringes one or more of the patents. Had the Parties intended to limit the royalty obligation to instances where those "certain claims of the 12 core patents" were infringed, these incredibly sophisticated Parties could have said so in the definition of "Licensed Halliburton Drill Bits"—*e.g.*, "Licensed Halliburton Drill Bits are drill bits that infringe claims in patents x and y." Instead, the Parties defined

---

language required the royalties to be measured by infringing activity, then parties could never provide for a measure of royalties not based on infringing activity. *Engel* holds expressly to the contrary.

"Licensed Drill Bits" by specifying physical attributes untethered to whether such attributes were covered by a patent or those attributes met all of the limitations set forth in any patent claim.

Finally, Plaintiff notes that the royalty obligation is suspended if a final judgment determines leaching to "certain depths" does not infringe the "Asserted Claims," which is defined as a subset of claims in certain "Asserted Patents," which were patents asserted in the infringement litigation in 2006-2009. *Id.* ¶ 28. These royalty suspension provisions are located in section 8.03(b)-(e) and 8.04(b) of the License Agreement. *See infra*, at 18 (summarizing the provisions). Plaintiff utterly fails to explain how these provisions require that the go-forward royalty obligation in section 6.01(b) must be interpreted to require infringement of a claim in the Licensed RH Patents generally.  In short, Plaintiff throws up a bunch of transparently meritless allegations to avoid the obvious conclusion: the royalty obligation unambiguously does not depend on practice or infringement of any patents.

## II.    Even If a Case or Controversy Existed Regarding Infringement, Plaintiff's Declaratory Judgment Claims of Non-Infringement (Counts 1 & 2) and No Breach (Count 5) Do Not Arise Under Patent Law.

Even if the Court believed a case or controversy existed regarding counts 1, 2 or 5, satisfying Article III, the claims would have to arise under the federal patent law—since diversity does not exist—to provide subject matter jurisdiction. A claim can arise under federal patent law either because the claim is expressly a federal claim created by the patent law or the claim is a state law claim raising a substantial question of patent law. Because Plaintiff's claims are all declaratory judgments and the Declaratory Judgment Act does not create a cause of action, whether a plaintiff's claim arises under federal law is determined by reference to the hypothetical claim that the declaratory judgment defendant could bring against plaintiff. In the context of a dispute over royalty payments under a patent license, a declaratory judgment of non-infringement could possibly arise under the patent laws where in the face of non-payment, the licensor has an express

contractual right to terminate the license and sue for infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198 (2014). Here, unlike in *Medtronic*, Defendants do not have a contractual right to and did not terminate the License Agreement due to Plaintiff's non-payment of royalties. While the License Agreement provides for the possibility of termination upon non-payment, the termination is subject to conditions and an exception that Halliburton has triggered: Termination does not occur if Halliburton is not paying due to invoking Section 8.03 or 8.04 and "such determination was made in Halliburton's good faith judgment." Ex. B § 8.05(b). Although Halliburton's Complaint avoids mentioning sections 8.03 or 8.04 explicitly, Halliburton is not paying based on these provisions. Count 4 seeks a declaration that Halliburton's royalty obligations are "suspended" due to non-infringement of the Asserted Claims, Complaint ¶ 78, allegedly invoking sections 8.03(b)-(e) and 8.04(b). Count 5 seeks a declaration of no breach because "Plaintiff's obligation to pay royalties have terminated now that the 12 core patents have expired," Complaint ¶ 82, allegedly invoking section 8.04(a). Conspicuously, Halliburton does not claim the License Agreement itself has terminated, merely that its obligation to pay royalties has terminated.  And presumably Halliburton is not suggesting that its claims were brought in bad faith.  As a result, no hypothetical claim of infringement could be brought by Defendants, and thus Plaintiff's claims for declaratory judgment of non-infringement (counts 1 & 2) do not assert claims created by federal patent law. Similarly, the hypothetical claim that Defendants could bring in response to count 5 (no breach of contract) would be a state law breach of contract claim.

Obviously, a breach of contract claim is not created by a federal statute or law. The only alternative route to create federal question jurisdiction would be to use the *Gunn v. Minton*, 568 U.S. 251 (2013), test. To explain, Plaintiff would have to show that Defendants' hypothetical breach of contract claim would fit into the "slim category" of state law claims that raise a

substantial question of patent law under *Gunn*, and thus Plaintiff's declaratory judgment claims of non-infringement and no breach arise under the patent laws. Plaintiff alleges that *Gunn* creates jurisdiction over its declaratory judgement of non-infringement claims, but Plaintiff simply alleges the existence of the *Gunn* factors without more. Complaint ¶ 2. Under *NeuroRepair, Inc. v. The Nath Law Grp.,* 781 F.3d 1340 (Fed. Cir. 2015), an issue constitutes a "substantial" issue of patent law where (1) there exists a "pure issue" of patent law that "is dispositive"; (2) the resolution of which "will control numerous other cases"; and (3) where the Government "has a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.*, at 1342. *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1382 (Fed. Cir. 2020). While these factors are "non-exclusive" and none "is necessarily controlling," *id.*, Defendants are not aware of any other factors that the Federal Circuit has articulated.

