# Exhibit L

Case 4:23-cv-01789 Document 17-12 Filed on 06/07/23 in TXSD Page 2 of 8

Verance Corp. v. Digimarc Corp. (Delaware), Not Reported in F.Supp.2d (2011)

2011 WL 2182119
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

VERANCE CORP., Plaintiff.
v.
DIGIMARC CORP. (DELAWARE),
Digimarc Corp. (Oregon), & IV Digital
Multimedia Inventions, LLC, Defendants.

Civil Action No. 10–831.
|
June 2, 2011.

**Attorneys and Law Firms**

Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE, Alfred R. Fabricant, Lawrence C. Drucker, Peter Lambrianakos, Dickstein Shapiro LLP, New York, NY, Matthew B. Weinstein, Dickstein Shapiro LLP, Washington, DC, for Plaintiff.

Kenneth Laurence Dorsney, Morris James LLP, Brian E. Farnan, Farnan LLP, Wilmington, DE, for Defendants.

### *MEMORANDUM ON MOTION TO DISMISS*

BAYLSON, District Judge.

**\*1** Verance Corporation ("Verance") filed this action seeking a declaratory judgment that twenty-two of Digimarc Corporation's ("Digimarc") patents are invalid or that Verance's products do not infringe Digimarc's patents. Digimarc moved, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss for lack of subject matter jurisdiction on the basis that there is no actual case or controversy. (Mot. to Dismiss, ECF No. 14.) After careful consideration of the parties' briefing, oral argument, and the parties' post-argument letters, and for the following reasons, the Court will grant Digimarc's Motion. Verance should consider re-filing its patent claims in the matter pending in the District of Oregon.

**I.** *Factual and Procedural History*
According to the Complaint in this matter, Digimarc "licens[es] its intellectual property portfolio in the fields of digital watermarking and content identification." (Compl., ECF No. 1 ¶ 4.) "Watermarking technology allows imperceptible information to be placed in content," which permits the music and film industries to defend against piracy. (*Id.* ¶ 9.) Verance developed technology that is "incorporated into recording and playback devices for detection of the watermark in the content. If the watermark indicates that a particular use is unauthorized, playback or copying of content can be stopped or the audio muted." (*Id.* ¶ 12.)

When Digimarc formed, it obtained a patent from one of its founders relating primarily to image watermarking technology, as well as several pending applications for continuations-in-part of the original patent. (*Id.* ¶ 14.) Digimarc now owns more than 500 patents. (Horgan Decl., ECF No. 16, ¶ 5.) Some time in 1999 or 2000, Digimarc demanded that Verance, among others. license its patent portfolio. (Compl.¶ 15.)

In 2000, Digimarc filed two lawsuits against Verance claiming patent infringement and then filed a third suit in 2001. (*Id.* ¶ 16.) Digimarc also filed an infringement suit against a Verance customer. (*Id.*)

Verance and Digimarc entered into a renewable license agreement in April 2002 in resolution of the patent infringement litigation (the "License Agreement"). (*See* Horgan Decl., Ex. A.) Pursuant to the License Agreement, Verance agreed to pay Digimarc royalties for a "worldwide, non-exclusive, nontransferable ... non-sublicensable license under the Licensed Digimarc Patents to make, have made, use, import, sell and offer to sell Licensed Products and Services within the Fields of Use." (*Id.* at 5–6, 8–9.) The Licensed Digimarc Patents encompass "all patents issued, patent applications filed and patent claims owned by Digimarc" as of April 2002. (*Id.* at 2, 4.) The License Agreement goes on to define "Licensed Products and Services" as specific Verance products "which are developed by or for Verance and as to which right, title and interest are primarily owned by Verance." (*Id.* at 2.) "Fields of Use" are defined as "any use of audio watermarking in the audio portion of content for" audio copy protection and monitoring of electronically-distributed content.[1] (*Id.* at 5.) There is no provision in the License Agreement making Verance's payment obligations contingent on the validity or infringement of any Digimarc patents.

[1] The parties broadened the Fields of Use in a subsequent addendum. (*See* Horgan Decl., Ex. A at 19–20.)

