**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:23-cv-01789 |
| GRANT PRIDECO, INC., REEDHYCALOG | § | |
| UK, LTD., REEDHYCALOG, LP, NOV | § | |
| INC., | § | |
| *Defendants.* | § | |

**PLAINTIFF HALLIBURTON ENERGY SERVICES, INC.'S
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. NO. 17)</u>**

### TABLE OF CONTENTS

I.      **STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT** ...................... 1

II.     **SUMMARY OF ARGUMENT** ......................................................................... 1

III.    **NATURE AND STAGE OF PROCEEDINGS**................................................. 2

IV.    **LEGAL STANDARDS** ...................................................................................... 3

       A.    Existence Of A Case Or Controversy ................................................... 3

       B.    Motion To Dismiss Under 12(b)(1) ...................................................... 3

       C.    Claims Arising Under Federal Patent Laws........................................... 4

       D.    Motion To Dismiss Under 12(b)(6) ...................................................... 4

V.      **ARGUMENT** ..................................................................................................... 4

       A.    An Actual Controversy Exists Regarding Halliburton's DJ Claims Of
           Non-Infringement (Counts I, II, and V)................................................ 5

           1.    Halliburton's DJ Of Non-Infringement Counts Present An Actual
                 Case Or Controversy Under *Medtronic* ..................................... 5

           2.    Defendants' Attempt To Distinguish *Medtronic* Invites This Court
                 To Ignore The Applicable Legal Standard.................................. 7

       B.    Halliburton's DJ Of No Breach of Contract (Count V) Creates An
           Independent Cause Of Action Arising Under Federal Patent Law...................... 14

       C.    Halliburton's *Brulotte* DJ (Count III) Arises Under The Federal Patent
           Laws..................................................................................................... 17

       D.    Halliburton's DJ Of Royalty Suspension (Count IV) Arises Under The
           Federal Patent Laws And State A Claim For Relief ............................. 19

       E.    Halliburton's DJ Of No Breach (Count V) States A Claim For Relief ............... 20

       F.    If This Court Does Not Completely Grant Defendants' Motion, It Should
           Exercise Supplemental Jurisdiction Over Any Claims Remaining ...................... 20

VI.    **CONCLUSION** .............................................................................................. 20

***All emphasis added unless otherwise indicated***

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3M Co. v. Avery Dennison Corp.*,
  673 F.3d 1372 (Fed. Cir. 2012)........................................................................3

*ABB Inc. v. Cooper Indus., LLC*,
  635 F.3d 1345 (Fed. Cir. 2011)........................................................................6

*Ameranth, Inc. v. ChowNow, Inc.*,
  2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) ..............................................8, 9, 17

*AntennaSys, Inc. v. AQYR Techs., Inc.*,
  976 F.3d 1374 (Fed. Cir. 2020).....................................................................4, 16

*Bd. of Regents Univ. of Tex. Sys. v. Mission Pharmacal Co.*,
  2006 WL 8436935 (N.D. Tex. June 12, 2006) ....................................................18

*Brulotte v. Thys Co.*,
  379 U.S. 29 (1964)...................................................................................17, 18

*C.R. Bard, Inc. v. Schwartz*,
  716 F.2d 874 (Fed. Cir. 1983).........................................................................6

*Engel Indus., Inc. v. Lockformer Co.*,
  96 F.3d 1398 (Fed. Cir. 1996).........................................................................11

*First Bank v. Brumitt*,
  519 S.W.3d 95 (Tex. 2017).............................................................................12

*Grant Prideco, Inc. v. Schlumberger Technology Corp.*,
  Civil Action No. 4:23-cv-00730 (S.D. Tex.) ................................................13, 16

*Gunn v. Minton*,
  568 U.S. 251 (2013).....................................................................................4, 15

*Halmekangas v. State Farm Fire & Cas. Co.*,
  603 F.3d 290 (5th Cir. 2010) .........................................................................20

*Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*,
  938 F.3d 1355 (Fed. Cir. 2019).................................................................16, 17

*Jang v. Boston Sci. Corp.*,
  767 F.3d 1334 (Fed. Cir. 2014)................................................................14, 15

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ...............................................................................4

*Kimble v. Marvel Ent., LLC*,
    576 U.S. 446 (2015).........................................................................................18

*Lane v. Halliburton*,
    529 F.3d 548 (5th Cir. 2008) .............................................................................19

*Legacy Separators LLC v. Halliburton Energy Servs. Inc.*,
    2015 WL 5093442 (S.D. Tex. Aug. 28, 2015) .....................................................20

*Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*,
    2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) .........................................14, 16, 17

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007).........................................................................3, 6, 7, 8

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
    571 U.S. 191 (2014).........................................................................5, 7, 13

*In re Mirant Corp*,
    675 F.3d 530 (5th Cir. 2012) .............................................................................8

*Montez v. Dep't of Navy*,
    392 F.3d 147 (5th Cir. 2004) .............................................................................4

*Natec, Inc. v. Deter Co.*,
    28 F.3d 28 (5th Cir. 1994) ...............................................................................18

*NeuroRepair, Inc. v. The Nath Law Grp.*,
    781 F.3d 1340 (Fed. Cir. 2015).....................................................................4, 16

*Powertech Tech. Inc. v. Tessera, Inc.*,
    660 F.3d 1301 (Fed. Cir. 2011).................................................................6, 7, 8, 12

*In re Qualcomm*,
    2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) .........................................................9

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ...........................................................................3, 7

*Rembrandt Diagnostics, LP v. Innovacon, Inc.*,
    2018 WL 9537931 (S.D. Cal. Mar. 23, 2018) .................................................16, 17

*STC.UNM v. Quest Diagnostics Inc.*,
    2020 WL 4734899 (D.N.M. Aug. 14, 2020) .......................................................16

