**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| HALLIBURTON ENERGY SERVICES, | |
| *Plaintiff*, | |
| v. | |
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, | Civil Action No. 4:23-CV-01789 |
| *Defendants.* | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS (DOC. NO. 17)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

TABLE OF EXHIBITS ........................................................................................................ v

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      Because Royalties Do Not Turn on Infringement or Practice of any
Patent, Jurisdiction Is Lacking. ............................................................... 2

      A.    This Court Can and Must Interpret the Contract to Determine If
Jurisdiction Exists. ....................................................................... 4

      B.    The License Agreement is Unambiguous: Royalties Do Not
Depend on Infringement or Practice of Patents. ......................... 7

II.    Jurisdiction Does Not Exists Over a Declaratory Judgment of Non-
Infringement When There is No "Case or Controversy" Regarding
Infringement. .......................................................................................... 12

III.   Any Embedded Infringement Issue Would Not Be Substantial. ........... 15

IV.   Halliburton's Invocation of a *Brulotte* Defense Does Not Create
Jurisdiction. ........................................................................................... 16

V.    Jurisdiction Does Not Exist Or This Court Should Dismiss
Halliburton's Royalty Suspension Claim. ............................................. 17

CONCLUSION ................................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABB Inc. v. Cooper Indus., LLC*,
   635 F.3d 134 (Fed. Cir. 2011) ................................................................................14

*Ameranth, Inc. v. ChowNow, Inc.*,
   2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) ....................................................3, 8, 9

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
   590 S.W.3d 471 (Tex. 2019) ................................................................................6, 7

*C.R. Bard, Inc. v. Schwartz*,
   716 F.2d 874 (Fed. Cir. 1983) ..........................................................................14, 15

*Catchins v. Loetzerich*,
   2022 WL 17683125 (S.D. Tex. Dec. 14, 2022) ........................................................7

*Corrosion Prevention Techs. LLC v. Hatle*,
   2020 WL 6202690 (S.D. Tex. Oct. 22, 2020) ........................................................14

*Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.*,
   374 Fed. App'x 482 (5th Cir. 2010) ......................................................................16

*First Bank v. Brumitt*,
   519 S.W.3d 95, 110 (Tex. 2017) ..............................................................................6

*Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983) ..................................................................................................16

*Gunn v. Minton*,
   568 U.S. 251 (2013) ..........................................................................................15, 17

*In re Qualcomm Litig.*,
   2017 WL 5985598 (S.D. Cal. Nov. 08, 2017) .....................................................3, 7, 12

*Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*,
   938 F.3d 1355 (Fed. Cir. 2019) ............................................................................15

*Kartsotis v. Bloch*,
   503 S.W.3d 506 (Tex. Civ. App.—Dallas, 2016) ................................................9, 10

*Kimble v. Marvel Entertainment, LLC*,
   576 U.S. 446 (2015) ..............................................................................................16

iii

*King v. Hebert,*
  60 F.4th 281 (5th Cir. 2023) ..................................................................................4

*MedImmune, Inc. v. Genetech, Inc.,*
  549 U.S. 118 (2007).....................................................................................13, 14

*Medtronic, Inc. v. Mirowski Family Ventures, LLC,*
  571 U.S. 191 (2014)...............................................................................3, 12, 13, 14

*Natec, Inc. v. Deter Co.,*
  28 F.3d 28 (5th Cir. 1994) ................................................................................16, 17

*NeuroRepair, Inc. v. The Nath Law Grp.,*
  781 F.3d 1340 (Fed. Cir. 2015)...............................................................................17

*Powertech Tech v. Tessera, Inc.,*
  660 F.3d 1301 (Fed. Cir. 2011).................................................................................5

*Ramming v. U.S.,*
  281 F.3d 158 (5th Cir. 2001) ...................................................................................5

*URI, Inc. v. Kleberg Cnty.,*
  543 S.W.3d 755 (Tex. 2018).....................................................................................7

*Verance Corp. v. Digimarc Corp. (Delaware),*
  2011 WL 2182119 (D. Del. June 2, 2011)...............................................................3, 8

*West v. Quintanilla,*
  573 S.W.3d 237 (Tex. 2019).....................................................................................5

**Rules**

Rule 12(b)(6).............................................................................................................4, 5

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| M | Affidavit of Harry Susman (attaching docket sheet in *Kimble et al v. Marvel Enterprises, Inc*., Case: 4:08-CV-00372, in the United States District Court for the District of Arizona |
| N | *Ameranth, Inc. v. ChowNow, Inc.*¸ 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) |
| O | *In re Qualcomm Litig.*, 2017 WL 5985598, at * 21 (S.D. Cal. Nov. 08, 2017) |
| P | *Catchins v. Loetzerich,* 2022 WL 17683125, at *1 (S.D. Tex. Dec. 14, 2022) (Hanen, J.) |
| Q | *Corrosion Prevention Techs. LLC v. Hatle,* 2020 WL 6202690, at * 6-7 (S.D. Tex. Oct. 22, 2020) (Hanen, J.) |
| R | *Verance Corp. v. Digimarc Corp. (Delaware),* 2011 WL 2182119 (D. Del. June 2, 2011) |
| S | *Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.,* 374 Fed. App'x 482 (5th Cir. 2010) |

