IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, *Plaintiffs/Counter-Defendants,* | |
| v. | Civil Action No. 4:23-cv-00730 JURY |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC., ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC, VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P., *Defendants/Counter-Plaintiffs.* | |
| HALLIBURTON ENERGY SERVICES, INC., *Plaintiff,* | |
| v. | Civil Action No. 4:23-CV-01789 JURY |
| GRANT PRIDECO, INC., REEDHYCALOG, UK, LTD., REEDHYCALOG, LP, NOV INC., *Defendants.* | |

**NOV'S OPPOSITION TO LICENSEES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT III THAT LICENSEES OWE NO ROYALTIES NOW THAT THE 12 CORE PATENTS EXPIRED UNDER THE PATENT LICENSE (DKT. 196 -1789 CASE & DKTS. 212, 215, -730 CASE)**

**\*This Brief is being filed in the'730 Case in opposition to the briefs filed by Ulterra and Varel and the '1789 Case in opposition to the brief filed by Halliburton\***

## Table of Contents

Page

I.    Statement of the Issues to be Ruled Upon ..........................................................1

II.   Summary of Argument ........................................................................................1

III.  Factual Background ............................................................................................3

IV.   Argument ............................................................................................................4

    A.    Requiring Use of an Expired Patent Is a Prerequisite for *Brulotte* to Apply But Does Not Render a Royalty Unenforceable. .........................................4

    B.    Numerous Decisions Do Not Support Licensees' Position. ....................................8

    C.    Licensees' Effort to Distinguish *Automatic Radio* Fails........................................11

    D.    *Brulotte* Is Not Concerned with Tying.................................................................15

    E.    Applying *Ares Trading*, the Royalty Here is Not Subject to *Brulotte*. .................17

    F.    Licensees' Argument Effectively Destroys the Benefits of a Total Sales Royalty..........................................................................................................19

VI.   Conclusion ........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arconic Corp. v. Novelis Inc.*,
670 F. Supp. 3d 196 (W.D. Pa. 2023)................................................................................18, 20

*Ares Trading S.A. v. Dyax Corp.*,
114 F.4th 123 (3rd Cir. 2024) ................................................................................ *passim*

*Ares Trading S.A. v. Dyax Corp.*,
2023 WL 2456437 (D. Del. March 10, 2023).....................................................7, 18, 20

*Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*,
339 U.S. 653 (1950)................................................................................ *passim*

*Beckman Instruments, Inc. v. Technical Devel. Corp.*,
433 F.2d 55 (7th Cir. 1970)................................................................................12

*Boggild v. Kenner Products*,
776 F.2d 1315 (6th Cir. 1985) ................................................................................9

*Bradley Corp. v. Lawler Manufacturing Co.*,
2020 WL 7027875 (S.D. Ind. Nov. 30, 2020) ................................................................10

*Brulotte v. Thys Co.*,
379 U.S. 29 (1964)................................................................................ *passim*

*Cellport Systems, Inc. v. Peiker Acustic GMBH & Co. KG*,
762 F.3d 1016 (10th Cir. 2014) ................................................................................19

*Engel Industries, Inc. v. Lockformer Co.*,
166 F.3d 1379 (Fed. Cir. 1999 ................................................................................12

*Engel Industries, Inc. v. Lockformer Co.*,
96 F.3d 1398 (Fed. Cir. 1996)................................................................................12

*Globespanvirata, Inc. v. Texas Instrument, Inc.*,
2006 WL 543155 (D. N.J. Mar. 3, 2006)................................................................16

*Goughnour v. Hayward Baker, Inc.*,
2018 WL 265588 (N.D. W. Va. Jan. 2, 2018) ................................................................10

*GWTP Investments, L.P. v. SES Americom, Inc.*,
497 F.3d 478 (5th Cir. 2007) ................................................................................1

*Illinois Tool Works, Inc. v. Independent Ink, Inc.*,
547 U.S. 28 (2006)................................................................................16

*Jackson v. Mizuho Orthopedic Sys., Inc.*,
    2013 WL 12291776 (W.D. Mo. Jan. 9, 2013) ...................................................9, 10

*Kimble v. Marvel Entertainment, LLC*,
    576 U.S. 446 (2015) ............................................................................ *passim*

*Lavery v. Pursuant Health, Inc.*,
    2025 WL 289321 (6th Cir. Jan 24, 2025) ........................................................18, 20

*McCullough Tool Co. v. Will Surveys, Inc.*,
    343 F.2d 381 (10th Cir. 1965) ...........................................................................13

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
    571 U.S. 191 (2014) .........................................................................................20

*Meehan v. PPG Industries, Inc.*,
    802 F.2d 881 (7th Cir. 1986) ..............................................................................9

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
    117 F.4th 628 (5th Cir. 2024) ...........................................................................20

*Outman v. W. Contracting Corp.*,
    1979 WL 25052 (N.D. Iowa Nov. 14, 1979) ......................................................10

*Pipkin v. FMC Corp.*,
    427 F.2d 353 (5th Cir. 1970) ...............................................................................8

*Pitney Bowes, Inc. v. Mestre*,
    701 F.2d 1365 (11th Cir. 1983) ...........................................................................9

*Princo Corp. v. International Trade Com'n*,
    616 F.3d 1318 (Fed. Cir. 2010) .........................................................................19

*ReedHycalog UK Ltd. v. United Diamond Drilling Services, Inc.*,
    2009 WL 1011730 (E.D. Tex. Apr. 15, 2009) .......................................................3

*Siders v. City of Brandon, Mississippi*,
    123 F.4th 293 (5th Cir. 2024) ...........................................................................11

*Thys Co. v. Brulotte*,
    382 P.2d 271 (Wash. 1963) ...............................................................................12

*U.S. Phillips Corp. v. International Trade Com'n*,
    424 F.3d 1179 (Fed. Cir. 2005) .........................................................................16

*Zila Inc. v. Tinnell*,
    502 F.3d 1014 (9th Cir. 2007) .....................................................................14, 19

