IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | § § § | |
| *Plaintiff,* | § § | |
| VS. | § | CIVIL ACTION NO. 4:23-cv-1789 |
| GRANT PRIDECO, INC., NOV, INC., et al, | § § § | |
| *Defendants.* | § § § | |

# ORDER

Pending before the Court are three motions to exclude expert opinion and testimony. The first is National Oilwell Varco, Inc.'s ("NOV") Motion to Exclude the Opinions of Anthony Matheny ("Matheny"). (Doc. No. 187). Plaintiff Halliburton Energy Services, Inc. ("Halliburton") filed a response in opposition, (Doc. No. 209), and NOV replied. (Doc. No. 219). Second is Halliburton's Motion to Exclude the Opinions of Gordon Arnold ("Arnold"). (Doc. No. 189). NOV filed a response in opposition, (Doc. No. 205), and Halliburton replied. (Doc. No. 224). Finally, Halliburton moved to exclude the opinions and testimony of Jeff Dodd ("Dodd"). (Doc. No. 190). NOV filed a response in opposition, (Doc. No. 204), and Halliburton replied. (Doc. No. 222). Each motion before the Court is **GRANTED** in part and **DENIED** in part as described below. (Doc. Nos. 187; 189; 190).

## I. Background

This is a breach of contract/royalty payment dispute in which NOV asserts that its Licensees—Halliburton, Ulterra Drilling Technologies, L.P. and Rockbit International Subsidiaries, LLC ("Ulterra"), and Varel International Energy Services, Inc. and Varel International Industries, L.P. ("Varel")—owe royalties pursuant to license and cross-license

agreements for the right to use certain drill bit technology. The Licensees each deny liability for royalties. The general facts and overarching legal arguments at issue in this case have been extensively described in prior orders. As such, this order will not lay out the background beyond what is necessary for the analysis here. Since the Court is addressing three motions regarding three experts that include predominantly overlapping issues, the Court will address the particular arguments and issues in each motion below.

## II.  Legal Standard

Federal Rule of Evidence 702 allows certain witnesses with specialized knowledge to testify about their opinions as experts at trial. FED. R. EVID. 702. Admitting expert testimony is not a decision a court takes lightly, as factfinders tend to place extra weight on expert opinions. See *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993). Accordingly, courts serve an important gatekeeping role when assessing proffered expert testimony, striving to admit qualified, reliable, and relevant opinions but exclude unreliable and misleading "junk science." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

In *Daubert*, the Supreme Court announced several factors courts should consider when exercising their gate-keeping function under Federal Rule of Evidence 702, and in making a preliminary assessment of whether the reasoning underlying expert testimony is scientifically valid and can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 593–98. These factors include: (1) whether the technique in question has been tested; (2) whether the technique has been subject to peer review and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted in the scientific community. *Id.*

"[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire*, 526 U.S. at 153. Though the proponent of the expert testimony "need not satisfy each *Daubert* factor," it has the burden of showing that the testimony is reliable. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004).

### III. Analysis

#### A. Jeff C. Dodd

Halliburton moves to exclude the testimony and opinions of Dodd primarily on the grounds that his opinions are either untimely, or impermissible legal conclusions, or both. (Doc. No. 190 at 9). According to Halliburton, the opinions disclosed in Dodd's report are (1) one-sided summaries of the litigation that led to the Patent License based on second-hand information from another of NOV's lawyer experts; and (2) summaries of how, in Dodd's experience, contracts are negotiated and formed. Further, Halliburton argues that Dodd impermissibly expanded his opinions during his deposition testimony to include opinions that, (1) the License Agreement is a "package" license, (2) Halliburton owes royalties under the Patent License regardless of whether it practices any Licensed RH Patent, and (3) the Licensees must pay royalties until the last to expire of the Licensed RH Patents. (*Id.* at 9).

In response, NOV argues that Dodd's testimony should not be excluded because he will "not parrot or summarize facts for the jury with no connection to his expertise" or testify "on the legal meaning of certain disputed terms in the license agreements." (Doc. No. 204 at 7). In addition, NOV argues that Dodd's opinions regarding common industry practices relating to licensing agreements are relevant and helpful to the trier of fact. (*Id.*).

3

The Court finds that much of Dodd's report is merely a recitation of general principles governing patent license generally. *See, e.g.*, (Doc. No. 190-5 at 16) ("Scope thus lies at the heart of any license."). Dodd is certainly qualified to speak broadly about what license agreements are, and *generally* why and how they are used in business relationships involving intellectual property given his qualifications, breadth of experience, and academic scholarship on the topic.