A garden-variety infringement dispute "is not enough" to trigger patent jurisdiction. *E.g.*, *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1382 (Fed. Cir. 2020); *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC,* 938 F.3d 1355, 1364 (Fed. Cir. 2019) (concluding a "run-of-the-mill question of infringement" issue embedded in a state law claim would not meet the *Gunn* test). While the infringement issue may be "significant to the particular parties in the immediate suit," that "will *always* be the case" and thus "the touchstone for 'substantiality' is whether allowing state courts to resolve the case would undermine 'the development of a uniform body of [patent] law." *Id.*, at 1364. In other words, the case may matter a lot to the parties (it may involve hundreds of millions of dollars) but that does not make it "substantial" in terms of patent law.

Plaintiff's Complaint makes clear that the alleged infringement issue is a fact-specific issue which does not implicate the development of a uniform body of patent law. Plaintiff simply alleges that its products do not meet one claim limitation in each of the '534 and '752 patents. Complaint

13

¶¶ 60 & 64. At most, the alleged infringement issue would involve a fact-bound inquiry into whether Plaintiff's specific products meet the claims in these patents. *AntennaSys, Inc.*, 976 F.3d, at 1382 ("Here, the federal issue—infringement of the patent in suit—is fact-bound and situation-specific. This case does not present a context-free interpretation of a patent statute, but requires merely that the court apply patent law to the facts of the case.").

Allowing Plaintiff's claim to proceed in federal court also would upset the federal-state balance (*Gunn* factor 4). According to Plaintiff, all that is required to create federal jurisdiction over a state law breach of contract claim between non-diverse parties is for a declaratory judgment plaintiff to assert that the payment of royalties depends on infringement and that the plaintiff did not infringe. Such a rule would result in "gamesmanship in non-diversity actions [that] would upset the balance between state and federal courts" because a party simply could assert non-infringement and avoid state court. *Id.*, at 1369 ("[A] plaintiff could create a federal jurisdictional hook to avoid state court in any case involving almost any state law claim by doing little more than pleading allegations that involve an embedded infringement or validity analysis. Clearly, such gamesmanship in non-diversity actions would upset the balance between state and federal courts."). This gamesmanship would be magnified if the rule were (as Plaintiff may contend) that a court must accept a plaintiff's allegations about the contract terms because the Court is precluded from resolving interpretative disputes based on the plain language.  A plaintiff simply would have to proffer even an unreasonable contract interpretation that raised an alleged patent issue to avoid state court. As a result, even if the Court concludes a "case or controversy" exists because the Parties dispute the interpretation of the contract, the dispute does not automatically "arise under" the patent law. *See, e.g., STC UNM v. Quest Diagnostics, Inc.*, 2020 WL 4734899 (D.N.M. Aug. 14, 2020).

Defendants anticipate that in response, Plaintiff will rely on *U.S. Valves Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) and/or *Jang v. Boston Scientific Corp.*, 767 F.3d 1334 (Fed. Cir. 2014). In fact, some district courts have concluded that infringement raises a substantial question of patent law by simply citing the Federal Circuit's decisions in *U.S. Valves* or *Jang*. *E.g.*, *Levi Strauss & Co. Aqua Dynamics Sys. Inc.*, 2016 WL 1365946, at *6 (N.D. Cal. Apr. 6, 2016) (relying exclusively on *Jang*); *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2018 WL 9537931, 1 (S.D. Cal. Mar. 23, 2018) (relying on *U.S. Valves* and *Jang*). These courts have simply failed to engage in the analysis required by the Federal Circuit's decisions in *AntennaSys.* and *Inspired Development.* Moreover, the Federal Circuit expressly rejected this line of reasoning. *See AntennaSys, Inc.*, 976 F.3d, at 1381 ("Citing a case [*U.S. Valves Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000)] from this court that long predates *Gunn v. Minton*, [Appellant] contends that, whenever a state court claim requires a court to engage in claim construction, the claim necessarily arises under the Patent Act. We disagree."); *Inspired Development*, 938 F.3d, at 1365 ("Thus, the reasoning in *Jang* turned on the system-wide conflict that could arise in the federal courts if regional circuits reached different conclusions about validity."). In short, this Court should not find persuasive cases that rely on *Jang* and *U.S. Valves* to find jurisdiction under *Gunn* without further reasoning.