Case 4:23-cv-01789 Document 17-12 Filed on 06/07/23 in TXSD Page 3 of 8

Verance Corp. v. Digimarc Corp. (Delaware), Not Reported in F.Supp.2d (2011)

**\*2** Although Verance has attempted to renegotiate the terms of the License Agreement. Digimarc has refused to modify the arrangement and has demanded Verance continue to pay royalties in full. (Compl.¶¶ 21–22.) Verance filed the instant Complaint seeking a declaratory judgment that twenty-two of Digimarc's patents are invalid or that Verance's products do not infringe the patents. (*Id.* ¶¶ 27–30, 32–35.) After Verance filed its Complaint in the District of Delaware, it ceased royalty payments to Digimarc, contending that it overpaid for the prior seven years. (Horgan Decl., Ex. B ¶ 17.) In light of Verance's actions, Digimarc filed a breach of contract claim in the District of Oregon (*see id.* Ex. B), in accordance with the License Agreement's forum selection clause (*id.* Ex. A at 17).

On January 27, 2011, Digimarc filed the instant Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter. Verance and Digimarc stipulated to IV Digital Multimedia Inventions, LLC's ("IV Digital") intervention. (Stip., ECF No. 30.) IV Digital joins in Digimarc's Motion. (*Id.* at 1.) After completion of briefing, the Court held oral argument on April 13, 2011.

## II. *Jurisdiction and Standard of Review*

### A. Jurisdiction

Verance contends that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1338 and 2201. *See* 28 U.S.C. § 1338 (granting federal courts subject matter jurisdiction in "any civil action relating to patents"); *see also Mack Trucks, Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,* 856 F.2d 579, 583 n. 4 (3d Cir.1988) (stating that § 2201 merely enlarges remedies available and court must identify independent basis for subject matter jurisdiction), A contractual forum selection clause does not deprive the Court of subject matter jurisdiction. *Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1212 n. 7 (3d Cir.1991) (citing *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

### B. Standard of Review

The first task in analyzing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is to classify the motion as either a facial or a factual attack. *CNA v. United States,* 535 F.3d 132, 139 (3d Cir.2008). A facial attack concerns an alleged pleading deficiency, whereas a factual attack concerns the actual failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites. *Id.*

On a facial attack, the Court must consider the allegations of the complaint as true. *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). In contrast, there are three important consequences of a factual attack: (1) there is no presumption of truthfulness; (2) the plaintiff bears the burden of proving subject matter jurisdiction; and (3) the Court has authority to make factual findings on the issue, and can look beyond the pleadings to do so. *CNA,* 535 F.3d at 145. For example, on a factual attack, the Court can consider affidavits, depositions, and other testimony to resolve factual issues bearing on jurisdiction. *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997). Indeed, if the defendant attaches factual materials to its motion to dismiss, the Court must treat it as a factual attack. *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir.1982).

## III. *Legal Standards*

### A. Alignment

**\*3** In patent suits, Federal Circuit precedent governs the Court's determination of whether it has subject matter jurisdiction. *See Minn. Mining & Mfg. Co. v. Norton Co.,* 929 F.2d 670, 672 (Fed.Cir.1991). In determining whether there is federal subject matter jurisdiction over a declaratory judgment action, the Court looks to the character of the threatened action, not the defense, to determine whether federal question jurisdiction exists. *ABB, Inc. v. Cooper Indus., LLC,* 635 F.3d 1245, No.2010–1227, 635 F.3d 1345, 2011 WL 553603, at \*3 (Fed.Cir. Feb.17, 2011). In other words, the Court examines the declaratory defendant's hypothetical well-pleaded complaint to determine if subject matter jurisdiction exists, and the federal question must appear in the hypothetical well-pleaded complaint, not the answer. *See id.* (concluding declaratory judgment action relating to infringement stems from a hypothetical patent infringement claim).

### B. Article III and the Declaratory Judgment Act

Article III limits the jurisdiction of federal courts to actual cases or controversies, and the Supreme Court has concluded that an appropriate action for declaratory relief can be a case or controversy within Article III. *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 126, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). The phrase "case of actual controversy" in the Declaratory Judgment Act refers to the type of "Cases" or "Controversies" that are justiciable under Article III. *Id.* at 126–27 (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S.

Case 4:23-cv-01789   Document 17-12   Filed on 06/07/23 in TXSD   Page 4 of 8

Verance Corp. v. Digimarc Corp. (Delaware), Not Reported in F.Supp.2d (2011)

227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937)); *see* 28 U.S.C. § 2201(a).