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Verance Corp. v. Digimarc Corp.*,
    2011 WL 2182119 (D. Del. June 2, 2011)................................................................................9

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    395 U.S. 100 (1969)................................................................................11

**Statutes**

28 U.S.C. § 1338(a) ................................................................................5

28 U.S.C. § 2201(a) ................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................3, 4

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | *Ameranth, Inc. v. ChowNow, Inc.*, 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) |
| 2 | *In re Qualcomm,* 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) |
| 3 | *Verance Corp. v. Digimarc Corp.*, 2011 WL 2182119 (D. Del. June 2, 2011) |
| 4 | *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, 2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) |
| 5 | *STC.UNM v. Quest Diagnostics Inc.*, 2020 WL 4734899 (D.N.M. Aug. 14, 2020) |
| 6 | *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2018 WL 9537931 (S.D. Cal. Mar. 23, 2018) |
| 7 | *Board of Regents University of Texas System v. Mission Pharmacal Co.*, 2006 WL 8436935 (N.D. Tex. June 12, 2006) |
| 8 | *Legacy Separators LLC v. Halliburton Energy Servs. Inc.*, 2015 WL 5093442 (S.D. Tex. Aug. 28, 2015) |
| 9 | March 17, 2008 Form S-4 SEC Filing of National Oilwell Varco, Inc. |
| 10 | Press Releases Regarding NOV Licensees |
| 11 | U.S. Patent No. 6,585,064 |

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
| --- | --- |
| DJ | Declaratory Judgment. |
| Patent License | ReedHycalog – Halliburton Patent Cross-License Agreement, effective May 30, 2008.<br><br>*See* Dkt. 18-1, Ex. B. |
| Core Patents | U.S. Patent Nos. 6,861,098, 6,861,137, and 6,878,447 ("Thermal Characteristic Patents"), U.S. Patent No. 6,601,662 ("Impact Strength Patent"), and U.S. Patent Nos. 6,585,064, 6,589,640, 6,749,033, 6,544,308, 6,562,462, 6,592,985, 6,739,214, and 6,797,326 ("Other Core Patents").<br><br>*See* Dkt. 1 ¶ 15. |
| Asserted Patents | Patents that were asserted to judgment in any of ReedHycalog's litigations related to Leached Cutters.<br><br>Defined in Section 2.02 of the Patent License. *See* Dkt. 18-1, Ex. B § 2.02. |
| Asserted Claims | Claims of one or more Asserted Patents that were asserted to judgment in any of ReedHycalog's litigations related to Leached Cutters.<br><br>Defined in Section 2.01 of the Patent License. *See* Dkt. 18-1, Ex. B § 2.01. |

## I.    STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

1.    Whether Halliburton has pled a plausible set of facts under which Halliburton's declaratory judgment ("DJ") of non-infringement claims present an actual case or controversy?

2.    Whether Halliburton's DJ of no breach of contract, DJ that the Patent License is unlawful *per se* under the patent laws, or DJ of royalty suspension are claims arising under the federal patent laws per *Gunn*?

3.    Whether the Court should exercise supplemental jurisdiction over all of Halliburton's claims if it denies Defendants' motion as to any of Halliburton's claims?

## II.    SUMMARY OF ARGUMENT

To settle a prior patent infringement lawsuit, Halliburton and Defendants entered into a Patent License Agreement ("Patent License") under which Halliburton paid Defendants a royalty for use of certain of Defendants' patents. Dkt. 18-1, Ex. B. Under that agreement, Defendants and Halliburton recognized that each party "own[ed] or possess[ed] rights under patents … covering inventions pertinent" to certain technology, and that each party "wants to respect the technology contributions of the other Parties and wants to design and manufacture their own products without infringing the rights of the others…" and Halliburton agreed to pay Defendants a royalty for use of Defendants' patents. *Id.*, §§ 1.05, 1.07.

Halliburton, however, does not use any of Defendants' remaining unexpired patents. Indeed, Defendants' core patents under the agreement expired in 2021. Owing no royalties under the terms of the Patent License, Halliburton stopped paying royalties. After Defendants asserted that Halliburton continued to owe royalties, Halliburton filed this DJ action of non-infringement seeking to vindicate its rights. The fundamental dispute between the parties is whether Halliburton owes royalties under the Patent License and that, in turn, is based on whether Halliburton infringes the Patents. This presents a controversy between the parties, the resolution of which turns on issues of infringement. The Supreme Court in *Medtronic* found such a situation presents an actual case or controversy that must be resolved in federal court.

In seeking to avoid having the patent infringement dispute resolved in federal court, Defendants present a host of arguments that depend on tortured interpretations of the Patent License. To be sure, Defendants are wrong—Halliburton does not owe any royalties if it does not practice a licensed patent. But the Court need not make such a merits determination on a motion to dismiss. At this juncture, it is sufficient that Halliburton has pled a plausible set of facts raising an actual case or controversy between the parties that hinges on whether Halliburton infringes Defendants' patents. Defendants' narrow reading of the Patent License and unsupported assertion that the Patent License is a portfolio license is irrelevant at this juncture.

Even if Halliburton's non-infringement declaratory judgment claims do not confer federal jurisdiction (and, to be clear, they do), Halliburton's other claims do. Under the *Gunn* test, Halliburton's claim for DJ of no breach of contract implicates federal patent laws at every turn, as does Halliburton's claim that under Defendants' interpretation the contract is *per se* unlawful under *Brulotte*—an issue that the Fifth Circuit has explicitly found arises under federal law. So too does Halliburton's DJ claim of royalty suspension based on non-infringement. Indeed, although Defendants ***admit*** that Halliburton does not infringe the 12 Core Patents, they refuse to agree to royalty suspension, thus creating a dispute under the patent laws.