## INTRODUCTION

Plaintiff's ("Halliburton") Complaint should be dismissed for lack of jurisdiction. Whether jurisdiction exists over Halliburton's declaratory judgment claims that it does not infringe the '534 and '752 patents (Counts 1 & 2) and thus owes no royalties (Count 5) hinges on whether the royalty obligation requires infringement. If payment of royalties does not depend on infringement or practice of any patents, no case or controversy exists nor do the claims raise any issue of patent law to support jurisdiction. Halliburton has not alleged any affirmative acts taken by Defendants evidencing an intent to enforce the '534 or '752 patents against Halliburton, and more importantly, Defendants would not have to do so to collect the royalties at the heart of this dispute.

To justify bringing this contract dispute in federal court, Halliburton has manufactured an allegation that the License Agreement requires infringement to trigger royalties, and then argues that this Court must accept Halliburton's claim on its face. To begin with, the governing law expressly allows this Court to look behind Halliburton's allegations. A court ruling on a motion to dismiss under Rule 12(b)(1) is not constrained to blindly accept the plaintiff's allegations; otherwise, a plaintiff could easily manufacture jurisdiction by making unsupported allegations. Under the actual words in the royalty clause, payment of royalties unambiguously does not depend on whether a licensed patent claim is embodied in the royalty generating products: payment depends solely on invoicing of products that contain physical attributes described in the definition of "Licensed RH Drill Bits." Halliburton does not explain how the words used in the royalty clause could be interpreted to require infringement. Instead, Halliburton complains that Defendants are reading the royalty clause in "isolation" and ignoring "other provisions." But none of those "other provisions" even address what acts trigger royalty payments, and Halliburton does not bother explaining how these provisions are relevant to the interpretative issue. By pointing to these

provisions, Halliburton is simply trying to obfuscate and avoid the unambiguous contractual language.

Jurisdiction also is lacking over Halliburton's claim that the License Agreement violates the so-called *Brulotte* doctrine (Count 3). This declaratory judgment claim simply packages an affirmative defense as a "claim"; under long-standing law, assertion of an affirmative defense—including specifically the *Brulotte* misuse defense—via a declaratory judgment action cannot create federal question jurisdiction.

Halliburton's claim that royalties are no longer due because 12 of the Licensed RH Patents have expired and thus cannot be infringed (Count 4) presents nothing more than a state-law contract dispute—namely, that this Court should take the License that expressly provides termination occurs at the expiration of all of the Licensed RH Patents and essentially reform it to read that termination occurs when only a subset of those patents expires. The claim raises no disputed issues of patent law, and thus no federal jurisdiction exists.

Finally, to the extent the Court reaches the merits, the Court should dismiss Counts 4 and 5 for failure to state a claim. Both claims contradict the plain and unambiguous language of the License Agreement.

## ARGUMENT

**I.      Because Royalties Do Not Turn on Infringement or Practice of any Patent, Jurisdiction Is Lacking.**

Whether jurisdiction exists over Halliburton's declaratory judgment claims of non-infringement (Counts 1 & 2) and that it therefore owes no royalties (Count 5) hinges on whether the royalty obligation requires infringement. Haliburton does not dispute NOV's characterization of the relevant caselaw: "Where the royalty obligation in a license agreement does not depend on a finding of infringement, no 'substantial controversy, between parties having adverse legal

interests' exists regarding infringement and any resulting declaration would not conclusively resolve the breach dispute." Motion to Dismiss, at 7-8 (Doc. No. 17) ("Mot."). Halliburton does not cite a single case that found jurisdiction to exist over a dispute about non-payment of royalties where the license agreement did not require infringement to trigger a royalty payment. To the contrary, Halliburton agrees that in the series of cases involving non-payment of royalties cited by both Parties (*Ameranth*, *In re Qualcomm*, and *Verance Corp.*), the dispositive difference between finding jurisdiction and not was whether the royalties under applicable license required a finding of infringement or practice. Opposition to Motion to Dismiss, Doc. No. 21, at 8-10 ("Opp."). Halliburton's error is its assertion that the royalty obligation here depends on infringement—it does not.