LIST OF EXHIBITS

| EXHIBIT | DESCRIPTION |
| --- | --- |
| 1 | Declaration of Armando Lozano |
| 2 | Excerpt of Transcript of John Hayes' Deposition |
| 3 | Reply Brief of Appellant, *Ares Trading S.A. v. Dyax Corp.*, 2023 WL 9508783 (3rd Cir. Sept. 29, 2023). |
| 4 | *Ares Trading S.A. v. Dyax Corp.*, 2023 WL 2456437 (D. Del. March 10, 2023) |
| 5 | *Bradley Corp. v. Lawler Manufacturing Co.*, 2020 WL 7027875 (S.D. Ind. Nov. 30, 2020) |
| 6 | *Globespanvirata, Inc. v. Texas Instrument, Inc.*, 2006 WL 543155 (D. N.J. Mar. 3, 2006) |
| 7 | *Goughnour v. Hayward Baker, Inc.*, 2018 WL 265588 (N.D. W. Va. Jan. 2, 2018) |
| 8 | *Jackson v. Mizuho Orthopedic Sys., Inc.*, 2013 WL 12291776 (W.D. Mo. Jan. 9, 2013) |
| 9 | *Lavery v. Pursuant Health, Inc.*, 2025 WL 289321 (6th Cir. Jan 24, 2025) |
| 10 | *Outman v. W. Contracting Corp.*, 1979 WL 25052 (N.D. Iowa Nov. 14, 1979) |
| 11 | *ReedHycalog UK Ltd. v. United Diamond Drilling Services, Inc.*, 2009 WL 1011730 (E.D. Tex. Apr. 15, 2009) |

Plaintiff NOV[1] files this opposition to Licensees'[2] Motions for Summary Judgment on *Brulotte* (the "Motions").[3]

## I.    <u>Statement of the Issues to be Ruled Upon</u>

**<u>Issue 1</u>**: Whether the royalty in the Licensee Agreements is *per se* unenforceable under *Brulotte v. Thys Co.,* 379 U.S. 29 (1964). Decisions granting dispositive motions such as summary judgments are reviewed de novo. *GWTP Investments, L.P. v. SES Americom, Inc*., 497 F.3d 478, 481 (5th Cir. 2007).

## II.    <u>Summary of Argument</u>

Apparently recognizing the weakness of their original argument, Licensees now advance a totally novel version of *Brulotte*. Licensees originally claimed that the royalty was unenforceable under *Brulotte* because they do not utilize the *unexpired* and licensed patents. While Licensees still push this theory, they now claim that the royalty is unenforceable because the royalty triggering activity requires infringement of the *expired* patents. According to Licensees, any royalty that is calculated at least in part based on any activity which would have infringed any claim in a now-expired patent is *per se* invalid regardless of any other factors. The argument is based exclusively on a recent Third Circuit decision in *Ares Trading S.A. v. Dyax Corp*., 114 F.4th 123 (3rd Cir. 2024). Licensees badly mischaracterize the decision.

Second, Licensees try to distinguish *Automatic Radio*. *Automatic Radio* held that charging royalties absent infringement is not *per se* prohibited; this directly conflicts with Licensees' claim

---

[1] NOV refers to Grant Prideco, Inc; ReedHycalog UK, Ltd.; ReedHycalog, LP; and National Oilwell Varco, LP.

[2] Ulterra Drilling Technologies, L.P., Rockbit International Subsidiaries, LLC ("Ulterra"), and Varel International Energy Services, Inc., Varel International Industries, L.P. ("Varel"), and Halliburton Energy Services, Inc. ("Halliburton" and collectively "Licensees").

[3] Halliburton filed its Motion at Dkt. 196 in 23-cv-1789 (the "-1789 Case"). Ulterra filed its Motion ("Ulterra Motion") at Dkt. 212 in 23-cv-730 (the "-730 Case"). Varel filed its Motion at Dkt. 215 in 23-cv-730 ("Varel Motion"). The Motions are substantively identical. *See, e.g.,* Halliburton Mot. at 1 n.1. For the convenience of the Court, citations to the "Motion" in this opposition brief will refer to the Motion filed by Halliburton in the -1789 Case.

that collecting royalties absent infringement of an *un*expired patent is *per se* forbidden. Licensees offer two grounds to distinguish *Automatic Radio*—that (1) the license in *Automatic Radio* was for a fixed-term and covered 700 plus patents and applications and (2) there was "no evidence" in the opinion that the royalty required use of expired patents. Licensees do not cite any case that make such a distinction and numerous cases have applied *Automatic Radio* where these facts were not present.

Third, adopting a kitchen-sink approach, Licensees argue that the royalty is unenforceable *per se* under *Brulotte* because it ties the unexpired patents to the expired depth patents. The Supreme Court, however, has made clear that tying concerns are not relevant to *Brulotte.*

Fourth, assuming that *Ares Trading* was correctly decided, the result is fatal to Licensees' *Brulotte* argument. *Ares Trading* holds that *Brulotte* applies only where the activity triggering a royalty necessarily requires practice of expired patents. At most, Licensees have shown that some subset of the activities that trigger a royalty would use a subset of expired patents. This only proves that some of the royalty triggering activities could use some of the expired patents, but not that ***all*** such royalty triggering activities would necessarily use the expired patents. As a result, *Brulotte* does not even apply under the holding in *Ares Trading.*

Finally, Licensees argue that the royalty is unenforceable because Licensees' drill bits do not infringe the unexpired patents. NOV's *Brulotte* brief ("NOV's Motion") [4] addressed in detail why this argument is wrong. NOV's Motion at 10-20. Licensees' current argument only highlights the practical problems that would be wrought by adoption of their *Brulotte* rule. The entire point of *Automatic Radio* is to permit parties to disentangle royalties from infringement for convenience or other commercial considerations. Indeed, Automatic Radio "used at most 10" of the 700

---

[4] NOV filed substantively identical *Brulotte* briefs in the -1789 Case and the -730 Case. For the convenience of the Court, citations to "NOV's Motion" in this opposition brief will refer to the motion filed at Dkt. 191 in the -1789 Case.

licensed patents and applications. *Automatic Radio*, 339 U.S. at 838. If accepted, however, Licensees' argument would undermine the commercial benefits of this accepted contractual relationship.