Nevertheless, Dodd's report contains numerous references to the License Agreement in this case both as an example of a general principle, and to state conclusively what the License Agreement requires. (*Id.* at 17) ("Therefore, Halliburton received a nonexclusive, but worldwide, license to take enumerated sets of actions that somewhat varied by whether the actions were directed solely to Licensed Halliburton Drill Bits or to Leached PCD Elements or PDCs for the purpose of making such drill bits."). Of further concern, Dodd's deposition testimony involved opinions that go beyond the scope of his report. For example, Dodd opined that the licenses at issue were blanket licenses that "cover a number of patents" and "what would go into consideration" for the licenses based on his experience interpreting and writing licenses such as the ones at issue here. (Doc. No. 190-6 at 19). In addition, Dodd opines that "infringement is not made a condition on the – in the royalty clause . . . . The royalty provision which makes the net sales from licensed Ulterra drill bits the base for the royalty is not – that royalty provision is not a "covered by" royalty. It does not depend – it does not state infringement or validity or enforceability as being a necessary condition for the payments of the royalty." (*Id.* at 58).

The contract language at issue clearly speaks for itself and is the best evidence available. Absent a finding of ambiguity in the contract, interpretive opinions as to what the contract says are plainly legal conclusions that no expert will be permitted to opine on, regardless of his or her experience in interpreting or drafting similar agreements. That ruling does not necessarily preclude

any expert from mentioning the contract, but it does preclude any testimony that may be contrary to its terms.

Moreover, Dodd's testimony regarding the general industry practices of entering license agreements, the different forms that various agreements, such as a license agreement, can take, and the purposes that different agreement structures can serve is permitted. Dodd's testimony regarding: (1) general legal principles of contract interpretation; (2) specific legal principles that should or could be applied in this case; (3) the motivations of the parties in this case in the negotiation of the License Agreement; and (4) any opinions about the meaning of the License Agreement's terms and provisions will not be permitted. Dodd likewise will not be permitted to opine on the legal history of the patents at issue in this case (beyond the general history of the patents) or the outcomes of prior litigation.

Finally, Dodd and all other experts will be confined to the topics discussed in their reports. Halliburton's Motion to Exclude is therefore **DENIED** in part and **GRANTED** in part. (Doc. No. 190).

### B. Gordon Arnold

Halliburton next moves to exclude Gordon Arnold on many of the same grounds that it sought to exclude Dodd. Arnold's qualifications are based on his three decades of practice as a patent lawyer, including disputes—both before federal courts and the U.S. Patent and Trademark Office—patent prosecution, licensing, and policy work. (Doc. No. 205-2 at 5). He has testified in prior patent cases in the Southern District of Texas, and he has authored numerous scholarly articles in the area of patent litigation and licensing. (*Id.* at 64–68).

Primarily, Halliburton argues that Arnold has "no technical qualifications" and simply "interprets terms of the Patent License and applies his interpretation to the facts of this case to

offer legal conclusions." (Doc. No. 189 at 9). NOV argues that Arnold was asked to opine on two main areas of the case. (Doc. No. 205 at 6). First, he was asked "to analyze facts relating to which, if any, of eleven US and foreign patents could meet the definition of 'Licensed RH Patents' set out in each of the three License Agreements at issue." (*Id.*). Second, he was asked "to review the various patent infringement lawsuits that NOV filed in the mid-2000s relating to the drill bit technology at issue here, and assess the parties' positions and the posture of the cases before the settlements occurred (and the License Agreements were executed)." (*Id.*).

The Court agrees with Halliburton that Arnold is qualified to testify on some technical matters relating to the reading and structure of patents but he may not testify on whether patents are infringed by certain products because he is not skilled in the art of drill bit manufacturing or usage.[1] Further, Arnold may not testify to the conclusion that patents that are alleged to be Licensed RH Patents satisfy the License Agreement's definition of Licensed RH Patents to the extent that definition includes technical expertise. Moreover, this sort of testimony would plainly constitute a legal conclusion. Nevertheless, the Court will permit Arnold to testify about how one would read a patent or patent application to determine the subject matter of the patent, what a priority date is, and how the Patent and Trade Office goes about the prosecution and application process, topics on which he is undoubtedly qualified for as a career patent attorney.

Likewise, Arnold may present his opinions on how certain patents may relate to one another—such as what a "patent family" is—based solely on his review of the patents themselves. Importantly, however, he may *not* testify to the contractual implications of certain patents or potential patent families to the extent that any such testimony purports to contradict the contract

---

[1] While Arnold has a degree in electrical engineering, electrical engineering is irrelevant to the patents in this case. Further, it is not clear that Arnold ever actually worked as an engineer, and there is certainly no evidence that he worked in any field of engineering related to the subject matter of the patents in this case.

language. Finally, Arnold may testify as to what "anticipation" of a patent is, and how it is determined. In the event that Arnold is asked to testify on whether specific patents anticipate other patents, the Court will consider the legal-or-factual nature of that examination on a question-by-question basis.