### III.   Plaintiff's *Brulotte* Declaratory Judgment (Count 3) Does not Arise Under the Federal Patent Law.

Count 3 seeks a declaration that Plaintiff owes no royalties because any effort to collect royalties after October 22, 2021 (when the 12 so-called "core" patents expired) would violate *Brulotte.* Complaint ¶ 67. Black-latter law holds that a federal affirmative defense does not create federal jurisdiction when asserted as a declaratory judgment claim. *See Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983). The *Brulotte*

doctrine is a species of patent misuse, which is an affirmative defense. *E.g.*, *Broadband iTV, Inc. v. OpenTV, Inc.*, 2018 WL 4927935, at *6 (N.D. Cal. Feb. 22, 2018) ("[T]his Court finds that it would not be proper to allow OpenTV to bring an affirmative cause of action for declaratory relief on patent misuse in this case [involving breach of a license agreement]."); *Arconic Corp. v. Novelis Inc.,* 2023 WL 3025390, at *5 (W.D. Penn. Apr. 20, 2023) (same and citing multiple similar cases). As a result, black-letter law also holds that assertion of *Brulotte* as a defense does not create federal jurisdiction. *Scheiber v. Dolby Lab's, Inc.*, 293 F.3d 1014, 1016 (7th Cir. 2002) (Posner, J.) ("The presence of a federal defense (here, patent misuse [based on *Brulotte*]) is irrelevant to jurisdiction."). The fact that the defense is asserted as a declaratory judgment claim makes no difference. *Cf. ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373 (Fed. Cir. 2008) (patent exhaustion is "a defense to patent infringement, not a cause of action" and "claims, which merely invoke defenses to hypothetical claims of patent infringement do not 'arise under' the patent laws.").

In addition, the existence of a *Brulotte* defense to a state law claim could not cause the claim to fit within the "special and small category" of state law claims that raise substantial issues of patent law under *Gunn v. Minton*. First, *Gunn* did not purport to change the long-standing rule that the Declaratory Judgment Act cannot be used to create federal jurisdiction by asserting an affirmative defense as declaratory judgment claim. Second, even if one applied *Gunn*, an affirmative defense could never give rise to jurisdiction because a plaintiff's state law claim could never "necessarily raise[s]" any particular affirmative defense (*Gunn* factor 1). Obviously, a patent law affirmative defense would never be "a necessary element" of a plaintiff's well-pleaded claim. *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1342 (Fed. Cir. 2015) ("[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded

claims.").[3] Not only is *Brulotte* not an element of any state law claim for breach of a license but also whether it would get raised at all is entirely up to the licensee; the plaintiff's claim does not "necessarily raise" the defense.

## IV.    Plaintiff's Declaratory Judgment that Royalties Are Suspended Due to Expiration of 12 Patents (Count 4) Does Not Arise Under Patent Law.

Plaintiff seeks a declaratory judgment that royalties suspended due to expiration of 12 patents that contained Asserted Claims. Complaint ¶ 78. This claim raises nothing more than a dispute about the meaning and interplay of the contractual provisions. Specifically, section 8.03(b)-(e) provides for suspension of royalties if certain conduct is found not to infringe particular "Asserted Claims." Ex. B § 8.03(b). The "Asserted Claims" are defined to be claims in patents asserted in patent infringement litigation by Defendants (the "Asserted Patents"). *Id*. §§ 2.01 & 2.02. Plaintiff claims that because the 12 patents have expired, the "Asserted Claims" cannot be infringed and thus royalties are suspended under section 8.03(b)-(e).

While Plaintiff's construction of the relevant contract provisions is manifestly unreasonable, *see infra*, at 18-19, this does not matter for deciding whether jurisdiction exists. Plaintiff's declaratory judgment claim could not possibly arise under the patent law. The hypothetical claim that Defendants would bring in response to this declaratory judgment that royalties have been suspended under the terms of the License Agreement would be a state law breach of contract claim. There is no plausible argument that this state law claim could meet the

---

[3] The Fifth Circuit caselaw on this subject is sparse and conflicting. In *Natec, Inc. v. Deter Co.*, 28 F.3d 28 (5th Cir. 1994), in addressing the statute defining the scope of the Federal Circuit's jurisdiction, the court asserted in a single sentence without analysis that *Brulotte* raised a substantial issue of patent law implicating the Federal Circuit's jurisdiction. But more recently, the Fifth Circuit has said the exact opposite and expressly adopted the ruling in *Scheiber v. Dolby* addressing *Brulotte*: "A suit to enforce a patent licensing agreement does not arise under federal patent law and the presence of a federal defense is irrelevant to jurisdiction." *Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.*, 374 Fed. App'x 482, 484 (5th Cir. 2010) (quoting *Scheiber*) (brackets omitted).