Article III encompasses several justiciability doctrines, including standing and ripeness, that are instructive in determining whether an action for declaratory relief raises an actual case or controversy. See *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.,* 482 F.3d 1330, 1337 (Fed.Cir.2007); *see also MedImmune,* 549 U.S. at 128 n. 8 (noting that standing and ripeness become the same question when a licensee seeks a declaration of invalidity). Federal courts are to decide only actual controversies by entering a judgment which can be carried into effect, and are not to give opinions on moot questions or abstract propositions, or to declare principles or rules which cannot affect the matter in the case before it. *Teva,* 482 F.3d at 1337–38. The declaratory plaintiff bears the burden of showing that declaratory jurisdiction existed at the time it filed its complaint and that it continues throughout the case. *Benitec Austl., Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1344 (Fed.Cir.2007) (citing *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).

### C. Declaratory Judgment Standards

"Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 127 (quoting *Md. Cas. Co. v. P. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). The dispute must be definite and concrete, touching the legal relations of the parties having adverse legal interests; i.e., it must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be based on a hypothetical state of facts. *Id.*

**\*4** For example, "the requirements of a case or controversy are met where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim." *Id.* at 131 (quoting *Altvater v. Freeman,* 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450. 365 (1943)) (alteration omitted). "There is, however, is no facile, all-purpose standard to police the line between declaratory judgment actions which satisfy the case or controversy requirement and those that do not. To the contrary, the 'difference ... is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.' " *Cat Tech LLC v. Tubemaster, Inc.,* 528 F.3d 871, 879 (Fed.Cir.2008) (quoting *Md. Cas.,* 312 U.S. at 273) (citations and alterations omitted). Thus, the Court must calibrate the analysis to the particular facts of each case under the guidance of *MedImmune* 's "basic" question. See *Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1336 (Fed.Cir.2008).

In *MedImmune,* the Supreme Court held that a patent licensee "[i]s not required, insofar as Article III is concerned, to break or terminate its ... license agreement before seeking a declaratory judgment in federal court that the underlying patent is invalid, unenforceable, or not infringed." 549 U.S. at 137. The licensee had filed suit seeking a declaration that the patents it licensed from the patent holder were invalid or that its products did not infringe the patents. *See id.* at 123–25. The licensee asserted that the contract, properly interpreted, did not require the payment of royalties because the patents do not cover its products and are otherwise invalid. *Id.* at 136. The license agreement at issue in *MedImmune* required the licensee to pay royalties on sales of "Licensed Products," defined "as a specified antibody, 'the manufacture, use or sale of which ... would, if not licensed under the Agreement, *infringe* one or more claims of one or both of the covered patents, which have *neither expired nor been held invalid* by a court or other body of competent jurisdiction ....' " *Id.* at 121 (alterations omitted and emphases added).

### IV. *Discussion*

#### A. Parties' Contentions

Digimarc filed its Motion contending that there is no actual case or controversy to support a declaratory judgment action. (Mot. Memo., ECF No. 15 at 1.) It asserts that the parties have no adverse legal interests and Verance failed to sufficiently plead immediacy. (*Id.* at 5, 8.) With regard to the legal interests argument, Digimarc contends that a finding of patent invalidity or non-infringement will not affect Verance's obligation to pay royalties under the License Agreement. (*Id.* at 7–8.) According to Digimarc, Verance's obligation does not turn on patent validity or infringement. (*Id.* at 8.) As for the immediacy argument, Digimarc asserts that Verance's allegations are based on subjective fears and one lawsuit more than eight years ago. which are insufficient to warrant declaratory relief, (*Id.* at 8–9.)

Case 4:23-cv-01789 Document 17-12 Filed on 06/07/23 in TXSD Page 5 of 8

Verance Corp. v. Digimarc Corp. (Delaware), Not Reported in F.Supp.2d (2011)

**\*5** In response, Verance argues that a finding of invalidity or non-infringement would eliminate its obligation to pay royalties under the License Agreement.[2] (Resp. Memo., ECF No. 20 at 2.) Indeed, Verance contends the Court should conclude that a judgment invalidating Digimarc's patents would void the License Agreement. (*Id.* at 8.) Regardless, resolution of its obligations under the License Agreement is an issue of proper contract interpretation which goes to the merits, not standing under Article III. (*Id.* at 8–9.) Instead, Verance argues, the Court should deny Digimarc's Motion because the case is indistinguishable from the facts of *MedImmune.* (*Id.* at 5–6.) As for immediacy, Verance notes that Digimarc has filed three infringement lawsuits against Verance in the past, repeatedly asserts its right to royalties, makes repeated veiled references to litigation, has a track record of litigious conduct as recent as 2009 and is primarily a licensing entity. (*Id.* at 10–12.)