The issues between the parties are significant and resolution of these rights have broad implications for the energy sector writ large. Given the importance of the patent issues, the federal courts can and should resolve these issues. The Declaratory Judgment Act, as well as *Gunn*, establish that this Court has jurisdiction, and Defendants' motion to dismiss should be denied.

## III.  NATURE AND STAGE OF PROCEEDINGS

Halliburton filed a Complaint in this Court on May 15, 2023, seeking DJs of noninfringement of U.S. Patent No. 7,568,534 ("the 534 Patent") and U.S. Patent No. 8,721,752 ("the '752 Patent") (collectively "the Patents") (Counts I and II); a DJ that Halliburton owes no

royalties under the agreement because it is unlawful for Defendants to require the payment of royalties accruing after the patents incorporated into Plaintiff's products have expired, under at least *Brulotte* and its progeny (Count III); a DJ that the Core Patents are not infringed after October 22, 2021 because they are expired (Count IV); and a DJ of no breach of contract because Halliburton's obligations to pay royalties have ended (Count V). Compl., ¶¶ 58-85.

On June 7, 2023, Defendants moved to dismiss Halliburton's claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. In the alternative, Defendants moved to dismiss Counts IV and V under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## IV.   LEGAL STANDARDS

### A.   Existence Of A Case Or Controversy

"In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Courts examine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement . . . is governed by Federal Circuit law." *See 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

### B.   Motion To Dismiss Under 12(b)(1)

"[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the [party asserting jurisdiction] cannot prove any set of facts in support of his claim that would entitle [that party] to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[W]here issues of fact are central both to subject matter jurisdiction and the claim on

the merits, . . . the trial court must assume jurisdiction and proceed to the merits." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004).

### C.     Claims Arising Under Federal Patent Laws

The parties dispute the correct standard for evaluating whether a claim arises under federal patent law, an issue that pervades Defendants' motion to dismiss Counts III, IV, and V. As the Supreme Court found in *Gunn*, a claim not created by federal law can still arise under the federal patent law if "the federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). As binding Supreme Court precedent, the *Gunn* test controls. By contrast, Defendants focus on *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1342 (Fed. Cir. 2015). Mot. at 13. But as even Defendants acknowledge, the *NeuroRepair* factors are "nonexclusive," not "necessarily controlling" and may only help inform the analysis of one factor of the *Gunn* test—"the substantiality inquiry." 781 F.3d at 1345; *see also AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1382 (Fed. Cir. 2020).

### D.     Motion To Dismiss Under 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a 12(b)(6) motion, the district court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

## V.     ARGUMENT

Patent infringement issues permeate all five of Halliburton's claims. These claims are directly created by a federal statute (Counts I and II) or arise under the federal patent laws based on *Gunn* (Counts III, IV, and V) and present an actual case or controversy (all Counts). Though all the claims belong in federal court, the Court need only to decide whether ***one*** of Halliburton's

claims does so. Once the Court finds federal jurisdiction exists for a single claim, the Court can and should exercise supplemental jurisdiction over all remaining claims.

### A.   An Actual Controversy Exists Regarding Halliburton's DJ Claims Of Non-Infringement (Counts I, II, and V)

Halliburton seeks a DJ that it does not infringe the Patents (Counts I, II) and a DJ that it does not owe royalties under the Patent License for the same reason (Count V). Binding Supreme Court precedent of *Medtronic* establishes that a case or controversy exists when a licensee stops making payments under a royalty agreement and, instead, seeks a DJ of non-infringement. That is exactly what happened here.

In arguing to the contrary, Defendants ***assume*** their interpretation of the Patent License is right and, based on that interpretation, argue that no case or controversy exists regarding infringement. But the text of the Patent License—that the royalty obligation arises "under the Licensed RH Patents," among other provisions—rebut Defendants' interpretation. Moreover, the Court need not actually decide the merits of interpreting the Patent License now. It is enough that Halliburton's complaint has alleged a plausible set of facts under which Halliburton's obligation to pay royalties hinges on use of the Patents. As the complaint does so, Halliburton's DJ of non-infringement is an actual controversy that must be resolved in this Court. *See* 28 U.S.C. § 1338(a).

#### 1.   Halliburton's DJ Of Non-Infringement Counts Present An Actual Case Or Controversy Under *Medtronic*

Halliburton stopped paying Defendants royalties under the Patent License and, instead, sought a DJ of non-infringement of the Patents. In *Medtronic*, the Supreme Court determined that this presents an actual case or controversy under the Declaratory Judgment Act. *See Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 196–203 (2014). There, as here, the parties entered into a patent licensing agreement in which one party (Medtronic) licensed patents from another party (Mirowski) in exchange for a royalty payment. *Id.* at 194. There, as here, the licensee

brought a DJ action of non-infringement alleging it owed no royalties because it did not infringe. *Id.* at 195. Amici in that case argued, like Defendants here, there was no federal jurisdiction because the threatened coercive action in "would not be a patent infringement action but, rather, an action for damages for *breach of contract*, namely an action for breach of the Mirowski–Medtronic licensing contract, in which patent infringement is the central issue." *Id.* at 196–97 (original emphasis). The Supreme Court ***rejected*** that argument, holding that "Medtronic believes—and seeks to establish in this declaratory judgment suit—that it does not owe royalties because its products are noninfringing…. Consequently this declaratory judgment action, which avoids that threatened action, also 'arises under' federal patent law." *Id.* at 197; *MedImmune*, 549 U.S. at 123-24 (case or controversy exists where licensee "dispute[d] its obligation to make payments under the [] License Agreement because [it argued it] . . . does not infringe any valid claim of the [licensed] Patent.").