Halliburton asserts that the decision *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014) is "controlling." Opp., at 7. But the significant factual differences between *Medtronic* and this case reveal why jurisdiction is lacking.  First, in *Medtronic*, the declaratory judgment defendant had explicitly accused the plaintiff of patent infringement. *Id.*, at 195 ("Mirowski gave Medtronic notice that it believed seven new Medtronic products violated various claims contained in two of its patents."). There was therefore no question that a case or controversy existed regarding infringement. Here, Defendants have never suggested, implied, or in any way indicated that Halliburton may infringe the '534 or '752 patents. The only "controversy" that exists regarding infringement is the one unilaterally manufactured by Halliburton in an effort to support jurisdiction. Second, the license agreement in *Medtronic* expressly required infringement to trigger royalty payments, required the patent holder to give notice of infringement before it could collect royalties, and gave the licensee the option to pay royalties or to file a declaratory judgment action of non-infringement. *Id*., at 194 ("The 1991 agreement also provided that, if Mirowski ***gave notice***

to Medtronic that a new Medtronic product "***infringe[d]***" a Mirowski patent, Medtronic had a choice [to pay royalties or pay royalties and file a declaratory judgment challenging the assertion of infringement.]" (emphasis added)). Here, because infringement is not required to trigger the royalty obligation, the License Agreement contains none of these features. As outlined below, the License Agreement unambiguously provides for royalties based on the invoicing of products that have specified physical characteristics. Infringement or practicing of even a single patent claim is not mentioned or referenced, much less required. Halliburton simply ignores the actual words used in the royalty clause, sections 6.01(b) & (c).

<strong>A. This Court Can and Must Interpret the Contract to Determine If Jurisdiction Exists.</strong>

To avoid the clear language of the royalty clause, Halliburton argues that this Court can and should find jurisdiction by simply accepting Halliburton's assertion that royalties depend on infringement despite all evidence to the contrary. Halliburton bases this claim on a mischaracterization of the law. Halliburton argues that so long as the Complaint alleges plausible facts establishing jurisdiction, the Court may exercise jurisdiction even if the clear facts contradict the complaint. Opp., at 8. The law, however, holds the exact opposite. Even if the Complaint alleges facts supporting jurisdiction, the Court can (and should) look behind those allegations and resolve disputed facts. *King v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) ("Unlike a Rule 12(b)(6) motion which is confined to evaluating the pleadings, a 12(b)(1) factual attack on the court's subject matter jurisdiction may be based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the

4

existence of its power to hear the case." *Id.*; *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) ("**Lack** of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidence in the record; or (3) the complaint supplemented by undisputed facts." (emphasis added)).

The Federal Circuit's opinion in *Powertech Tech v. Tessera, Inc*., 660 F.3d 1301 (Fed. Cir. 2011) is not inconsistent with this accepted standard of resolving 12(b)(1) motions. *Powertech* merely held that the District Court's resolution of the contract dispute was "premature" at the 12(b)(1) stage in that particular case. It did so expressly pointing out that California law, which governed the contract at issue, does not prohibit the use of "evidence apart from the contract to explain the meaning of terms that are otherwise unambiguous," and the parties had no opportunity to develop the factual record. *Id.*, at 1309 n. 7 ("In light of the fact that no discovery has been conducted, the district court's contract interpretation was clearly premature."). The *Powertech* court also noted that "[n]o motion to dismiss for failure to state a claim" had been filed. *Id*., at 1309. Here, the License Agreement is unambiguous and is governed by Texas law, which strictly "prohibits consideration of oral or extrinsic evidence to modify or add to the contract's [unambiguous] terms." *West v. Quintanilla*, 573 S.W.3d 237, 243 n. 11 (Tex. 2019). Simply put, development of the factual record is irrelevant in this case. Additionally, Defendants have filed a motion to dismiss for failure to state a claim. Although Defendants pointed out these distinguishing features, *see* Mot., at 8 n. 1 (distinguishing *Powertech*), Halliburton simply ignores the argument. If Halliburton's interpretation of *Powertech* were correct, meaning that the Court cannot question the accuracy of Halliburton's allegations in resolving a 12(b)(1) motion, the Federal Circuit's understanding of the procedural rules would be inconsistent with the 5th Circuit's understanding, which would bind this Court with regard to procedural matters. And, as noted above, any party

could require a federal court to hear a case by merely making patent allegations – no matter how contradicted they are by the undisputed facts or governing unambiguous contract language.

Halliburton notes in passing that Texas law permits consideration of "surrounding circumstances" to interpret even an unambiguous contract. Opp., at 12 (citing *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017)). Halliburton (1) overreads *Brumitt* and (2) does not actually point to any "surrounding circumstances," so this exception is irrelevant. In *Brumitt*, the Texas Supreme Court explained that "evidence of the circumstances" surrounding a contract "may assist courts in construing the language the parties used" but it cannot "add to or alter the terms contained within the agreement itself." *Id*., at 109. "[P]arties may not rely on extrinsic evidence" – including "surrounding circumstances" – to "create an ambiguity or to give the contract a meaning different from that which its language imports." *Id*., at 110. Here, the parties' written agreement unambiguously provides for royalties based on the invoicing of specific products, ***not*** on the infringement or practice of a patent claim. The Court should reject Halliburton's invitation to consider "surrounding circumstances" to "contradict or vary the meaning of [that] explicit language." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc*., 590 S.W.3d 471, 484 (Tex. 2019). *Id*.; *see also Brumitt,* 519 S.W.3d at 110 (holding that the trial court erred by "permit[ing] the jury to consider extrinsic evidence as a basis for adding a term to the parties' [unambiguous] contract"). Moreover, Halliburton fails to point to any legally cognizable "surrounding circumstances." Halliburton simply refers vaguely to "evidence of the parties' negotiations or intent during formation of the contract." Opp., at 12.[1] But even if Halliburton had alleged particular facts, "evidence of the parties' negotiations or intent" are not "surrounding circumstances" considered