### III.    Factual Background

Under the License Agreements, royalties are owed whenever a Licensee invoices for a Licensed Drill Bit, which are drill bits that have one or more partially leached cutters. Mot. at 5-7. While Licensees provide evidence that selling a drill bit with a deep leached cutter would come within the scope of certain expired patent claims, Licensees fail to provide evidence that invoicing a drill bit with shallow leached cutters would necessarily come within the scope of any expired patent claim. Among the twelve expired U.S. patents that Licensees label the "12 Core Patents" eight patents had claims that require leaching "to a depth ***of at least*** about 0.1mm from the working surface" and were called "depth patents." *ReedHycalog UK Ltd. v. United Diamond Drilling Services, Inc.*, 2009 WL 1011730, at *2 & *3 (E.D. Tex. Apr. 15, 2009); *see* Mot. at vi (listing the "Depth Patents"). Leaching deeper than 0.1mm is considered "deep leaching" under the License Agreements. Further, because a shallow leached cutter is leached less than 0.1mm, such cutters could never meet the claim requirement of leaching "to a depth ***of at least*** about 0.1mm" and thus could never have infringed any of the now-expired depth patents. *Id*. at 8 (providing an example of the depth limitation).

The other four patents in the so-called "12 Core Patents" covered cutters that were partially leached with no depth specification and exhibited either specific thermal characteristics or impact strength. *ReedHycalog,* 2009 WL 1011730 at *2; Mot. at vi (listing the "Thermal Characteristic Patents" and "Impact Strength Patent"). As a result, a shallow leached cutter could infringe these patents only if exhibited the specific thermal characteristics or impact strength. Whether any

3

cutters met these requirements was a major focus of the underlying patent infringement litigation—in fact, it was the only dispute between NOV and Halliburton because NOV asserted the Depth Patents against Halliburton only two weeks before the entire litigation settled. NOV Motion, Exh. D, at 43-47 (Arnold Report) (describing the infringement dispute between NOV and Halliburton). Of course, the definition of "Licensed [] Drill Bits" does not specify any thermal characteristic or impact strength so any drill bit with a shallow leached cutter would meet the definition of "Licensed [] Drill Bits" irrespective of whether it met the thermal or impact claim elements. Conspicuously, Licensees' expert John Hayes did not analyze whether shallow leached cutters necessarily would infringe the Thermal Characteristic and Impact Strength Patents—or any other expired licensed patents. Exh. 2 (Hayes Depo. at 197:24-199:2). The only evidence cited by Licensees that shallow leached cutters infringe the Thermal Characteristic or Impact Strength Patents are statements by NOV lawyers confirming this was NOV's litigation position in the underlying infringement litigation. *See, e.g.,* Mot. at 4. Of course, Halliburton took the exact opposition position, vigorously arguing that infringement required specialized testing of each cutter to measure the thermal characteristics and impact strength. NOV Motion, Exh. D, at 43-49.

## IV.    Argument

### A.    Requiring Use of an Expired Patent Is a Prerequisite for *Brulotte* to Apply But Does Not Render a Royalty Unenforceable.

Licensees' primary argument is that the royalty is unenforceable under *Brulotte* because the royalty is "calculated based on activity requiring post-expiration use" of the expired Depth Patents. Mot. at 12. In other words, because one subset of the activities that trigger a royalty (invoicing a drill bit with a deep leached cutter) would have infringed some of the now-expired Depth Patents, the royalty is no longer enforceable. According to Licensees, any royalty that is calculated based on activity which would have infringed a now-expired patent is *per se* invalid

regardless of any other factors. This argument represents a massive expansion of *Brulotte* and is based on an obvious misreading of the Third Circuit's recent decision in *Ares Trading S.A. v. Dyax Corp.*, 114 F.4th 123 (3rd Cir. 2024).

*Ares Trading* does not say what Licensees claim, and more importantly, effectively rejects the very argument they are making here. In *Ares Trading*, the Third Circuit confronted a royalty calculated based on the net sales of a category of drugs defined without regard to infringement or use of patents for a fixed-term of 10 years; it was undisputed that royalties did not require infringement. It was also undisputed that selling the drug would not infringe the licensed patents, some of which had expired. 114 F.4th. at 143. In addition, the license covered unexpired patents that were not used by Ares or incorporated in the drug. Licensor argued that *Brulotte* did not apply because the royalties did not necessarily require use of the expired patents, and even if *Brulotte* applied, the royalty was enforceable because of the unused, unexpired patents. *See* Exh. 3 (Reply Br. of Appellant, 2023 WL 9508783, at *2-3). In resolving the case, the Third Circuit divided the *Brulotte* analysis into two steps: (1) deciding whether *Brulotte* applied at all; and (2) if *Brulotte* did apply, determining whether the royalty was unenforceable. Because the Third Circuit determined *Brulotte* did ***not*** apply (step 1) to the royalty at issue, the Court expressly reserved on whether, assuming *Brulotte* applied, the royalty would be enforceable or unenforceable (step 2). *Id*. at 144 n.11 ("Because we conclude that *Brulotte* does not apply to Ares' royalty obligation, we need not address the District Court's alternative finding that even under Ares' interpretation of *Brulotte*, its royalty obligation is not unenforceable.").

The *Ares* Court could not have been clearer that it was deciding only the threshold issue of whether *Brulotte* applied: "Ares' royalty obligation is not calculated based on activity requiring post expiration use of inventions covered by the CAT Patents, ***so Brulotte does not apply***." *Id*. at

137 (emphasis added). The Third Circuit merely held that if a royalty is calculated based on activity requiring post-expiration use of expired patents "*Brulotte* may apply." *Id*. at 143 ("If Ares' [royalty] payments to Dyax are calculated based on activity requiring post-expiration use of inventions covered by the CAT Patents [some of which had expired] . . . . then *Brulotte **may apply*.*" (emphasis added)). Licensees edit these holdings by arguing that the Third Circuit held a royalty is ***unenforceable*** if it is calculated based on activity requiring post-expiration use:

> [T]here is no genuine dispute that the Patent License conditions Halliburton's royalty payment obligations on post-expiration use of one or more of the Depth Patents. As the Third Circuit recently confirmed, *Brulotte **renders unenforceable*** royalty payment obligations 'calculated based on activity requiring [] post-expiration use.' *Ares Trading*, 114 F.4th at 137.