Further, in the event that the Court finds the term "relating to" to be ambiguous, and therefore requiring extrinsic evidence, the Court finds that Arnold's career in drafting license agreements, prosecuting patent applications, and litigating license agreement disputes qualifies him to testify about commercial perspectives on drafting license agreements. This ruling is qualified, however, by the warning that any opinions that cross the line into the likely intent of the License Agreement drafters in this case or that attempts to contradict any specific language will, in all likelihood, be deemed inadmissible if raised in a timely objection.

Finally, Arnold will not be permitted to provide expert opinions about the ownership, status, terms, or legal import of foreign patents. Nothing in Mr. Arnold's professional experience evokes any expertise in foreign patent law—he also confirms that his opinions were formed through discussions with foreign lawyers about the law that is the subject of *their* expertise. *See* (Doc. No. 189-3 at 14–15) ("Q. Am I correct that you do not hold yourself out as an expert in foreign law? A. (Arnold) You are correct . . . Q. Well, are you holding yourself out as an expert in determining the status of foreign patents? A. (Arnold) No."). Without the requisite expertise in the substantive foreign patent law, Mr. Arnold cannot provide expert testimony on that law or the foreign patents in this case.

In sum, the Court will permit Arnold to testify about: (1) the general process of preparing and prosecuting patent applications; (2) the parts of a patent and *how* to gain the relevant information from the patent documents; and (3) to the extent the Court later deems relevant, the

general economic and commercial interests and perspectives that inform the drafting of licensing agreements. The Court will **EXCLUDE** any testimony on (1) the legal meaning of the terms in the License Agreement; (2) whether certain patents or patent claims are legally invalid because they are anticipated; (3) any opinion that was later disavowed in deposition testimony; and (4) substantive patent law in foreign jurisdictions and the application of that law to the foreign patents at issue in this case. In making these rulings, the Court assumes that these opinions were all properly disclosed pursuant to Rule 26(a)(2). As such, Halliburton's motion to exclude is **GRANTED** in part and **DENIED** in part. (Doc. No. 189).

### C. Anthony Matheny

NOV moved to exclude the opinions and testimony of Matheny on several grounds. The heart of NOV's argument is that Matheny is simply a lawyer offering impermissible contract interpretations and legal conclusions. (Doc. No. 187 at 7). More specifically, NOV argues that Matheny's entire report constitutes improper, unreliable legal opinions which attempt to interpret the plain language of the relevant contracts, declare provisions "material" or "breached," and analyze the effect of certain disputed Supreme Court precedents. (*Id.*). Based on these arguments, NOV asks the Court to exclude the following opinions: (1) the meaning of "Licensed RH Patents," including the terms "ReedHycalog patents," "related to leaching," "claims priority," as used in the Halliburton and Ulterra Licenses; (2) Matheny's conclusion that royalties terminated in 2022 under the Licenses due to his interpretation of the "License to Cutter Manufacturer" provision of the License Agreements; (3) the "materiality" of confidentiality provisions or testify that there was a breach; (4) his interpretation of the "Most Favored Licensee" provision and opinion that there was a violation; (5) his interpretation of Supreme Court case *Brulotte* and its progeny; and (6) his testimony parroting the facts, lawyer arguments, or other experts' opinions.

8

In response, Halliburton argues that Matheny is a rebuttal witness offering opinions in response to NOV's two lawyer-experts who opine on the very same impermissible grounds that NOV objects to as to Matheny. (Doc. No. 209 at 10). Interestingly, rather than truly rebutting NOV's arguments as to why Matheny should be excluded, Halliburton simply argues that Matheny is a necessary rebuttal witness to the impermissible expert testimony NOV puts forth from Arnold and Dodd. As stated above, the Court has permitted some and excluded some of the opinions proffered by both Arnold and Dodd. As such, if properly disclosed under Rule 26(a)(2), the Court will permit Matheny to testify in rebuttal to the subjects that the Court has permitted NOV's experts to testify to, and the Court will exclude any opinions from Matheny that extend beyond the scope of Arnold and Dodd's testimony. Therefore, NOV's motion is conditionally **GRANTED** in part and **DENIED** in part.

## IV. Conclusion

Based on the foregoing analysis, the Court **DENIES** in part and **GRANTS** in part NOV's Motion to Exclude, (Doc. No. 187), and likewise contingently **GRANTS** in part and **DENIES** in part Halliburton's Motions to Exclude. (Doc. Nos. 189; 190). By this order, the Court is not ruling on the potential relevance of any such testimony.

Signed on this 29th day of September, 2025.

Andrew S. Hanen
United States District Judge