*Gunn* test: (1) the only embedded patent issue (infringement of the 12 expired patents) would  not be "actually disputed" (*Gunn* factor 1) because it is undisputed that there can be no liability for infringing the 12 patents containing the "Asserted Claims" that have expired; and (2) whether certain now-expired claims are infringed could not be a less insubstantial issue of patent law (infringement of expired patents is utterly irrelevant to the development of uniform patent law).

## V.      Plaintiff's Declaratory Judgment that Royalties Are Suspended Due to Expiration of 12 Patents (Count 4) Fails to State a Claim.

In the event this Court decides jurisdiction exists, Plaintiff's declaratory judgment that royalties are suspended due to expiration of the so-called 12 core patents fails to state a claim. "Texas courts . . . examine the entire contract in an effort to harmonize and give effect to all provisions so that none is rendered meaningless." *WBCMT 2007 C33 Office 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 478 (5th Cir. 2016). As noted above, upon a finding of non-infringement of the Asserted Claims, royalties are suspended (upon a "final, *appealable* judgment") under section 8.03(b)-(e) and eventually terminated (upon an appellate court affirming the judgment) under section 8.04(b). Under Plaintiff's construction, royalties would be suspended and then terminated when the requested declaratory judgment is entered because the alleged "Asserted Patents" containing the "Asserted Claims" have expired. This construction must be rejected as unreasonable because it fails to reconcile all the provisions of the License Agreement and renders other provisions meaningless. Specifically, section 8.04(a) provides:

> **Expiration of All Licensed RH Patents**. Upon expiration of ***all*** of the ***Licensed RH Patents*** (including by abandonment through failure to pay maintenance fees or invalidation through a non-appealable court decision), ***Halliburton's obligation to pay royalties*** to ReedHycalog Section 6.0l(b) and Section 6.0l(c) for any Licensed Halliburton Drill Bits and for cutter sales to its minority owned joint venture ***shall be terminated***.

Ex. B §8.04(a). "Licensed RH Patents" includes more than merely the "claims from some of the 12 core patents." *See* Complaint ¶ 74." Under Plaintiff's construction of sections 8.03(b)-(e) and

8.04(b), however, royalties are terminated upon expiration of the "Asserted Patents." This interpretation renders section 8.04(a) meaningless and must be rejected as a matter of law.

## VI.    Plaintiff's Declaratory Judgment of No Breach Due to Non-Infringement (Count 5) Fails to State a Claim.

Plaintiff seeks a declaration of no breach of contract because the Plaintiff does not infringe any of the unexpired "Licensed RH Patents" and thus Plaintiff owes no royalties. Complaint ¶ 84. As outlined above, the License Agreement unambiguously requires payment of royalties regardless of any infringement. *Supra*, at 8-11. As a result, if this Court finds jurisdiction exists over this claim, this Court should dismiss for failure to state a claim.

## CONCLUSION

For at least the foregoing reasons, this Court should dismiss Plaintiff's claims in their entirety for lack of jurisdiction. In the event the Court finds jurisdiction exists, the Court should dismiss Plaintiff's counts 4 and 5 for failure to state a claim.

A proposed Order is submitted herewith.

Dated: June 7, 2023

*Of counsel*

MCAUGHAN DEAVER PLLC

Robert J. McAughan, Jr.
Texas Bar No. 00786096
SDTX 16500
Albert B. Deaver, Jr.
Texas Bar No. 05703800
SDTX 11300
MCAUGHAN DEAVER PLLC
550 Westcott, Suite 375
Houston, Texas 77007
bmcaughan@md-iplaw.com
713.829.3851
adeaver@md-iplaw.com
281.460.2315

Respectfully Submitted,

SUSMAN GODFREY L.L.P.

Harry P. Susman
Texas Bar No. 24008875
SDTX 23067
Armando Lozano
Texas Bar No. 24120467
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
713.651.9366
hsusman@susmangodfrey.com
alozano@susmangodfrey.com

ATTORNEYS FOR DEFENDANTS

19

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument has been served

on all counsel of record via this Court's ECF System on this 7th day of June 2023.

*/s/ Harry P. Susman*
Harry P. Susman

20