[2] Verance supports this proposition by citing *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969); *American Sterilizer Co. v. Sybron Corp.,* 526 F.2d 542 (3d Cir.1975) [*American Sterilizer I* ]; *PPG Industries, Inc. v. Westwood Chemical, Inc.,* 530 F.2d 700 (6th Cir.1976); *American Sterilizer Co. v. Sybron Corp.,* 614 F.2d 890 (3d Cir.1980) [*American Sterilizer II* ]; and *Chromalloy American Corp. v. Fischmann,* 716 F.2d 683 (9th Cir.1983).

In reply, Digimarc argues this case is distinguishable from *MedImmune* because Verance's royalty obligations are not lied to patent validity or infringement. (Reply Memo., ECF No. 23 at 3–4, 9.) Further, there is no immediacy of a patent suit as evidenced by Digimarc's filing of a breach of contract claim, rather than an infringement claim, in the District of Oregon. (*Id.* at 10.)

### B. Analysis

Although the first step is to determine whether Digimarc makes a facial or a factual attack, *see CNA,* 535 F.3d at 139, Verance cannot show an actual case or controversy exists even under the plaintiff-friendly facial attack standard, *see Mortensen,* 549 F.2d at 891 (stating court must assume truth of allegations in complaint on facial attack). The factual materials included with the briefing, though ordinarily not considered on a facial attack, do not affect the outcome of the Motion.

Under the declaratory judgment analysis, the Court must align the parties, identify the hypothetical complaint, and confirm a federal question arises in the well-pleaded complaint. *See ABB,* 635 F.3d 1245, 2011 WL 553603, at \*3–4. In this case, the plaintiff in the hypothetical complaint is Digimarc, which could file either a breach of contract claim in the event Verance fails to meet its royalty obligations (which Digimarc filed in Oregon), or it could file a patent infringement suit. In the former situation, there is no federal question in the well-pleaded complaint, only in Verance's answer which would raise patent validity and non-infringement. But in the latter, the federal question appears in the well-pleaded complaint. *See* 28 U.S.C. § 1338 (granting jurisdiction over "any civil action relating to patents"). Because federal question jurisdiction exists in a hypothetical complaint, the alignment issue is satisfied.

The next question is whether the dispute in this case raises an actual case or controversy. Even assuming Verance alleges "sufficient immediacy and reality" to warrant the issuance of declaratory relief, there is no substantial controversy between parties having adverse legal interests. *See MedImmune,* 549 U.S. at 127. A declaration of invalidity or non-infringement by this Court, standing alone, would have no affect on Verance's obligations under the License Agreement.

**\*6** Some basic facts of this case are very similar to those of *MedImmune:* a licensor claims a right to royalties, the licensee asserts the underlying patents are invalid, and the licensee contends the licensor threatened legal action. *Compare id.* at 121–22; *with* Compl. ¶¶ 15–17, 22. But unlike the license in *MedImmune,* the License Agreement in this case defines Verance's obligation to pay royalties without regard to patent infringement or validity. (Horgan Decl., Ex. A at 2.)[3] In fact, there is no provision in the License Agreement or its addendums that make Verance's obligations contingent on patent validity or infringement.[4] Thus, a declaration of invalidity or non-infringement would not "admit of specific relief through a decree of conclusive character." *MedImmune,* 549 U.S. at 127. *Compare Powertech Tech., Inc. v. Tessara, Inc.,* No. 10–945, 2010 WL 2194829, at \*3 (N.D.Cal. June 1, 2010) (concluding there is no actual case or controversy when a licensee's obligation to pay royalties does not turn on whether the products are covered by the patent-in-suit), *with Linzer Prods. Corp. v. Sekar,* 499 F.Supp.2d 540, 543 n. 7, 550 n. 57, 560 (S.D.N.Y.2007) (finding actual controversy because agreement made validity of patents material to licensee's royalty obligation).[5]

Case 4:23-cv-01789   Document 17-12   Filed on 06/07/23 in TXSD   Page 6 of 8

Verance Corp. v. Digimarc Corp. (Delaware), Not Reported in F.Supp.2d (2011)