The Federal Circuit has held that a case or controversy exists when a party's obligations to pay royalties turns on issues of patent infringement. In *Powertech Technology Inc. v. Tessera, Inc.*, the parties disputed whether royalties were owed under a contract were contingent on the validity and infringement of a patent. 660 F.3d 1301, 1308–10 (Fed. Cir. 2011). The Federal Circuit held the parties' dispute "as to whether the license agreement require[d] royalty payments to be tied to valid patent coverage [was] sufficient to support declaratory judgment jurisdiction." *Id.* at 1310 (citing *MedImmune*, 549 U.S. at 135–36); *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1349 (Fed. Cir. 2011) (finding declaratory-judgment jurisdiction where liability turned on issues of infringement); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880-81 (Fed. Cir. 1983) (case or controversy existed where licensee "had ceased payment of royalties" and thus licensor "could at any time take action against [licensee] by bringing an infringement suit").

Here, as in those controlling cases, Halliburton and Defendants entered into a Patent License. Compl., ¶¶ 24–28. Here, too, Halliburton asserts it has no obligation to pay royalties because it does not infringe the Patents. Compl., ¶ 37; Mot. at 2 (asserting Halliburton "terminat[ed] its royalty obligations prematurely"). Here, likewise, Halliburton filed a DJ action of non-infringement seeking to vindicate its position. Compl., ¶¶ 58–65. Thus, here—just as in those controlling cases—there is a clearly defined case or controversy under the Declaratory Judgment Act. *Medtronic*, 571 U.S. at 197-98; *MedImmune*, 549 U.S. at 128; *Powertech*, 660 F.3d at 1310. Simply put, *Medtronic* is dispositive.

2.   Defendants' Attempt To Distinguish *Medtronic* Invites This Court To Ignore The Applicable Legal Standard

Defendants argue that *Medtronic* is not controlling because, in its view, the Court can determine "as a matter of law" that Halliburton's royalty obligation does not "depend[] on whether [Halliburton] practices any of the licensed patents." Mot. at 8. Defendants' contractual interpretation is not only wrong but, at minimum, Halliburton has pled facts sufficient for the court to find a case or controversy exists under the Declaratory Judgment Act.

As a threshold matter, Defendants make ***no mention*** of the controlling standard for whether to grant its motion to dismiss under 12(b)(1); presumably because it is quite unfavorable to Defendants' argument. As Defendants' own cited case acknowledges, "a motion to dismiss for lack of subject matter jurisdiction should be granted ***only if it appears certain*** that the [party asserting jurisdiction] cannot prove ***any*** set of facts in support of his claim that would entitle [that party] to relief." *Ramming*, 281 F.3d at 161. Thus, while Halliburton agrees it has the burden to show jurisdiction exists, Halliburton meets that burden by setting forth a "set of plausible facts" sufficient for the Court to exercise jurisdiction.

"[U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering ***any*** of

7

the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012). Thus, Halliburton can meet its burden by showing a plausible set of facts under which the Patent License creates a case or controversy regarding non-infringement in ***any*** of three ways. Though the Court can exercise jurisdiction based on only one, here the Court can exercise jurisdiction under all three.

a.    *The Complaint Presents A Plausible Set Of Facts Under Which There Is A Controversy Regarding Infringement Of The Patents*

Considering the "complaint alone," there is a plausible set of facts sufficient to create a case or controversy regarding non-infringement of the Patents. As set forth in the Complaint, the Patent License's express terms require that Halliburton be operating under—*i.e.*, practice—a Licensed RH Patent for royalties to be paid; thus, not infringing the patents means Halliburton owes no royalties. Compl., ¶¶ 24–28. To be sure, Defendants dispute Halliburton's interpretation of the Patent License. But "[t]he Supreme Court in *MedImmune* made clear that … the issue of contract interpretation is a merits issue, not appropriate to decision on a motion to dismiss under Rule 12(b)(1)." *Powertech*, 660 F.3d at 1309–10 (citing *MedImmune*, 549 U.S. at 135–36). Even though Halliburton's interpretation of the Patent License is correct, for the Court to find an actual case or controversy exists it need only find that Halliburton's complaint alleges a ***plausible*** set of facts under which Halliburton's obligation raises issues of non-infringement.

Were there any doubt about whether Halliburton's interpretation is correct (or, at minimum, plausible), other courts support Halliburton's view of the Patent License. For example, the court in *Ameranth, Inc. v. ChowNow, Inc.*, 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) (Ex. 1) confronted a similar agreement and arrived at the same conclusion. There, the relevant agreement stated, "during the term of this Agreement, and subject to full and timely payment of

8

all amounts due to Ameranth, . . . Ameranth hereby grants to ChowNow a non-exclusive, non-transferable . . . worldwide license . . . *under the Licensed Patents* within the Field of Use." *Id.* at *10 (original emphasis) (annotations deleted). That meant, "Defendant only owes royalties for practicing Plaintiff's Licensed Patents within the Fields of Use, but if Defendant performs activities within the Fields of Use ***without implicating*** Plaintiff's Licensed Patents, Defendant would owe no royalties." *Id.* Here, as in *Ameranth,* the Patent License was granted "*under the Licensed RH Patents,*" Dkt. 18-1, Ex. B § 3.01, and thus Halliburton's royalty obligations are extinguished if there is no infringement of the Patents.

Defendants rely on *In re Qualcomm* and *Verance Corp*, to argue that there is no case or controversy. Mot. at 7-8. Both, however, are inapposite. *In re Qualcomm* involved royalty obligations that were "not dependent on whether the Additional Patents-in-Suit are valid or infringed" and "the parties [had not] presented developed legal arguments requiring contract interpretation to determine issues involving legal necessity and patent misuse." 2017 WL 5985598, at *21-22 (S.D. Cal. Nov. 8, 2017) (Ex. 2). Moreover, in *Qualcomm* the court determined that a DJ action involving nine patents out of "thousands of patents" would not impact the legal relationship between the parties. *Id.* at *22. *Verance* also involved a DJ of noninfringement that would not have altered the legal relationship between the parties because there was "no provision in the License Agreement or its addendums that ma[de] Verance's obligations contingent on patent validity or infringement." *Verance Corp. v. Digimarc Corp.*, 2011 WL 2182119, at *6 (D. Del. June 2, 2011) (Ex. 3).