---

[1] While Halliburton notes there is "no evidence of the parties' negotiations" before the Court, Halliburton does not even suggest that evidence supporting its interpretation exists even though Halliburton obviously was present during the negotiations and therefore, should have been able to explain what this alleged evidence would show.

6

by Texas courts. "[*O*]*nly* circumstantial evidence that is ***objective*** in nature may be consulted." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 767 (Tex. 2018) (emphasis added). Such objective evidence may include "the setting in which the contract was negotiated" or "trade custom" but the "touchstone" "in deciding what facts and circumstances are informative . . . . [is] ascertaining objective meaning." *Id*. Vague "evidence of the parties' negotiations or intent" is not objective and would not assist in "giv[ing] the words of a contract a meaning consistent with that to which they are reasonably susceptible." *Carrizo*, 590 S.W.3d at 484. In sum, this Court is not only free to resolve the disputed contract issue, but it is obligated to do so. *Catchins v. Loetzerich*, 2022 WL 17683125, at *1 (S.D. Tex. Dec. 14, 2022) (Hanen, J.) ("[D]istrict courts 'have an independent obligation to determine whether subject-matter jurisdiction exists.'").

### B.      The License Agreement is Unambiguous: Royalties Do Not Depend on Infringement or Practice of Patents.

The License Agreement unambiguously does not make royalties dependent on any infringement or use of a patent. As explained in the Mot., at 8-9, sections 6.01(b) & (c) provide that royalties are due upon the invoicing of defined products ("Licensed RH Drill Bits") that are defined with reference to their physical characteristics only and not any patent claim. Whether a royalty payment is due under this specific License Agreement has nothing whatsoever to do with infringement or practicing of a patent claim and turns exclusively on sales of particular products. *E.g., In re Qualcomm Litig.,* 2017 WL 5985598, at * 21 (S.D. Cal. Nov. 08, 2017). A contract is unambiguous if the language is susceptible to only one reasonable interpretation. Halliburton does not offer any alternative interpretation of the words in sections 6.01(b) & (c), much less another reasonable alternative. Instead, Halliburton urges the Court to ignore the unambiguous language based on other provisions of the License Agreement. These other provisions, however, do not even

7

discuss what triggers royalties. This ends the matter: The royalty obligation unambiguously does ***not*** depend on any finding of infringement or practice of a patent.

As explained in the Motion to Dismiss, the fact that the grant of rights to use the patents was made "under the License RH Patents" has no bearing on the royalty calculation.  In the License Agreement, the grant of rights to use the patents in section 3.01 is not tied or linked to the obligation to pay royalties in sections 6.01(b) & (c).  Mot., at 9. Halliburton does not dispute this. Obviously, any grant of rights to use patents would be made "under the licensed patents." But that does not mean the obligation to pay royalties depends on infringement. If it did, no license could even base royalties on anything other than practicing the patented claims. For example, where a license agreement calls for a paid-up license or prepaid royalty, the license to use the patents would be made "under the licensed patents" but the obligation to pay royalties would have nothing to do with the amount of infringement or practice (if any). The same is true for a "total sales" royalty of the sort in the License Agreement. *E.g., Verance Corp. v. Digimarc Corp. (Delaware)*, 2011 WL 2182119 (D. Del. June 2, 2011) ("There is no provision in the License Agreement making Verance's payment obligations contingent on the validity or infringement of any Digimarc patents" even though the license granted a "worldwide, non-exclusive, nontransferable … non-sublicensable license ***under the Licensed Digimarc Patents***" (emphasis added)).

Halliburton mischaracterizes the decision in *Ameranth, Inc. v. ChowNow, Inc.*¸ 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021), as holding that because the agreement granted a license "arising under" the patents, royalties were due only if products infringed. *Ameranth* has no relevance to interpreting the License Agreement. As explained in the Motion to Dismiss., at 10, unlike in the License Agreement, the *Ameranth* royalty obligation was expressly linked to use of the patents.  To begin with, the *Ameranth* license grant, which was in section 2.1.1 of the