Mot. at 12 (emphasis added). This is a clear mischaracterization of *Ares*.

Licensees' proposed rule also makes no sense. Many patents in the same patent family build on other patents. A subsequent patent may claim an improvement on the original patent. A product that infringed the improvement patent also would necessarily infringe the original patent because such product was the original invention plus an improvement.[5] Assuming the improvement patent expired after the original patent (which would almost always be the case), under Licensees' rule, a license containing both original and improvement patents would be *per se* unenforceable the moment the original patent expired. At that point, the royalty would be calculated based on activity that necessarily practiced the original, expired patent even though it also uses the unexpired, improvement patent. Even Licensees do not think this is the correct result.

Whether or not the Third Circuit's analysis about ***when*** *Brulotte* applies is correct, the Court correctly recognized that a royalty can be enforceable ***even if*** *Brulotte* applies. The reason is that the *Brulotte* rule has various exceptions. As the Supreme Court noted in *Kimble v. Marvel*

---

[5] Here, the unexpired patents are all improvement patents. They require a partially leached cutter but then claim additional improvements. *See, e.g.*, Mot. Exh. 2, at 26-27 (Hayes Non-Infringement Report).

*Entertainment, LLC*., 576 U.S. 446 (2015), "parties can often find ways around *Brulotte*, enabling them to achieve those same ends." *Id*. at 453. For example, parties can specify that post-expiration royalties are deferred compensation for pre-expiration use of the patents. *Id*. at 454. Additionally, parties can tie the royalty to both patent and non-patent rights, such as trade secrets. *Id*. Most relevant, of course, is the avenue "around *Brulotte*" selected by the Parties here, which is to tie to the royalty to multiple patents and provide that the royalty does not end until the last to expire patent:

> And parties have still more options when a licensing agreement covers either multiple patents or additional non-patent rights. Under *Brulotte*, royalties may run until the latest-running patent covered in the parties' agreement expires.

*Id*. In none of these situations does the Supreme Court say such avenues are not available if the royalty happens to be calculated based on activity that might, in part, use an expired patent.

Conspicuously, the *Ares* District Court expressly invoked the multi-patent-license exception endorsed by *Kimble* to sustain the royalty at issue. The *Ares* District Court found that even if *Brulotte* **applied**, the royalty would be **enforceable** because the royalty ran until the last to expire patent and the license covered at least one unexpired patent. *Ares Trading S.A. v. Dyax Corp.*, 2023 WL 2456437 (D. Del. March 10, 2023). The District Court held:

> Since "[u]nder *Brulotte*, royalties may run until the latest-running patent covered in the parties' agreement expires," *Kimble,* 576 U.S. at 454, *Brulotte* would not apply until the '743 Patent expires, and thus *Brulotte* would not apply until after Ares Trading's royalty obligation ended.

*Id*. at *24. This is the exact argument made by NOV. While the Third Circuit did not need to reach this issue, *id*. at 144 n.11, the effect of its holding was to sustain the royalty even though licensee was arguing (just like Licensees here) that "it is improper to rely on an unexpired, unpracticed patent to try to continue collecting royalties." Exh. 3 at *20. Obviously, the Third Circuit saw

nothing objectionable about relying on an "unexpired, unpracticed patent to try to continue collecting royalties." Nor should this Court.

### B. Numerous Decisions Do Not Support Licensees' Position.

Licensees not only mischaracterize *Ares Trading*, but also claim incorrectly that "[o]ther courts have reached the same conclusion [as *Ares Trading*], and this Court should do so too for the same reasons." Mot. at 12. Licensees cite a number of cases that do not discuss, much less endorse, a rule that a royalty which necessarily requires use of an expired patent is unenforceable. The issues addressed by these cases are totally inapposite to the issue before this Court.

In *Pipkin v. FMC Corp.*, 427 F.2d 353 (5th Cir. 1970), the contractual royalty was due on a product that "embodies or employs the inventions comprehended by this agreement." *Id*. at 355. The parties disputed the meaning of this phrase. While the parties agreed this language required use of a patent, the question was whether the phrase "embodies or employs the inventions comprehended by this agreement" meant currently-enforceable patents or could include *expired* patents. The Fifth Circuit held that this particular language unambiguously required royalties only on products that "embodied or employed the inventions in any of the patents . . . which had not expired." *Id*. at 356. The Court held that "[a]bsent a clear expression to the contrary in the licensing agreement *for the use of the invention embodied in a patent*, it will be presumed that the parties did not intend the licensee should pay royalties for such use after the expiration of the patent." *Id*. at 357 (emphasis added). The Court offered various reasons for interpreting this language, including that once a patent expires "there can no longer be an exclusive right, license or privilege to use the invention embodied in its claim or claims." *Id*. The Court added that this interpretation would avoid *Brulotte* issues. This case has no relevance to the issue before this Court. The royalty clause does not use the phrase "embodies or employs inventions comprehended by this agreement"

or even words like inventions, patents, infringement, embodiment, employment, or use. Nothing in the royalty clause suggests infringement of expired or unexpired patents is relevant at all. And here there is express language providing that the royalty obligation continues until the last licensed patent expires.