3   Verance also raises a second contract-interpretation issue—the scope of patents covered by the License Agreement, Verance contends the License Agreement only covers the twenty-two patents-in-suit, whereas Digimarc asserts that it covers "Licensed Digimarc Patents," defined as "all patents issued, patent applications filed and patent claims owned by Digimarc" as of April 2002. (Horgan Decl., Ex. A at 2, 4.) Digimarc's position is that a finding of invalidity on the patents-in-suit would not undermine Verance's obligation for the remainder of its portfolio. Even assuming Verance's argument has merit, limiting the scope of the License Agreement to the twenty-two patents-in-suit does not make Verance's obligation contingent on patent validity, which controls the justiciability of this matter.

4   Verance suggests that this analysis requires consideration of the merits of the case, which is a separate and subsequent consideration to whether the case is justiciable. (Resp. Memo. at 8–9 (citing *MedImmune,* 549 U.S. at 135–36).) But to determine whether the case is justiciable, the Court must determine whether the parties have adverse legal interests, *See MedImmune,* 549 U.S. at 127. Whether the parties have adverse legal interests depends on whether the declaratory relief sought would impact the parties' legal relations. This necessarily requires the Court to review the License Agreement to identify whether a finding of invalidity would obviate Verance's obligation to pay royalties, as Verance suggests.

5   Verance contends that this argument in *Powertech* is dicta because the court had already concluded there was no substantial case or controversy for an alternative reason. (Resp. Memo. at 9.) This does not render the second reason for dismissal dicta—the court found either ground alone sufficient for dismissal. *See Powertech,* 2010 WL 2194829, at *3. Moreover, the decision of another federal district court, like dicta, is merely persuasive.

Verance also contends that *Powertech* is unreliable because the court was "confused" about the scope of the license. (Resp. Memo. at 9 n. 12.) There is no confusion—early in its decision, the court summarized the plaintiff's allegations, which conflicted with the court's subsequent interpretation of the license. *See Powertech,* 2010 WL 2194829, at *1, 3. The Federal Circuit heard oral argument on the district court's decision in *Powertech* on May 4, 2011. *See Powertech Tech., Inc. v. Tessara, Inc.,* No.2010–1489 (Fed. Cir. filed Aug. 6, 2010).

Verance contends the parties have adverse legal interests because a finding of invalidity would render the License Agreement void and unenforceable, relying on *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). In *Lear,* the Supreme Court concluded, in a breach of contract claim, that a licensee can challenge the validity of a patent without repudiating the license agreement. *Id.* at 673. The Court overruled the doctrine of licensee estoppel which had previously precluded a patent licensee from challenging a patent's validity. *Id.* The licensee's obligations in *Lear,* however, were, like the licensee's obligations in *MedImmune,* contingent on the validity or infringement of the patent-in-suit. *See id.* Thus, *Lear* does not stand for the proposition Verance ascribes to the decision.

Under these circumstances, state contract law controls the enforceability of the License Agreement, not federal patent law. *See Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979) (noting that stale law controls unless preempted by federal patent law). Indeed, in *Aronson,* the Court noted that federal patent law does not preclude a royalty agreement for a patent which never issues, so long as the parties contemplated non-issuance. *Id.* at 261–63; *cf. Coast Metals, Inc. v. Cape,* No. 78–279, 1979 U.S. Dist. LEXIS 7798, at *12–13 (D.N.J. Dec. 24, 1979) (finding state law controls enforceability of contract for royalties for patent which expired prior to agreement). So long as Digimarc does not attempt to unlawfully create or maintain a patent monopoly, *see Brulotte v. Thys Co.,* 379 U.S. 29, 31–33, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), the enforceability of the License Agreement turns on state contract law.