Neither *Qualcomm* nor *Verance* is relevant because, unlike the contracts at issue in those cases, Halliburton has explained in its complaint and this opposition that the Patent License requires the patents be practiced for royalties to be owed. *See Ameranth*, 2021 WL 3686056, at

*11 n.12 (distinguishing *Qualcomm* and *Verance* because they "involved licensing agreements that did not require the licensee to practice the claims of the patent in order to incur royalty obligations."). Halliburton's DJ of non-infringement would thus impact the legal relationship between the parties and a case or controversy exists regarding non-infringement of the Patents.

> b.   *The Complaint And The Undisputed Evidence Present A Plausible Set Of Facts Under Which There Is A Controversy Regarding Infringement Of The Patents*

Halliburton can also meet its burden to establish a case or controversy exists over the infringement of the Patents based on "the complaint supplemented by the undisputed facts evidenced in the record"—here, specific provisions of the Patent License. The other provisions of the Patent License confirm that Halliburton must practice a licensed patent for Halliburton to have any royalty obligations. For example, the "WHEREAS" clauses provide that:

- "the Parties each own or ***possess rights under patents and patent applications*** covering inventions pertinent to the design, manufacture and use of Leached PCD elements, PDC's, drill bits and/or other tools which may utilize Leached PCD elements or PDC's," and

- "each Party wants to respect the technology contributions of the other Parties and wants to design and manufacture their own products ***without infringing the rights of the others under any patent or patent application*** owned or controlled by the Parties"

Dkt. 18-1, Ex. B Art. I. Further, Section 6.01(f) specifically defines certain "PDC cutters and PDC Bits" as "Non-Infringing Products/Processes" that are therefore not subject to royalties. *Id.* § 6.01(f) (defining products that "do not infringe the Licensed RH Patents and are not considered partially leached cutters"). And, "Licensed Halliburton Drill Bits" is defined as "PDC Bits . . . containing at least one PCD element and/or PDC Cutter" with certain leaching depths that are tied to certain claims of the 12 Core Patents. *Id.* § 2.04(b); *e.g.*, Ex. 11, claim 1. Additionally, the Patent License defines "Asserted Patents" as among the 12 Core Patents, and ties the end of royalty obligations to non-infringement of the Asserted Claims. Dkt. 18-1, Ex. B §§ 2.02, 8.03. And Defendants have described other leaching licenses as "***for the use of ReedHycalog's patented***

10

*technology*." Ex. 9 at 18.

Defendants, by contrast, read Section 6.01 in isolation and argue that it requires Halliburton to pay royalties on every invoiced product, regardless of whether it uses a patent or not, because "[t]here is no reason why the scope of rights granted to [Halliburton] has to mirror [Halliburton's] obligation to pay royalties." Mot. at 9. Defendants are mistaken. The question is not whether the scope of rights contracted in every contract ***must*** mirror the obligation to pay royalties; the question is whether the Patent License, read as a whole, premises Halliburton's royalty obligation on using the Patents. The fact that the Patent License derived from a patent litigation as well as the numerous provisions set forth above referencing infringement or non-infringement establish Halliburton owes royalties under ***this*** Patent License only if it is using the Patents. *Zenith Radio Corp.*, relied on by Defendants, is not to the contrary. There, the Supreme Court merely agreed that an agreement ***could***—in some circumstances—include provisions measuring royalties owed based on sales of product not covered by a patent. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 134–41 (1969). Even in *Zenith*, the Supreme Court remanded to determine whether the licensor had improperly leveraged its patent power to demand royalties on unpatented products. *Id.* Defendants' reliance on *Engel* is similarly misplaced, as that case dealt with whether a patentee improperly used its market power to force a licensee to accept a royalty agreement. *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996). Neither case controls the Patent License at issue here. Thus, were the Court to consider the complaint supplemented by undisputed facts, that too results in a denial of Defendants' motion.

         c.     *Defendants' Motion Depends On The Court Accepting Defendants' Incorrect Interpretation Of Disputed Facts*

Defendants do not truly dispute that Halliburton has presented a plausible set of facts under which infringement of the Patents is at issue, based on the complaint itself or the complaint

supplemented with the undisputed record. Indeed, Defendants implicitly concede as much by informing this Court it "does not have to accept a plaintiff's allegations as true" and pointing to only the third situation—"the complaint supplemented by undisputed facts plus the court's resolution of disputed facts" —as a basis for the Court to grant its motion. Mot. at 8. The Court need not and should not reach this issue. Resolving the factual disputes is particularly inappropriate here because the parties clearly dispute provisions of the Patent License. While Halliburton contends its position is correct for at least the reasons set forth above, at minimum the disputed provisions demonstrate the contracts may be ambiguous. Under Texas law, "circumstances surrounding the formation of a contract may inform the meaning of a contract's unambiguous language." *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017). At this stage, however, there is no evidence of the parties' negotiations or intent during formation of the contract, which is why the Court should decline to resolve any disputed issues now. *Powertech*, 660 F.3d at 1309–10.

But, were this Court to attempt to resolve this disputed issue of contract interpretation now, without a full record, it should still deny Defendant's motion. As set forth above, the contract terms demonstrate that the Patent License was a simple bargain: Halliburton would pay Defendants royalties for use of the licensed patents; but, if Halliburton did not practice the licensed patents, however, there was no obligation to pay royalties. Were the Court to resolve any disputes, Halliburton's interpretation is consistent with the other provisions of the Patent License for all the reasons explained above.