agreement, said: "subject to full and timely **payment of all amounts due** to Ameranth[,] ... Ameranth hereby grants to ChowNow a non-exclusive, non-transferable ... worldwide license ... **under the Licensed Patents** within the Field of Use." *Ameranth*, at 10. The court concluded this language linking payment to the patent license indicated that royalties were owed for practicing the patents. In stark contrast, the license grant in section 3.01 of the License Agreement does not reference payment of royalties at all. Moreover, the court added that this reading was "bolstered" by the language of the royalty clause (section 5.2) itself; specifically, the royalty clause provided that Defendant "was only obligated 'to pay [Plaintiff] a running royalty . . . . for the Patent License [under the Licensed Patents within the Field of Use] granted in [Section] 2.1 [discussed below] for all activities falling within the Field of Use." *Id*. The court accepted the argument that "[b]y its own language, Section 5.2 [the royalty clause] is intended to be read in conjunction with Section 2.1.1 [the license grant]." *Id*. In contrast, sections 6.01 (b) & (c) of the License Agreement, which contains the royalty obligation, have no language referencing the license grant or patents at all; there is zero basis to conclude the royalty clause was intended to be read in conjunction with the license grant. Halliburton simply ignores these fundamental differences between the contract language in *Ameranth* and the License Agreement.

Halliburton points to "other provisions of the Patent License" that it claims prove the obligation to pay royalties depends on infringement. Opp., at 10. But these "other provisions" (*e.g.*, the "Whereas" clauses) do not even purport to discuss the royalty obligation. Halliburton primarily relies on the most dubious contractual language conceivable: non-operative "Whereas" clauses. Opp., at 10. Under Texas law, contractual recitals are not part of the contract and are only relevant in the event the contract contains an ambiguity. *Kartsotis v. Bloch*, 503 S.W.3d 506, 518 (Tex. Civ. App.—Dallas, 2016) ("[A] contract's recitals are not strictly part of the contract, and they will

not control the operative phrases of the contract unless the phrases are ambiguous."). Recitals cannot be used to create an ambiguity. *Id.* Worse, the "Whereas" clauses that Halliburton relies on do not even refer to the royalty obligation. The clauses merely recite that the "Parties" each own patent licenses and wish to avoid infringement of each other patents, which is reflected in the fact that the License Agreement contains cross licenses of each Parties' patent rights. Mot. Exh. B §§ 3.01 & 4.01. The Whereas clauses, however, do not mention the terms of any royalty obligation due as compensation for the licenses; in fact, the words "royalty," "payment," "compensation" or any other similar terms do not appear in the "Whereas" clauses.

Halliburton notes that section 6.01(f) deems certain products "non-infringing," and then asserts this means the products "are therefore not subject to royalties." Opp., at 10. But nothing in section 6.01(f) even refers to royalties. Halliburton does not offer any explanation or rational for why section 6.01(f) has any relevance to the question of whether royalties depend on infringement. In fact, the language relied on by Halliburton has nothing to do with the question before the Court.[2]

Similarly, Halliburton repeats the allegation that the definition of "Licensed Halliburton Drill Bits" contains elements "tied to certain claims of the 12 Core Patents"—in particular, Halliburton cites claim 1 of the 6,585,064 patent. Opp., at 10. The allegation that the definition contains elements that are in some unspecified way *tied* to part of a patent claim is a far cry from the definition requiring *infringement* of that claim.  As Defendants pointed out, this coincidence is meaningless. Had the Parties intended to require infringement, they would have specified that a

---

[2] Although not germane to the issue, the language in section 6.01(f) pointed to by Halliburton was obviously designed to bolster Defendants' position in on-going litigation that the Bunting patent was not invalidating prior art. *See* Opp. Ex. 10 (attaching press releases announcing various settlements after the Halliburton License Agreement was signed). The language says that products made pursuant to the process claimed by the Bunting patent, which was not owned by Defendants and predated Defendants' patents, do not infringe the Licensed RH Patents. In other words, this clause says that the invention claimed by the Bunting patent was not the same as the invention claimed by the License RH Patents. If true, then the Bunting process could not have anticipated the Licensed RH Patents.

"Licensed Halliburton Drill Bits" were bits which "infringe claim 1 of the '064 patent" or any other patent. Mot., at 10-11. But these sophisticated Parties conspicuously avoided any reference to infringement, practice, patents, or claims in the definition of "Licensed Halliburton Drill Bits." Worse, the definition of "Licensed Halliburton Drill Bits" expressly includes products that would **not** necessarily infringe any of the so-called 12 Core Patents.[3]

Finally, Halliburton points to a provision of the License Agreement that provides for termination of royalties upon a finding of non-infringement of so-called "Asserted Claims" in "Asserted Patents." Opp., at 10. Halliburton provides zero explanation for why this provision (section 8.03) matters to the interpretative question before the Court, especially with regard to Counts 1, 2, and 5.[4] Section 8.03 addresses an event that **ends** the obligation to pay royalties. The question before the Court is under sections 6.01(b) &(c), what events **trigger** the obligation to pay in the first instance—*i.e.*, invoicing specified products or infringement. Because these provisions address different subjects, there is no potential conflict that must be reconciled. Moreover, there is no reason why the events triggering a royalty payment would necessarily mirror or correspond to the events ending payments. For example, the Parties could have agreed to all sort of events that would end the royalty obligation that have zero relevance to the events that would trigger a royalty