Licensees cite three out-of-circuit decisions involving the peculiar application of *Brulotte* to "hybrid" licenses/agreements that covered both patents and trade secrets. As *Kimble* noted, a licensor can collect royalties after all patents have expired based on licensing trade secrets so long as the royalty clause separates the amount owed purely for trade secrets. *Kimble*, 576 U.S. at 454. In all three cases cited by Licensees, the hybrid contracts did not break out the royalties based on patents vs. trade secrets. The inventors attempted to distinguish *Brulotte* by pointing out that all the licensed patents were issued after the contract was signed based on pre-existing applications covered by the contract, so initially the licensor possessed only the power of trade secrets. In all three cases, the courts rejected this distinction. *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1372 (11th Cir. 1983) ("When a patent issues, the potential exists for direct conflict between federal patent law and state trade secret law."); *Boggild v. Kenner Products*, 776 F.2d 1315, 1320 (6th Cir. 1985) ("We also agree with the Eleventh Circuit [in *Mestre*] that misuse of the leverage afforded by a *pending* patent is subject to the *Brulotte* rule of *per se* invalidity."); *Meehan v. PPG Industries, Inc.*, 802 F.2d 881, 884 (7th Cir. 1986) ("We agree with the Sixth Circuit's holding [in *Boggild*] that the *Brulotte* rule should be extended to agreements entered into in anticipation of applying for patents."). These decisions have nothing to do with the License Agreements, which are not "hybrid" agreements, cover many patents existing well before inception of the contracts, and cover patents that have yet to expire.

Licensees cite *Jackson v. Mizuho Orthopedic Sys., Inc*., 2013 WL 12291776 (W.D. Mo. Jan. 9, 2013), where the plaintiff apparently sought *perpetual* payments based on sales of any products using a particular technology. *Id*. at *19. The District Court's discussion of *Brulotte* focused on whether, as with the above three out-of-circuit cases, the doctrine applies to agreements entered into before patents issued. *Id*. at *20 ("Circuit courts have applied *Brulotte* when the parties entered an agreement when patents are pending or have not been applied for.").

Licensees also cite *Outman v. W. Contracting Corp*., 1979 WL 25052 (N.D. Iowa Nov. 14, 1979), which did not even deal with collection of royalties. The license allowed the licensee to use a particular patented system on two named dredges, but required removal of the system in the event the dredges were sold to a third party. *Id*. at 2. After the patents incorporated into the dredges expired, the licensee sold the dredges without removing the licensed system. *Id*. Because the agreement did not contain a term provision, *id*., the Court had to determine whether the restriction on transfer survived the patent expiration. The Court held that *Brulotte* meant the entire agreement terminated upon expiration of the patents. *Id*. at *3. This case not only has no relevance to the issues before this Court—here the royalty obligation and License Agreements have express terms ending upon expiration of all licensed patents—but it also represents an unwarranted extension of *Brulotte*, which applies to collection of royalties, not other obligations, and at most, renders the royalty clause unenforceable, not the entire contract.

Finally, Licensees point to *Goughnour v. Hayward Baker, Inc*., 2018 WL 265588 (N.D. W. Va. Jan. 2, 2018), and *Bradley Corp. v. Lawler Manufacturing Co*., 2020 WL 7027875 (S.D. Ind. Nov. 30, 2020). As outlined in NOV's Motion, these decisions are not persuasive authority. NOV Motion at 19-20. Licensees highlight that both cases reasoned that the discussion in *Kimble* about licenses covering multiple patents was dicta because the license in *Kimble* involved a single

patent. Mot. at 16 & n.10. This is wrong because the discussion was part of the *Kimble* Court's reasoning for adhering to *stare decisis*—namely, that *Brulotte* did not prevent commercially useful licenses because parties "find ways around *Brulotte*." including licensing multiple patents where the royalty ended upon the last to expire licensed patent. Even if this observation was dicta, lower courts "are generally bound by Supreme Court dicta." *Siders v. City of Brandon, Mississippi*, 123 F.4th 293, 304 (5th Cir. 2024) ("[W]e are generally bound by Supreme Court dicta[.]") (internal quotation marks and citations omitted).

**C.    Licensees' Effort to Distinguish *Automatic Radio* Fails.**

Licensees recognize that their version of *Brulotte*, which effectively prohibits *per se* a licensor from collecting royalties in the absence of infringement, conflicts with the Supreme Court's decision in *Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*, 339 U.S. 827 (1950). In *Automatic Radio*, the Court refused to condemn *per se* royalties that did not require any use of the licensed patents even where some of the patents had expired. This holding obviously creates a huge problem for Licensees' argument that charging royalties based on unexpired but unused patents is *per se* forbidden. As a result, Licensees attempt to reconcile the conflict with *Automatic Radio* by pointing to two irrelevant distinctions.

First, Licensees argue that *Automatic Radio* only exempts from *per se* condemnation a royalty in license with a fixed-term covering 700-plus patents and applications. Mot. at 17-18. Licensees cite zero authority supporting the idea that *Automatic Radio* is confined to licenses with these particular features. Licensees also do not explain why these specific features make a royalty acceptable under *Automatic Radio* but the absence means *per se* condemnation under *Brulotte*. Notably, even though Automatic Radio had access to over 700 patents, it "used at most 10." 339

11

U.S. at 838. Certainly, *Automatic Radio* itself does not place any particular significance on these features.

Why does a fixed term make the royalty exempt from *per se* condemnation under *Automatic Radio*? Licensees do not say. Conspicuously, the license in *Brulotte* was also for a fixed term yet the royalty was deemed *per se* improper. *Thys Co. v. Brulotte*, 382 P.2d 271, 286 (Wash. 1963) (royalty owed "for a period which was to end 17 years after the date the machine was first sold"). In other words, the fixed-term feature existed in both *Automatic Radio* and *Brulotte* yet the results were opposite. Here, the royalty term at issue ends "[u]pon expiration of all Licensed RH Patents"; this is precisely the type of royalty term endorsed by *Kimble*. 576 U.S. at 454 ("Under *Brulotte*, royalties may run until the latest-running patent covered in the parties' agreement expires.").