*7   Verance's additional authority does not persuade the Court otherwise.[6] In *American Sterilizer I,* the Third Circuit held that a licensee need not exercise a termination provision in the license agreement before challenging patent validity and scope. 526 F.2d at 546–47. The Supreme Court acknowledged as much in *MedImmune,* 549 U.S. at 137, and Digimarc does not raise this issue. In *American Sterilizer II,* the court affirmed an award of royalty payments under a licensing agreement for the period preceding the licensee's complaint challenging the patent's validity. 614 F.2d at 892. In neither case did the Third Circuit hold that a license agreement

Case 4:23-cv-01789 Document 17-12 Filed on 06/07/23 in TXSD Page 7 of 8

Verance Corp. v. Digimarc Corp. (Delaware), Not Reported in F.Supp.2d (2011)

is void as a matter of law if a court subsequently determines the patent is invalid. *See also* PPG Indus. *., 530 F.2d at 705 (noting court previously refused to hold void *ab initio* an agreement voidable under *Lear*). In fact, "[t]here is no rule of law that requires a judicial finding of infringement as a prerequisite to licensing." *Metrologic Instruments, Inc. v. Symbol Techs., Inc.,* 254 F. App'x 128, 132 (3d Cir.2007).

[6] Digimarc argues that these cases considered agreement language similar to that in *MedImmune* and *Lear.* (Digimarc Letter Br., ECF No. 37.) After reviewing the cases, the Court cannot determine the language of the agreements at issue.

Indeed, the fact that *American Sterilizer II* required payment of any royalties at all under the agreement undermines Verance's contention that once a court invalidates the subject patent, the license agreement is void as a matter of law, *See also* Chromalloy, 716 F.2d at 685–86 (stating royalty obligation under license agreement may continue for non-patented assets); PPG Indus. *., 530 F.2d at 705 (noting licensee is not entitled to refund of royalties paid before patent declared invalid). Instead, the Third Circuit concluded the issue is whether, despite patent invalidity, the licensor still has a state-law contract claim against its licensee. *See* Am. Sterilizer II, 614 F.2d at 896.

In this case, the License Agreement is not contingent on the validity of the patent and, thus, a declaration of invalidity or non-infringement would not obviate Verance's royalty obligation under its terms as a matter of federal patent law. At oral argument, Verance could not identify any precedent or principle of law that an invalid patent automatically nullifies a license agreement which is not contingent on patent validity. Consequently, the parties do not have adverse legal interests and there is no actual case or controversy justifying the Court's jurisdiction.

Whether Verance faces continuing royalty obligations under *Lear* is a question of contract law more appropriately resolved in the context of Digimarc's breach of contract action in the District of Oregon. A declaration of invalidity or non-infringement in this Court does nothing for Verance; Verance would have to then argue in Oregon that the License Agreement does not require payment. [7] Strong as federal patent law policy may be, *see* Am. Sterilizer II, 614 F.2d at 896, it does not compel Verance's desired result in this case because Verance's royalty obligation is not tied to patent validity or infringement.

[7] Although there is no actual case or controversy before this Court, there may be a case or controversy in the context of the Oregon litigation. This Court concludes only that Verance's Complaint, standing alone, does not raise an actual case or controversy. But in the context of Digimarc's breach of contract action, a case or controversy may exist, This decision is not intended to be conclusive or to foreclose consideration in the Oregon litigation of the issues Verance raised before this Court. As noted above, patent invalidity or non-infringement may still raise a question of contract validity or enforceability under state law.

**V.** *Conclusion*

**\*8** For the foregoing reasons, the Court will grant Digimarc's Motion to Dismiss. Verance's Complaint is dismissed without prejudice to Verance's right to raise the same issues in the Oregon litigation. [8] An appropriate Order will follow.

[8] The Court considered, as it raised at oral argument, whether the case could or should be transferred to Oregon under 28 U.S.C. § 1404 or § 1406. No § 1404 motion has been filed and the Court cannot say such a transfer is proper under the terms of that statute. Similarly, § 1406 does not apply because venue is proper in this District. For these reasons, dismissal without prejudice for lack of an actual case or controversy is most appropriate.

*ORDER*

AND NOW, on this *26th* day of May, 2011, upon careful consideration of Defendants' Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter (ECF No. 14), Plaintiff's response thereto, the parties' supplemental letter briefing, and oral argument, it is hereby ORDERED that the Motion is GRANTED in accordance with the accompanying Memorandum on Motion to Dismiss, Plaintiff's Complaint is dismissed without prejudice to Plaintiff's right to raise the same issues in litigation between the parties pending in the District of Oregon. The Clerk shall mark this matter as CLOSED.

Verance Corp. v. Digimarc Corp. (Delaware), Not Reported in F.Supp.2d (2011)

Case 4:23-cv-01789   Document 17-12   Filed on 06/07/23 in TXSD   Page 8 of 8

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2182119

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.