### d.    *Defendants' Other Attempts To Avoid* Medtronic *Fail*

Defendants briefly make two additional arguments in their attempt to avoid *Medtronic*, but both are unavailing. First, Defendants argue that no case or controversy exists because they "have never asserted patent infringement." Mot. at 7. This misses the mark, for an obvious reason: the Declaratory Judgment Act would be a nullity if it depended on a patentee asserting a claim of

infringement. Unsurprisingly, Defendants' argument is contradicted by *Medtronic*. The relevant question is not whether "an infringement suit would be unlikely," but rather "the nature of the threatened action in the absence of the declaratory judgment suit." *Medtronic*, 571 U.S. at 197. In the absence of royalty payments, Halliburton has no license to the Patents and thus Defendants can assert that Halliburton infringes the Patents. Defendants have not stipulated to non-infringement even though they easily could if their position was credible and not merely tactical. Moreover, Defendants have sued other parties that entered into apparently similar licensing agreements. *See, e.g., Grant Prideco, Inc. v. Schlumberger Technology Corp.*, Civil Action No. 4:23-cv-00730 (S.D. Tex.). Defendants have also indicated their view that Halliburton continues to owe royalties under the Patent License, *see* Compl., ¶¶ 38, 51, which necessarily requires infringement for all the reasons set forth above in Section V.A.2.

Defendants also argue that they have no contractual right to terminate the Patent License, and thus there is no case or controversy because Defendants could not bring a claim for infringement against Halliburton. Mot. at 12. Defendants are wrong. Section 8.05 provides Defendants with the ability to terminate the license "[i]n the event Halliburton fails to pay go-forward royalties for Licensed Halliburton Drill Bits." Dkt. 18-1 § 8.05(b). Halliburton indisputably has not paid royalties, thereby triggering Defendants' ability to terminate the license. In arguing to the contrary, Defendants point to a limited exception that states Defendants' ability to terminate the Patent License is not invoked if Halliburton fails to pay the go-forward royalties "pursuant to Section 8.03 and/or Section 8.04, and such determination is made in Halliburton's good faith judgment." *Id.* But Halliburton is not paying royalties for reasons **beyond** Section 8.03 and 8.04, and therefore *Medtronic* is squarely on point.

Defendants' assertion that Halliburton's cessation of royalty payments is based on Section

8.03(b)-(e) and Section 8.04(a)-(b), Mot. at 12, ignores the language of those provisions. Section 8.03(b),(c) permit suspension of royalties in certain circumstances if there is a ***judgment*** of non-infringement of the Asserted Claims. *Id.* §8.03. Here, there can be no suspension yet under Sections 8.03(b),(c) because there has not yet been a judgment of non-infringement. Similarly, Defendants' assertion that Halliburton's cessation of royalties is based on Section 8.04(a)-(b) misunderstands Halliburton's *Brulotte* arguments. Whether all Licensed RH Patents have expired is irrelevant to the *Brulotte* argument. Instead, if the agreement requires royalties after the expiration of all practiced Licensed RH Patents, it is *per se* unlawful. Compl., ¶¶ 67–71.

As the complaint makes clear, and as explained in Section V.D, Halliburton ceased paying go-forward royalties because it is not practicing any unexpired Licensed RH Patents. Dkt. 1 (Compl.) ¶¶ 30, 37; *see also id.*, ¶¶ 58–65. In addition, Halliburton ceased paying royalties because Defendants' "attempt to enforce the Patent License based on the expiration dates of the '534 Patent and '752 Patent [is] unlawful *per se* and unenforceable." *Id.* ¶ 68; *see also id.*, ¶¶ 69-71 and *infra* Section V.C. These reasons for non-payment are not premised on Sections 8.03 or 8.04. So long as Halliburton ceased payment for reasons beyond those sections, Defendants can terminate the license and bring a patent infringement lawsuit.

**B.     Halliburton's DJ Of No Breach of Contract (Count V) Creates An Independent Cause Of Action Arising Under Federal Patent Law**

Defendants assert that Halliburton's no breach of contract claim (Count V) should be dismissed because the claim is "not created by a federal statute or law." Mot. at 12. But courts have repeatedly held that a state-law-based contract claim arises under federal law where it depends on a finding that a party has infringed patents. *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, 2016 WL 1365946, at *5 (N.D. Cal. Apr. 6, 2016) (Ex. 4) (collecting cases); *Jang v. Boston Sci. Corp.*, 767 F.3d 1334, 1336 (Fed. Cir. 2014) (finding plaintiff's "right to relief" for state law

breach of contract claim "depends on an issue of federal patent law," *i.e.*, infringement). This determination turns on the application of the Supreme Court's four-factor *Gunn* test. *Gunn*, 568 U.S. at 258; *Jang*, 767 F.3d at 1337–38. Here, all four *Gunn* factors[1] establish Halliburton's no breach of contract claim arises under federal law because a federal issue, *i.e.* infringement, is (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance.

   Necessarily Raised: As explained in Section V.A, Halliburton's no breach of contract claim hinges on whether Halliburton infringes the Patents. Thus, a federal issue is necessarily raised.

   Actually Disputed: As explained in Section V.A, there is an actual case or controversy as to whether Halliburton infringes the Patents—and Defendants have not stipulated that Halliburton does not infringe and assert royalties are owed—and thus this federal issue is actually disputed.