[3] "Licensed RH Drill Bits" include products that are leached to a depth of less than 0.1mm. Mot. Ex. B, at §2.04(b)(i) & (ii) (defining "Licensed RH Drill Bits" to include bits with "any one or more of the following characteristics: (i) a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Top Working Surface." (emphasis added)). Claim 1 of the '064 patent, however, requires leaching of more than 0.1mm to infringe. Opp. Ex. 11 (Doc. No. 21-12) (requiring that the working surface be "substantially free of catalyzing material to a depth of at least about 0.1mm from the working surface" (emphasis added)). The other 12 Core Patents either contain the same or a greater numeric depth limitation as the '064 Patent (such that they would not be infringed by a product leached to a depth less than 0.1 mm) or no numeric depth limitation at all (meaning that whether such a product - infringed those patents would turn on entirely different elements).
[4] Counts 1, 2, and 5 are all premised on Halliburton's alleged non-infringement of the '534, '752, or any other unexpired patents.  None of those patents could be "Asserted Patents" since Defendants have never asserted infringement of those patents.  Mot. Ex. B § 2.02 (defining "Asserted Patents").

11

payment, such as the royalty obligation ended once payments reached a capped amount or if a party is acquired by another party.

In sum, Halliburton attempts to avoid the obvious conclusion that the License Agreement is unambiguous by creating confusion. Halliburton simply invokes a few clauses that reference infringement (it is unremarkable that a patent license would reference infringement for various purposes) and then implies the Parties must have intended royalties to depend on infringement. This argument fails because Halliburton fails to tie any of these references to language defining the royalty obligation in sections 6.01(b) & (c).  *Cf., In re Qualcomm Litig.*, 2017 WL 5985598, at * 21 ("The Court also observes that the Contract Manufacturers' assert that the 'SULA provisions do contemplate the invalidity or non-infringement of the Licensed Patents.' Whether a provision contemplates invalidity or noninfringement is not the same as royalties being contingent on invalidity or noninfringement."). As a result, this Court must conclude the License Agreement unambiguously does not make royalties depend on infringement or practice, and thus subject matter jurisdiction is lacking over this dispute about non-payment of royalties. At a minimum, the Court should dismiss Count 5—which claims that royalties are not due because Halliburton does not infringe—for failure to state a claim.

## II.     Jurisdiction Does Not Exists Over a Declaratory Judgment of Non-Infringement When There is No "Case or Controversy" Regarding Infringement.

In the Motion to Dismiss, Defendants pointed out that jurisdiction cannot exist to entertain a declaratory judgment claim of non-infringement where the defendant has made no suggestion that the plaintiff infringes. In another effort at sowing confusion, Halliburton argues that under *Medtronic* jurisdiction turns purely on whether Defendants could bring a hypothetical infringement claim against Halliburton. Halliburton, however, ignores the threshold flaw in its argument: Defendants first must have taken some affirmative step evidencing an intention to accuse

Halliburton of infringement. Because royalties do not depend on infringement, Defendants have not taken and do not need to take any such affirmative steps. As this Court is well aware, in the absence of diversity, jurisdiction turns on two issues: (1) the existence of a case or controversy; and (2) whether the asserted claims arise under federal (patent) law. Parties may have a dispute about infringement, but that does not mean any state law claim stemming from this dispute arises under the patent law. The threshold jurisdiction discussion in *Medtronic* dealt with only the second issue. There was no question that the first condition existed: A clear controversy existed between the parties since the licensor had given the licensee notice of infringement. *Medtronic*, 571 U.S., at 195 ("Mirowski gave Medtronic notice that it believed seven new Medtronic products violated various claims contained in two of its patents."). In response to this notice, as specifically contemplated in the parties' agreement, the licensee brought a declaratory judgment action of non-infringement. Because the Declaratory Judgment Act does not create a cause of action, whether this claim arose under the patent law turned on the nature of the hypothetical claim the declaratory judgment defendant could bring. In addressing this second issue of "arising under" jurisdiction, the Supreme Court noted that the declaratory judgment defendant could terminate the license and bring a claim for infringement, *id*., at 197 ("Mirowski could terminate the license and bring an ordinary federal patent law action for infringement."). Critically, the Supreme Court's ruling was premised on the initial fact that the declaratory judgment defendant had expressly accused the plaintiff of infringement. Similarly, in *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007), which is the other case upon which Halliburton heavily relies, the declaratory judgment defendant not only provided notice of infringement but threatened to seek an injunction if royalties were not paid. *Id*., at 121 ("Soon thereafter, respondent Genentech delivered petitioner a letter expressing its belief that Synagis was covered by the Cabilly II patent and its expectation that petitioner would

pay royalties");  *id.*, at 128 ("Petitioner asserts that no royalties are owing because the Cabilly II patent is invalid and not infringed; and alleges (without contradiction) a threat by respondents to enjoin sales if royalties are not forthcoming.").