Similarly, Licensees do not explain why the number of licensed patents matters. Here, Exhibit C alone contains a non-exclusive list of over 60 licensed patents and applications. What is the substantive difference between 60 and 700? Licensees do not say. Courts routinely apply *Automatic Radio* to licenses covering even less patents than involved here, including a license for a single patent. *See e.g.*, *Engel Industries, Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996) ("We agree with the magistrate judge's statement that royalties may be based on unpatented components . . . . *See, e.g., Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.* . . . .")[6]; *Beckman Instruments, Inc. v. Technical Devel. Corp.*, 433 F.2d 55, 57, 59 (7th Cir. 1970) (license "covering at its inception twenty-one patents and applications" with "royalties based on gross sales [which] may cover products which utilize none of the licensed patents" "was permissible" under *Automatic*

---

[6]The Federal Circuit's subsequent opinion made clear that the license agreement covered a single patent. *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379, 1381 (Fed. Cir. 1999) ("The origins of the conflict can be traced to a 1985 license agreement . . . . The 1985 agreement granted Engel a license under Lockformer's U.S. Patent No. 4,466,641 (the '641 patent)").

*Radio*). Even Licensees' expert witness on licensing, Professor Jorge Contreras, disagrees with Licensees. His treatise provides the following example of a license that would be acceptable under *Automatic Radio* and involves only twelve patents:

> If a firm holds **twelve patents** covering different aspects of an electric motor, it is more efficient for a motor manufacturer to license all twelve in a single transaction than to license them one by one. The manufacturer can thus pay a single royalty for each motor that it sells, and does not have to determine which motors practice which patents and account for each separately. As we saw in Section 24.4, parties to a licensing transaction may find the convenience of licensing a bundle of patents to be mutually beneficial, even if the royalty remains constant as some of the patents in the bundle expire (**Automatic Radio v. Hazeltine (U.S. 1950)**).

JORGE CONTRERAS, INTELLECTUAL PROPERTY LICENSING AND TRANSACTIONS 887 (2022) (emphasis added).

Second, Licensees argue that "in *Automatic Radio*, there was no evidence that the royalty provision required use of an expired patent" unlike in this case. Mot. at 18. Licensees' phrasing implies that the royalty in *Automatic Radio* affirmatively did not require use of an expired patent and thus is distinguishable from this case. In fact, there was "no evidence" in *Automatic Radio* about whether the royalty required use of an expired patent because the opinion literally does not discuss the subject. The Court apparently considered the existence of some expired patents irrelevant to the question of whether a royalty untethered to infringement was *per se* illegal where unexpired patents existed. Moreover, subsequent cases have upheld "total sales" royalties under *Automatic Radio* even where the royalty expressly required use of expired patents. *See e.g.*, *McCullough Tool Co. v. Will Surveys, Inc.*, 343 F.2d 381, 408 (10th Cir. 1965) ("The record also shows that the royalty base in many, if not all, of the license agreements includes operations covered by patents that expired . . . .").

This Court does not need to entertain Licensees' manufactured efforts to reconcile *Brulotte* and *Automatic Radio* because *Brulotte* itself explains how to reconcile the decisions—namely

*Brulotte* did not address a true license of intellectual property as involved in this case. "As the [*Brulotte*] Court noted, *id*. at 33 n. 5, 85 S.Ct. 176, the sale of intellectual property alone, as here, is a considerably more complex matter than the contract at issue in *Brulotte*, and the concepts underlying *Brulotte* do not necessarily transfer to that context readily." *Zila Inc. v. Tinnell*, 502 F.3d 1014, 1021 (9th Cir. 2007).[7] As outlined in NOV's Motion, *Brulotte* explained that whereas the licensors in *Automatic Radio* had a real interest in obtaining a right to use patents—whether or not exercised—this right was illusory for the farmers in *Brulotte*:

> [T]he Hazeltine license, which covered many patents, exacted royalties for patents never used. But that aspect of the case is likewise not apposite here for the present licensees are farmers using the machines, not manufacturers buying the right to incorporate patents into their manufactured products.

*Brulotte*, 379 U.S. at 33 n.5. The licensees in *Brulotte* simply wanted to use the hop-picking machine they had purchased; they had no conceivable use for the patents. *Automatic Radio*, in contrast, involved a true patent license. The licensee-manufacturers might decide to incorporate various inventions in products during the life of the license, so the mere right to use the patents was valuable. As a result, the Court noted it would be unfair to allow the licensee to escape payment merely because the licensee elected not to use a particular patent:

> What it acquired by the agreement into which it entered was the privilege to use any or all of the patents and developments as it desired to use them. ***If it chooses to use none of them, it has nevertheless contracted to pay for the privilege of using existing patents***. . . .

*Automatic Radio*, 339 U.S. at 834 (emphasis added). The fact that certain patents had expired would not change this analysis. Of course, here, Licensees are manufacturers who acquired the

---

[7] The *Zila* Court explained: "An invention can have value to a manufacturer as a trade secret, or as an opportunity to exploit brand identity or market share, quite aside from any patent that could issue on it. In *Brulotte*, in contrast, the farmers had no interest in the invention other than its physical embodiment—which they owned—and the right to use the intellectual property included in it, which could not be exploited by the patent holder once the patent expired." 502 F.3d at 1021-22.

privilege to use any or none of the licensed patents into their manufactured products; the fact that Licensees have currently chosen not to use the unexpired patents does not convert the royalty scheme into *per se* patent misuse.

### D.    *Brulotte* **Is Not Concerned with Tying.**

Licensees dress up their *Brulotte* argument with the language of tying. They each parrot the same argument: that NOV tied the now-expired depth patents that Licensees wanted to use to the unexpired patents that Licensees do not want to use today:

> That is precisely what NOV is attempting to do here: ***extract royalty payme****nts from Halliburton for its valueless and **unused unexpired patents** by **tying** them to the **expired Depth Patents** that Halliburton does use. Brulotte* explicitly held this is an improper "assertion of monopoly power," *id*., and this Court should hold that NOV's attempt to do so here is improper for the same reason.

Mot. at 18 (emphasis added).[8] This argument misunderstands the basis of *Brulotte* and explains the flaw in Licensees' effort to inject infringement into the *Brulotte* analysis.