   Substantiality: The Supreme Court recognized that substantiality looks to "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The issues in this case are highly important to the federal system and thus squarely meet this criterion. Defendants' interpretation of the Patent License would require Halliburton to continue to pay royalties on unpatented technology for nearly another decade, premised on the mere existence of extraneous patents that were not even listed in the Patent License, and a determination on the embedded patent issues at the heart of Halliburton's no breach of contract claim could impact potential future litigation over these same patents and other licenses.[2] The resolution of Halliburton's federal patent issues, including noninfringement, could also have an impact on the oil and gas industry—an

---

[1] As explained *supra* in Section IV.C, Defendants focus on the "substantiality" *Gunn* factor, and even then use a blinkered approach, relying solely on the non-exclusive *NeuroRepair* factors.
[2] Ex. 10 (press releases identifying other oil and gas companies entering patent licenses with Defendants).

industry core to the economy and the national security of the United States—for the next eight years. Indeed, highlighting the implications of this litigation beyond the current parties, Defendants sued Schlumberger, Ulterra, and Varel over breach of contract claims arising from the same patents and implicating similar issues. *See Grant Prideco, Inc. v. Schlumberger Technology Corp.*, Civil Action No. 4:23-cv-00730. Put in terms of the nonexclusive first and second *NeuroRepair* factors that Defendants incorrectly contend are required, the federal issues in this case are dispositive, forward looking, and will impact multiple cases and parties.

This is also unlike any of the cases relied on by Defendants. In *Inspired Development Group, LLC v. Inspired Products Group, LLC,* the Federal Circuit held that "the patent infringement issue [t]here [was] not dispositive of whether [plaintiff] is entitled to relief" because the plaintiff "could prevail on its unjust enrichment claim without showing [defendant's] products actually infringed." 938 F.3d 1355, 1364 (Fed. Cir. 2019). Likewise, in *NeuroRepair*, the patent issues were "not even the most significant part of the state law causes of action"; those included "assertions of failure to communicate, overbilling, failure to accurately record time billed, failure to deliver work product, and misrepresentation of [] expertise in neuroscience." 781 F.3d at 1346. Similarly, in *STC.UNM v. Quest Diagnostics Inc.*, the court found that the "state claims can be resolved without determining the patent issues." 2020 WL 4734899, at *6 (D.N.M. Aug. 14, 2020) (Ex. 5). In *AntennaSys*, the court held that a dispute where the only patent issue was infringement (with no impact past the specific case) did not meet the substantiality prong. 976 F.3d at 1382.

In contrast, here the patent issues are paramount and will be dispositive to Halliburton's no breach of contract claim. Indeed, numerous courts have concluded that similar breach of contract disputes under a license agreement that raise patent infringement issues satisfy the *Gunn* test. *E.g., Levi Strauss*, 2016 WL 1365946, at *6; *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2018 WL

16

9537931, at *1 (S.D. Cal. Mar. 23, 2018) (Ex. 6); *Ameranth*, 2021 WL 3686056, at *10–12.

      <u>State-Federal Court Balance</u>: There would be no impact on the federal-state balance if the Court were to find Halliburton's no breach of contract claim arose under federal law. Defendants rely on *Inspired Development* to argue that finding jurisdiction here would upset the state-federal court balance. Mot. at 14. But *Inspired Development* dealt with a licensee arguing that "***any*** breach of contract claim or related equitable claim involving a patent license agreement must 'arise under' the patent laws." 938 F.3d at 1369. Here, by contrast, Halliburton alleges that the particular language of the Patent License puts non-infringement at issue—not the mere fact the contract at issue is a patent license agreement. Thus, Defendants' hypotheticals of far-reaching consequences if the Court were to find Defendants' claims arise under federal law are misplaced. Indeed, post-*Gunn*, numerous district courts have found similar claims arose under the federal patent laws without upsetting the federal-state balance. *E.g., Levi Strauss*, 2016 WL 1365946, at *6; *Rembrandt*, 2018 WL 9537931, at *1; *Ameranth*, 2021 WL 3686056, at *10–12.

      Defendants briefly acknowledge these contrary decisions but dismiss them as "simply [having] failed to engage in the analysis required by the Federal Circuit's decision in *AntennaSys.* and *Inspired Development*." Mot. at 15. That Defendants cannot distinguish these cases speaks volumes. Halliburton's no breach of contract claims arises under the federal laws based on the test set forth in *Gunn*, and the Court should deny Defendants' motion to dismiss Count V.

      **C.**    **Halliburton's *Brulotte* DJ (Count III) Arises Under The Federal Patent Laws**

      Halliburton's Count III seeks a DJ that requiring royalty payments under the Patent License is unlawful based on *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), because "it is unlawful for Defendants to require the payment of royalties accruing after the patents incorporated into Plaintiff's products have expired." Compl., ¶ 67. Defendants argue that Halliburton's *Brulotte* claim is a "federal affirmative defense" that "does not create federal jurisdiction." Mot. at 15. But

17

the Fifth Circuit has found that "[t]he right of the patent holder . . . to enforce the settlement agreements and obtain royalties for use of the patent after it expires is a substantial question of federal patent law." *Natec, Inc. v. Deter Co.*, 28 F.3d 28, 29 (5th Cir. 1994).

Defendants cannot distinguish *Natec* because it is precisely on point, so instead resort to calling the caselaw "conflicting." Mot. at 17, n.1. But other courts have followed *Natec*, and this Court should too. In *Board of Regents University of Texas System v. Mission Pharmacal Co.*, 2006 WL 8436935 (N.D. Tex. June 12, 2006) (Ex. 7), the plaintiff sued for breach of patent license in state court. The defendant removed to federal court, arguing, based on *Natec*, that "asking the court to extend [defendant's] obligation to pay patent royalties beyond the life of the subject patents," raising "a substantial question of federal patent law." *Id.* at *2. The district court held it had jurisdiction over plaintiff's breach of contract claim because "federal patent law is a necessary element of one of [plaintiff's] claims in that the relief requested by [plaintiff] is for the enforcement of an agreement to obtain royalties for the use of a patent after it has expired." *Id.* at *3.