In contrast, here, Defendants have taken no actions remotely similar to the declaratory judgment defendants in *Medtronic* or *MedImmune.* In fact, Defendants have never even whispered a word about potential infringement of either the '534 or '752 patents. The reason is obvious: Defendants have repeatedly stated that infringement is utterly irrelevant to payment of royalties. Halliburton points to the fact that Defendants have sued other manufacturers for non-payment, Opp., at 13, but neglects to mention that in those cases, Defendants also never whispered a word about infringement. Whether or not Defendants could terminate the License Agreement for non-payment (although Halliburton still seeks the protection of the License Agreement, it now claims Defendants could terminate), Defendants have exhibited zero intent to do so or to pursue any infringement claims. To establish the existence of a case or controversy, Halliburton must point to some affirmative act by Defendants demonstrating an intent to claim infringement. *Corrosion Prevention Techs. LLC v. Hatle*, 2020 WL 6202690, at * 6-7 (S.D. Tex. Oct. 22, 2020) (Hanen, J.) ("Declaratory-judgment jurisdiction will not arise without some affirmative act by the patentee. An affirmative act by the patentee in this context is 'conduct that can reasonably be inferred as demonstrating intent to enforce a patent.'" (citation omitted)). There is none. Hallburton cites to *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 134 (Fed. Cir. 2011), where the patent owner not only sent threatening letters but also "would have to sue ABB for induced infringement or Dow for direct infringement" to obtain the requested relief, *id.*, at 1348-49, and *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880-81 (Fed. Cir. 1983), where the patent holder (Schwartz) had alleged failure to pay royalties on a product "which embodies Schwartz's invention" (*id.*, at 876) and alleged another

party "was selling a product covered by the Schwartz patent" which was "a claim under which Bard may be charged with active inducement of infringement and contributory infringement." *Id.*, at 881. Halliburton can point to nothing like these actions.

## III.    Any Embedded Infringement Issue Would Not Be Substantial.

Halliburton argues that jurisdiction exists for Count 5 (no breach because no infringement) under the *Gunn v. Minton* test. There are two problems with this argument. First, as noted above, infringement would not be necessarily raised (*Gunn* factor 1) by Defendants' hypothetical claim for breach since royalties do not depend on infringement. *See supra,* at 9-13. Second, any allegedly embedded infringement issue raised by Defendants' breach claim would not be substantial (*Gunn* factor 3). The Federal Circuit has repeatedly held that "the touchstone for 'substantiality' is whether allowing state courts to resolve the case would undermine 'the development of a uniform body of [patent] law." *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1364 (Fed. Cir. 2019). The "substantiality" inquiry does not focus on the significance or importance of the issue to particular parties (such as whether it mattes to five companies who have signed similar license agreements) or even an industry but rather on whether resolution of the disputed issues will impact the uniform development of patent law. Halliburton utterly ignores this inquiry. Halliburton attempts to distinguish *Inspired Dev.* by noting that the plaintiff could prevail there without proving infringement. Opp., at 16. Putting aside that here Defendants similarly can prevail on their breach claim without proving infringement, this argument conflates the first *Gunn* factor ("necessarily raised") with the third factor ("substantiality"), which is the same tactic *Inspired Dev.* rejected. 938 F.3d, at 1370 (rejecting the argument "that we essentially collapse the third requirement ('substantial') into the first requirement ('necessarily raised') under Gunn"). Halliburton also cites three cases that found jurisdiction without discussing the "substantiality" requirement. Opp., at 17. Halliburton does not dispute that these cases ignore the substantiality

requirement nor does Halliburton dispute that substantiality is required. Cases that do not discuss the relevant issue (either because the parties failed to raise it or the courts ignored it) are not persuasive authority.

### IV. Halliburton's Invocation of a *Brulotte* Defense Does Not Create Jurisdiction.

Jurisdiction does not exist over Halliburton's *Brulotte* declaratory judgment claim (Count 3). Black-letter law holds that an affirmative defense asserted in a declaratory judgment action cannot create federal question jurisdiction. *See Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983). Similarly, black-letter law holds that assertion of patent misuse—including *Brulotte*—via a declaratory judgment claim does not create patent jurisdiction. Mot., at 16. Halliburton does not challenge the reasoning of any of the cases cited by Defendants. Instead, Halliburton makes the incredibly deceptive argument that in *Kimble v. Marvel Entertainment, LLC,* 576 U.S. 446 (2015), the Supreme Court effectively decided that assertion of a *Brulotte* defense via a declaratory judgment action could support jurisdiction. Opp., at 18. Jurisdiction, however, was never even mentioned in the *Kimble* decision. Worse, federal question jurisdiction was never an issue in the case because jurisdiction was based on diversity. *See* Ex. M (attaching docket sheet in *Kimble et al v. Marvel Enterprises, Inc*., Case: 4:08-CV-00372, in the United States District Court for the District of Arizona, indicating the basis for jurisdiction was "diversity"). There is zero support for the notion that *Burlotte* is anything other than an affirmative defense the assertion of which cannot create federal question jurisdiction.