The *Kimble* Court made clear tying was ***not*** a "legal underpinning" of *Brulotte. Kimble*, 576 U.S. at 458 n.4 ("[I]t is far from clear that the old rule of tying was among *Brulotte*'s legal underpinnings."). The *Kimble* Court noted that *Brulotte* "briefly analogized post-expiration royalty agreements to tying arrangements" but relied primarily on other grounds. *Id*. Even if tying were one of *Brulotte*'s legal underpinnings, the world has changed since the 1960s. As *Kimble* points out, at the time *Brulotte* was decided tying was *per se* an antitrust violation and patent misuse. Under both traditional antitrust and patent misuse doctrines, however, tying is no longer understood as an inherently problematic practice. *Id*. ("When *Brulotte* was decided, those

---

[8] *See also* Ulterra Motion at 18 ("That is precisely what NOV is attempting to do here: extract royalty payments from Ulterra for its valueless and unused unexpired patents by tying them to the expired Depth Patents that Ulterra does use."); Varel Motion at 16 ("That is precisely what NOV is attempting to do here: extract royalty payments from Varel, and other licensees, for its valueless and unused unexpired patents by tying them to the expired Depth Patents that Varel does use and which do not require a license as they are now in the public domain.").

agreements counted as *per se* antitrust violations and patent misuse; now, they are unlawful only if the patent holder wields power in the relevant market.").

Like the licensee in *Ares*, Licensees here improperly assume the rationale of *Brulotte* is based on tying. As the Third Circuit explained, *Brulotte* is concerned only with policing temporal limits on enforcement of patents and not on subject-matter limitations:

> Ares' concern is that Dyax has enlarged the scope of the CAT Patents' subject matter by using its leverage to extract royalties on sales of Bavencio, which do not practice the inventions covered by the CAT Patents. But *Brulotte* does not apply to patent misuse involving the enlargement of a patent's scope. It deals only with attempts to prolong a patent's duration—its "cut-off date"—not attempts to defy "the patent laws' subject-matter limits." *Kimble*, 576 U.S. at 451, 135 S.Ct. 2401. Other patent misuse doctrines cover the improper enlargement of a patent's scope, such as the doctrine of "patent tying agreements." *Id.*, at 458, 135 S.Ct. 2401 n.4.

114 F.4th at 145. To explain, there are patent misuse doctrines that attempt to prevent expanding the scope of patents. For example, where a patent holder demands that to obtain a license to essential Patent A the licensee also must license Patent B; in that situation, the patent holder arguably is expanding the scope or subject matter of Patent A to include the subject of Patent B. Misuse claims based on such patent-to-patent tying are incredibly difficult to prove, and Licensees do not assert such a claim. *U.S. Phillips Corp. v. International Trade Com'n*, 424 F.3d 1179, 1189 (Fed. Cir. 2005).[9] *Brulotte* itself is unconcerned with the subject matter of the patents; the misuse *Brulotte* polices relates purely to expiration dates.

---

[9]The Federal Circuit explained that in a patent-to-product tie, the patent holder will only license a patent if the licensee purchases a product from the patent holder; as a result, the patent holder can foreclose competitors who offer a product using an alternative technology. 424 F.3d at 1189. By contrast, where a patent holder ties an essential patent to a non-essential patent, there is no anti-competitive effect in the market covered by the non-essential patent. A license is simply a promise not to sue to infringement; it "does not impose any requirement on the licensee . . . [nor does it] bar the licensee from using any alternative technology." *Id.* at 1190. Licensees do not assert a tying claim, and certainly have failed to provide any evidence to support such a claim. A patent-to-patent tying claim is subject to the rule-of-reason. *Id.* at 1185; *Globespanvirata, Inc. v. Texas Instrument, Inc.*, 2006 WL 543155, *7 (D. N.J. Mar. 3, 2006) ("The Federal Circuit Court of Appeals held that a patent-to patent tying arrangement is not *per se* unlawful."). Licensees do not prove NOV had market power in the tying market—the existence of patents alone does not establish market power, *Illinois Tool Works, Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 45 (2006)—or anticompetitive effect in the tied market—the license to the unexpired patents does not foreclose use of any alternative technology. *U.S. Phillips Corp*, 424 F.3d, at 1197-98.

Second, this misconception about the rational underlying *Brulotte*'s per se rule explains the flaw in Licensees' argument. According to Licensees, the fact that the license still includes unexpired patents is not dispositive. Instead, per Licensees, the dispositive question is whether Licensees currently want to use those unexpired patents; according to Licensees because they currently do not use the unexpired patents, the royalty offends *Brulotte*. But *Brulotte* is unconcerned with policing the subject matter of patents; *Brulotte* is simply concerned with whether the licensed patents are being used past their expiration dates. For *Brulotte* as explained by *Kimble,* all that matters is that the license includes unexpired patents.

### E.    Applying *Ares Trading*, the Royalty Here is Not Subject to *Brulotte.*

Licensees readily endorse the holding in *Ares Trading* but fail to appreciate its actual holding means *Brulotte* does not even apply here. According to *Ares Trading*, if the "royalty obligation is not calculated based on activity requiring . . . post-expiration use . . . *Brulotte* is not implicated." 114 F.4th at 143. "Post-expiration use" means "acts that would have infringed the patents pre-expiration." *Id.* at 140. "Requiring" post-expiration use meant that the royalty obligation must "*necessarily* result from such use." *Id*. at 143 n.10 (emphasis in original). As a result, it held that a "royalty obligation does not run afoul of *Brulotte* because it does not *necessarily* result from such use." *Id.* In other words, if the royalty is calculated at least in part on activity that would **not** practice expired patents, *Brulotte* simply does not apply.

Assuming that *Ares Trading* is correct about the threshold for *Brulotte* to apply (NOV takes no position on whether *Ares* is correct on this point because it is unnecessary for NOV to prevail), *Brulotte* would not apply here. While some royalty **could be** based on activity involving post-expiration use of **some** expired patents, the royalty does not **necessarily** result from such use

or require such use. Licensees have not discharged their burden of showing invoicing drill bits

with shallow leached cutters—a royalty triggering activity--would practice any *expired* patents.