Regardless of whether *Brulotte* creates federal jurisdiction in and of itself, it still raises a substantial question of federal patent law under *Gunn*. Defendants argue the *Gunn* test fails because *Brulotte* can **only** be pursued as an affirmative defense and thus it can "never give rise to jurisdiction." Mot. at 16. But Defendants' reliance on out-of-circuit cases for that proposition is contrary to the Supreme Court's decision in *Kimble v. Marvel Entertainment, LLC* in which the Supreme Court affirmed "a declaratory judgment in federal district court confirming that the company could cease paying royalties" based on *Brulotte*. 576 U.S. 446, 450 (2015). As to whether the dispute is "substantial," both the Fifth Circuit and a federal district court in Texas held that *Brulotte* raises a substantial question of patent law, and which remains good law today under the expanded jurisdiction conferred by the AIA. Even under the *NeuroRepair* factors on which

18

Defendants rely, Halliburton's Count III raises a federal issue that is a question of law and, as explained above, will control in multiple cases. As to the "actually disputed" and "federal-state balance" factors, Defendants make no arguments. Mot. at 16-17. As Halliburton's *Brulotte*-based DJ claim raises a substantial federal patent law issue under *Gunn,* the Court should deny Defendants' motion to dismiss that count.

### D. Halliburton's DJ Of Royalty Suspension (Count IV) Arises Under The Federal Patent Laws And State A Claim For Relief

Halliburton's Count IV seeks a DJ that its royalty obligations are suspended because the 12 "Core Patents" cannot be infringed due to expiration. Compl., ¶ 78. Under the Patent License, if there is a finding by a District Court that the Core Patents are not infringed, then Halliburton owes no royalties. Dkt. 18-1, Ex. B §§ 8.03(b)-(c). Defendants allege Count IV should be dismissed because, in Defendants' view, there is no actual case or controversy "because it is undisputed that there can be no liability for infringing the 12 patents containing the 'Asserted Claims' that have expired." Mot. at 18. But Count IV still raises a case or controversy that impacts the right of the parties, namely whether Halliburton owes royalties under the Patent License until 2031 in light of its non-infringement of the 12 Core Patents.

Defendants' motion for dismissal under 12(b)(1) and 12(b)(6) should be denied. Though Section 8.03(b)-(c) is clear that royalty obligations are suspended upon a finding of non-infringement, Defendants incorrectly argue that Section 8.04(a) contradicts that reading. Mot. at 18. But the provision says what it says: if there is a finding of non-infringement of the Asserted Claims of the 12 Patents, then Halliburton owes no royalties. Moreover, there is nothing inconsistent about the provisions. Halliburton could have stopped paying royalties ***prior to*** the Licensed RH Patents expiring if it stopped practicing the 12 Core Patents. Regardless, for the purposes of 12(b)(6), Halliburton's complaint and its attachments must be accepted as true. *Lane*

*v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). At minimum, Halliburton's complaint sets forth plausible facts under which expiration of the 12 Core Patents results in no go-forward royalties, and thus Defendants' motion should be denied.

 **E. Halliburton's DJ Of No Breach (Count V) States A Claim For Relief**

  Defendants briefly argue that Halliburton's DJ of no breach claim (Count V) should be dismissed under 12(b)(6) because "the License Agreement unambiguously requires payment of royalties regardless of any infringement" and points back to the same arguments raised for its 12(b)(1) position. Mot. at 19. Defendants' argument under Rule 12(b)(6) fails for the same reason its Rule 12(b)(1) motion fails. *See supra*, Section V.A-B.

 **F. If This Court Does Not Completely Grant Defendants' Motion, It Should Exercise Supplemental Jurisdiction Over Any Claims Remaining**

  If this Court finds (as it should) that ***any*** of Halliburton's Counts I, II, III, IV, or V present an actual case or controversy arising under the federal patent laws, then this Court should exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a), because they arise out of the same operative facts. *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 293 (5th Cir. 2010); *Legacy Separators LLC v. Halliburton Energy Servs. Inc.*, 2015 WL 5093442, at *4 (S.D. Tex. Aug. 28, 2015) (Ex. 8) (retaining supplemental jurisdiction over state law claims when a patent claim provided federal subject matter jurisdiction). All five of Halliburton's claims arise out of a common nucleus of operative facts, including provisions of the Patent License, Defendants' assertion that Halliburton owes royalties thereunder, and determining whether Halliburton's products infringe any Licensed RH Patent. Thus, this Court should exercise supplemental jurisdiction over any remaining claims under 28 U.S.C. § 1367(a).

**VI. CONCLUSION**

  For the reasons above, Halliburton requests that the Court deny Defendants' Motion.

Dated: June 28, 2023

Respectfully submitted,

*/s/ Gregg F. LoCascio*
Gregg F. LoCascio, P.C.
Attorney-in-Charge
S.D. TX Bar No. 1109276
DC Bar No. 452814
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: gregg.locascio@kirkland.com

Ryan Kane, P.C.
S.D. TX Bar No. 1314513
NY Bar No. 4882551
Chris Ilardi (*pro hac vice*)
NY Bar No. 5403811
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: ryan.kane@kirkland.com
Email: chris.ilardi@kirkland.com

James John Lomeo
S.D. TX Bar No. 3511238
TX Bar No. 24118993
**KIRKLAND & ELLIS LLP**
401 Congress Avenue
Austin, Texas 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101
Email: james.lomeo@kirkland.com

*Counsel for Plaintiff*
*Halliburton Energy Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 28, 2023, in accordance with the Federal Rules of Civil Procedure, a true and correct copy of the above and foregoing document was served on all registered counsel of record via the Court's PACER/ECF system.

*/s/ Gregg F. LoCascio*
Gregg F. LoCascio, P.C.