Halliburton's reliance on the Fifth Circuit's decision in *Natec, Inc. v. Deter Co.*, 28 F.3d 28, 29 (5th Cir. 1994), is dubious. First, Halliburton attempts to dodge the fact that the Fifth Circuit has taken the exact opposite position in *Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.*, 374 Fed. App'x 482, 484 (5th Cir. 2010), by noting that a District Court in the Northern District "followed *Natec*." Opp., at 18. Since the case cited by Halliburton was decided in 2006 (four years ***before***

*Duval Wiedmann*), this fact should hardly give the Court comfort that *Natec* remains good law and is certainly no response to the *Duval Weidmann* decision. Second, *Natec* addresses the scope of the Federal Circuit's appellate jurisdiction. This Court is not bound to apply *Natec* because the scope of appellate jurisdiction is ***not*** the issue to be decided. Third, because *Natec* provides no reasoning for its single-sentence assertion that *Brulotte* raises a substantial question of patent law, much less addresses the argument that *Brulotte* is an affirmative defense that cannot support federal question jurisdiction, it is not persuasive authority. Fourth, *Natec* predates the Supreme Court's decision in *Gunn v. Minton*, 568 U.S. 251 (2013). While one factor of the *Gunn* test is whether the claim raises a "substantial" issue of patent law (which is all that *Natec* literally says), the threshold factor is that the claim "necessarily raise[s]" the issue, which means the issue is a "necessary element" of a well-pleaded claim. *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1342 (Fed. Cir. 2015) ("[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims."). As noted above, black-letter law holds that an affirmative defense like *Brulotte* or patent misuse is not part of a well-pleaded claim.

### V.     Jurisdiction Does Not Exist Or This Court Should Dismiss Halliburton's Royalty Suspension Claim.

Halliburton simply ignores the primary argument Defendants made as to why jurisdiction does not exist over the declaratory judgment claim that royalties are suspended due to non-infringement because the "Asserted Patents" have expired (Count 4): the hypothetical claim Defendants could bring is a state-law breach of contract claim. Mot., at 17. The only way such a claim could arise under the patent law would be if it fit within the narrow category of state-law claims that meet the *Gunn v. Minton* test. Halliburton concedes that the only ***patent*** issue raised by this claim (whether expired patents can be infringed) is not "actually disputed" (*Gunn* factor 2) or "substantial" (*Gunn* factor 3): Expired patents are subject to infringement, and this is not a

substantial issue of patent law. Halliburton responds by arguing that a case or controversy still exists because the Parties disagree about the contractual interpretation issue. Opp., at 19. This is utterly non-responsive. Defendants do not dispute that Court 4 raises a case or controversy, merely that this controversy does not arise under patent law. The dispute is about contract interpretation and has nothing to do with resolution of any patent issue.

If the Court were to address the merits of Count 4, Halliburton conspicuously ignores Defendants' argument: namely, Halliburton's proffered interpretation of sections 8.03(b)-(e) and 8.04(b), terminating royalties upon expiration of the so-called "12 Core Patents," renders meaningless section 8.04(b), which calls for termination "[u]pon expiration of *all* of the Licensed RH Patents." Mot., at 18-19. Halliburton's response is nothing more than ipse dixit: "the provision says what it says." Opp., at 19. Halliburton's other argument is this assertion: The provisions are not inconsistent because Halliburton could have stopped paying royalties if it ceased practicing the 12 Core Patents. This is a non-sequitur that simply repeats Halliburton's argument about the royalty clause, section 6.01.

## CONCLUSION

For at least the foregoing reasons, this Court should dismiss Plaintiff's claims in their entirety for lack of jurisdiction. In the event the Court finds jurisdiction exists, the Court should dismiss Plaintiff's counts 4 and 5 for failure to state a claim.

A proposed Order is submitted herewith.

Dated: July 10, 2023

*Of counsel*

**McAughan Deaver pllc**

Robert J. McAughan, Jr.
Texas Bar No. 00786096
SDTX 16500
Albert B. Deaver, Jr.
Texas Bar No. 05703800
SDTX 11300
McAughan Deaver pllc
550 Westcott, Suite 375
Houston, Texas 77007
bmcaughan@md-iplaw.com
713.829.3851
adeaver@md-iplaw.com
281.460.2315

Respectfully Submitted,

**Susman Godfrey L.L.P.**

Harry P. Susman
Texas Bar No. 24008875
SDTX 23067
Armando Lozano
Texas Bar No. 24120467
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
713.651.9366
hsusman@susmangodfrey.com
alozano@susmangodfrey.com

**Attorneys for Defendants**

## Certificate of Service

This is to certify that a true and correct copy of the foregoing instrument has been served on all counsel of record via this Court's ECF System on this 10th day of July 2023.

*/s/ Harry P. Susman*
Harry P. Susman

19