At best, Licensees offer conclusory statements made by NOV's lawyers regarding NOV's

litigation position back in 2006-2010. Mot. at 4.[10] This evidence does not raise a genuine issue of

fact about infringement. As Licensees argue when claiming that NOV has failed to show

infringement of the unexpired patents, "unsupported attorney argument is insufficient to raise a

genuine dispute of material fact" and "[c]onclusory allegations and attorney arguments are

insufficient to overcome a motion for summary judgment." *Id*. at 19. What's good for the goose is

good for gander. Because Licensees have failed to discharge their burden that the royalty is based

on activity that would *necessarily* infringe expired patents, *Brulotte* does not even apply. *See

Lavery v. Pursuant Health, Inc*., 2025 WL 289321, at *3 (6th Cir. Jan 24, 2025) ("At stake on the

merits is whether the 20-year limit on this patent rendered the parties' royalty provision

unenforceable in 2021. As the proponent of this defense, Pursuant Health bears the burden of

proving it."); *Ares Trading S.A.*, 2023 WL 2456437, at *21 (*Brulotte* is based on preemption and

party asserting preemption bears burden of proof to show preemption with "clear evidence" (citing

*Wyeth v. Levine*, 555 U.S. 555, 571 (2009)); *Arconic Corp. v. Novelis Inc.,* 670 F. Supp. 3d 196,

203 (W.D. Pa. 2023).

Licensees will complain that this overly confines the doctrine to situations where all royalty

triggering activity would practice expired patents—as opposed to situations, like this case, where

the royalty triggering activity may, in part, practice some expired patents. This limitation on

*Brulotte*, however, makes sense because courts generally should "not appl[y] the doctrine of patent

---

[10] Of course, this evidence says nothing about whether shallow leached cutters as made today would infringe anything, and when read in context, this testimony was specific to the cutters in dispute in those cases. And, Halliburton took the exact opposite litigation "position." NOV Motion, Exh. D, at 43-49.

misuse expansively." *Princo Corp. v. International Trade Com'n*, 616 F.3d 1318, 1321 (Fed. Cir. 2010). Moreover, given *Brulotte*'s dubious reputation, courts should be particularly reticent to apply it beyond its facts. *Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1020 (9th Cir. 2007) ("No matter how unconvincing *Brulotte*'s foundation may be, however, we are bound to apply its holding if it applies to the case before us . . . At the same time, our task is not to expand *Brulotte*'s holding beyond its terms. So, except as required by *Brulotte* and its progeny, we shall endeavor to give effect to the intent of the parties and the bargain that they struck.")).

### F.   Licensees' Argument Effectively Destroys the Benefits of a Total Sales Royalty.

As anticipated in NOV's Motion, Licensees also argue that the royalty is *per se* unenforceable because Licensees do not infringe the unexpired patents. While this argument is legally flawed, NOV Motion at 10-20, Licensees' non-infringement argument highlights how it would undermine the utility of total sales royalties. The business advantages of this sort of royalty—which is well-accepted—should be obvious to the Court, including the benefit of obviating subsequent fights over infringement and reducing transaction costs. *Cellport Systems, Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1022 (10th Cir. 2014).

Accepting Licensees' argument, however, would undermine the utility of such royalty clauses, especially where the license at issue covers multiple patents with various expiration dates or even includes subsequently issued patents (as here). Once any of the licensed patents expire, collection of royalties would depend on on-going infringement of unexpired patents, eliminating any of the bargained for benefits. Rather than simplicity, the parties would be plunged back into an infringement fight to assess *Brulotte*'s impact. This would destroy the benefit of such agreements.

To make matters worse, Licensees argue that NOV has the burden of proving infringement. *Brulotte* is an affirmative defense to a claim for breach of contract so Licensees have the burden of proof. *See, e.g., Lavery*, 2025 WL 289321 at *3; *Ares Trading S.A.*, 2023 WL 2456437 at *21; *Arconic Corp.,* 670 F. Supp. 3d at 203 (W.D. Pa. 2023). Licensees, however, claim that the licensor bears the burden of proving infringement to defeat the *Brulotte* affirmative defense. While this position is inconsistent with the bedrock rule that a party asserting an affirmative has the burden of proof, the position would exacerbate the prejudice to licensors who bargained for royalty clauses untethered from infringement, forcing them to ferret out and prove infringement of every royalty bearing product.

Licensees cite *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014), which rejected the argument that the normal burden of proof applicable to infringement cases shifted from the patentee to the alleged infringer merely because the infringer asserted a declaratory judgment claim of non-infringement. The Court rejected shifting the normal burden of proof because a declaratory judgment is merely procedural and not designed to impact substantive legal rules. *Id.* at 199. *Medtronic* did not involve an assertion of affirmative defense where an element of such defense was non-infringement. Licensees offer no reason why the normal rule placing the burden of proof on the party asserting an affirmative defense should be changed. See, *e.g., Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 643 (5th Cir. 2024) ("But '[a]n affirmative defense places the burden of proof on the party pleading it.'").

## VI.    <u>Conclusion</u>

The Court should deny Licensees' Motion for Partial Summary Judgment Based on *Brulotte*.

Dated: February 21, 2025

*Of counsel*

**MCAUGHAN DEAVER PLLC**
Robert J. McAughan, Jr.
Texas Bar No. 00786096
SDTX 16500
Albert B. Deaver, Jr.
Texas Bar No. 05703800
SDTX 11300
MCAUGHAN DEAVER PLLC
550 Westcott, Suite 375
Houston, Texas 77007
bmcaughan@md-iplaw.com
Phone: (713) 829-3851
adeaver@md-iplaw.com
Phone: (281) 460.2315

Respectfully Submitted,

*/s/ Harry P. Susman*
**SUSMAN GODFREY L.L.P.**
Harry P. Susman
Texas Bar No. 24008875
SDTX 23067
Armando Lozano
Texas Bar No. 24120467
SDTX 372525
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Phone: (713) 651-9366
hsusman@susmangodfrey.com
alozano@susmangodfrey.com

**ATTORNEYS FOR NOV**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served on all counsel of record via the Court's ECF System on February 21, 2025.

*/s/ Harry P. Susman*
Harry P. Susman